*Exhibit A*

| Approved, SCAO | Original - Court<br>1st copy - Defendant | 2nd copy - Plaintiff<br>3rd copy - Return |
|---|---|---|

| **STATE OF MICHIGAN**<br>          **JUDICIAL DISTRICT**<br>**16TH JUDICIAL CIRCUIT**<br>          **COUNTY PROBATE** | **SUMMONS AND COMPLAINT** | **CASE NO.**<br>16 - 1289 - CZ |

Court address
40 N. Main Street, Mount Clemens, Michigan 48043           Court telephone no.  (586) 469-5150

| Plaintiff's name(s), address(es), and telephone no(s).<br>SIMONE MAURO | v | Defendant's name(s), address(es), and telephone no(s).<br>ANTHONY MARROCCO<br><br>KATHRYN A. VIVIANO |
|---|---|---|
| Plaintiff's attorney, bar no., address, and telephone no.<br>Cindy Rhodes Victor (P33613)<br>2851 High Meadow Circle, Suite 120<br>Auburn Hills, Michigan 48326<br>(248) 364-3090 | | |

**SUMMONS**   **NOTICE TO THE DEFENDANT:** In the name of the people of the State of Michigan you are notified:
1. You are being sued.
2. **YOU HAVE 21 DAYS** after receiving this summons to **file a written answer with the court** and serve a copy on the other party or take other lawful action with the court (28 days if you were served by mail or you were served outside this state). (MCR 2.111[C])
3. If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.

| Issued<br>APR 18 2016 | This summons expires<br>JUL 18 2016 | Court clerk |
|---|---|---|

*This summons is invalid unless served on or before its expiration date. This document must be sealed by the seal of the court.

**COMPLAINT**   *Instruction: The following is information that is required to be in the caption of every complaint and is to be completed by the plaintiff. Actual allegations and the claim for relief must be stated on additional complaint pages and attached to this form.*

☐ This is a business case in which all or part of the action includes a business or commercial dispute under MCL 600.8035.

**Family Division Cases**
☐ There is no other pending or resolved action within the jurisdiction of the family division of circuit court involving the family or family members of the parties.
☐ An action within the jurisdiction of the family division of the circuit court involving the family or family members of the parties has been previously filed in _____ Court.
The action ☐ remains ☐ is no longer pending. The docket number and the judge assigned to the action are:

| Docket no. | Judge | Bar no. |
|---|---|---|

**General Civil Cases**
☐ There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in the complaint.
☑ A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has been previously filed in Macomb County Circuit _____ Court.
The action ☑ remains ☐ is no longer pending. The docket number and the judge assigned to the action are:

| Docket no.<br>2011-000291-CZ | Judge<br>KATHRYN A. VIVIANO | Bar no.<br>P60219 |
|---|---|---|

**VENUE**

| Plaintiff(s) residence (include city, township, or village)<br>Macomb County | Defendant(s) residence (include city, township, or village)<br>Macomb County |
|---|---|
| Place where action arose or business conducted<br>Macomb County | |

04/18/2016
Date                              Signature of attorney/plaintiff

If you require special accommodations to use the court because of a disability or if you require a foreign language interpreter to help you fully participate in court proceedings, please contact the court immediately to make arrangements.

MC 01 (5/15) **SUMMONS AND COMPLAINT**   MCR 2.102(B)(11), MCR 2.104, MCR 2.105, MCR 2.107, MCR 2.113(C)(2)(a), (b), MCR 3.206(A)

| **PROOF OF SERVICE** | **SUMMONS AND COMPLAINT** <br> Case No. |
|---|---|

**TO PROCESS SERVER:** You are to serve the summons and complaint not later than 91 days from the date of filing or the date of expiration on the order for second summons. You must make and file your return with the court clerk. If you are unable to complete service you must return this original and all copies to the court clerk.

**CERTIFICATE / AFFIDAVIT OF SERVICE / NONSERVICE**

| ☐ **OFFICER CERTIFICATE** <br> I certify that I am a sheriff, deputy sheriff, bailiff, appointed court officer, or attorney for a party (MCR 2.104[A][2]), and that:   (notarization not required) | **OR** | ☐ **AFFIDAVIT OF PROCESS SERVER** <br> Being first duly sworn, I state that I am a legally competent adult who is not a party or an officer of a corporate party, and that:   (notarization required) |
|---|---|---|

☐ I served personally a copy of the summons and complaint,

☐ I served by registered or certified mail (copy of return receipt attached) a copy of the summons and complaint,
together with _____
List all documents served with the Summons and Complaint

_____ on the defendant(s):

| Defendant's name | Complete address(es) of service | Day, date, time |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

☐ I have personally attempted to serve the summons and complaint, together with any attachments, on the following defendant(s) and have been unable to complete service.

| Defendant's name | Complete address(es) of service | Day, date, time |
|---|---|---|
|  |  |  |
|  |  |  |

I declare that the statements above are true to the best of my information, knowledge, and belief.

| Service fee <br> $ | Miles traveled | Mileage fee <br> $ | Total fee <br> $ | Signature |
|---|---|---|---|---|

Name (type or print)

Title

Subscribed and sworn to before me on _____ , _____ County, Michigan.
Date

My commission expires: _____ Signature: _____
Date                                                          Deputy court clerk/Notary public

Notary public, State of Michigan, County of _____

**ACKNOWLEDGMENT OF SERVICE**

I acknowledge that I have received service of the summons and complaint, together with _____
Attachments

_____ on _____
Day, date, time

on behalf of _____

Signature

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF MACOMB

SIMONE MAURO,

        Plaintiff,

v

COUNTY OF MACOMB,
MICHIGAN, a Michigan municipal
corporation, and ANTHONY
MARROCCO, individually and in
his official capacity, jointly and
severally,

        Defendants.

Case No. 2016-_____-CZ

16-1289-CZ

HONORABLE KATHRYN A. VIVIANO

JURY TRIAL REQUESTED

CINDY RHODES VICTOR (P33613)
Kus Ryan, PLLC
2851 High Meadow Circle, Suite 120
Auburn Hills, Michigan 48326
(248) 364-3090
Attorneys for Plaintiff

A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has been previously filed in the Macomb County Circuit Court. The action remains pending.

The docket number assigned to the action is 2011-000291-CZ and the judge assigned to the action is the Honorable Kathryn A. Viviano.

CINDY RHODES VICTOR (P33613)

## COMPLAINT

Plaintiff, Simone Mauro, by his attorneys, Kus Ryan, PLLC, hereby states

for his Complaint against Defendants the County of Macomb, Michigan, a

muniicipal corporation, and Anthony Marrocco, jointly and severally, as follows:

1.      Plaintiff Simone Mauro is a resident of Macomb County.

2.      Defendant County of Macomb, Michigan ("the County") is a municipal corporation organized under the laws of the State of Michigan.

3.      Defendant Anthony Marrocco hold the position of Public Works Commissioner for the County of Macomb, and upon information and belief, is a resident of Macomb County.

4.      The amount in controversy exceeds $25,000 and is otherwise within the jurisdiction of this Court.

5.      Venue is proper in this Court, as plaintiff and defendants are located in Macomb County, Michigan, and the wrongful actions of defendants of which plaintiff complains occurred in Macomb County and/or relate to property located in Macomb County, Michigan.

## FACTUAL ALLEGATIONS

6.      In 2004, plaintiff Simone Mauro, along with Salvatore DiMercurio, and Sergio Gesuale, organized Burning Tree Properties, LLC ("BT Properties") and Burning Tree Investors, LLC ("BT Investors") for the purpose of investing in and operating the Burning Tree Golf Course ("BT Golf Course") in Macomb Township, Michigan.  Jode Investments, LLC ("Jode"), of which defendant Marrocco is an owner, became an investor in the companies as well.

7.      Mauro, DiMercurio, Gesuale and Jode each had a 25% membership interest in both BT Properties and BT Investors.

8.     The BT Golf Course real estate was owned by BT Properties, and the personal property of the BT Golf Course, including a liquor license, was owned by BT Investors.

9.     In January, 2005, BT Properties obtained a $3,360,000 loan from Fifth Third Bank ("Fifth Third") to assist in acquiring the BT Golf Course real estate, which Fifth Third referred to as a "Secured Land Carry Loan."

10.     The Secured Land Carry Loan was secured by guarantees from BT Investors, Mauro, DiMercurio, Jode and Jode's members, defendant Marrocco and Anthony Fanelli, among others.

11.     At all relevant times from 2004 to the present, Anthony Marrocco held the position of Public Works Commissioner for the County.

12.     The obligations under the Secured Land Carry Loan included making monthly payments and a "balloon payment" which matured in January, 2009.

13.     After the economic crash of 2008, BT Properties and the loan guarantors made repeated requests to Fifth Third to renegotiate payment terms of the Secured Land Carry Loan.

14.     Fifth Third Bank would not renegotiate and/or agree upon payment terms for the Secured Land Carry Loan balloon payment.

15.     Instead, on October 23, 2009, Fifth Third foreclosed by advertisement on the real estate owned by BT Properties, which was the BT Golf Course property.

16.     The BT Golf Course property was sold at sheriff's sale on November 4, 2009 for $1,500,000 to Fifth Third Bank and recorded a sheriff's deed to the real property.

17.     Fifth Third filed suit in November, 2009 in Oakland County Circuit Court, Case No. 2009-105176-CH ("the Oakland Case") against BT Properties and the guarantors to recover an alleged deficiency balance on the Secured Land Carry Loan.

18.     In April, 2010, Jode and its members, Marrocco and Fanelli, settled the Fifth Third claims ("the Jode Settlement").

19.     On January 21, 2011, Jode and newly formed companies Golf Club Properties, LLC and Club Golf Investors, LLC ("the Club Golf entities") sued Mauro, DiMercurio, Gesuale and the Burning Tree entities in the Macomb County Circuit Court, Case No. 2011-000291-CZ, which was assigned to the Honorable John C. Foster.

20.     In their complaint, Jode and the Club Golf entities alleged that Jode "redeemed the real property by paying $1,500,000.00 ..."

21.     The Jode Settlement was not authorized by either BT Investors or BT Properties.

22.     To the extent that it disposed of anything relating to BT Investors or BT Properties, such disposition would have required the unanimous vote of all members of each company, as the Operating Agreements for each entity provided.

- 4 -

23.    As the record in the circuit court reflects, there was no such agreement.

24.    Jode and the Club Golf entities amended their complaint on May 18, 2011, seeking dissolution of BT Properties and BT Investors and declaratory judgment, and alleging claims for unjust enrichment by all defendants and for breach of contract/specific performance, tortious interference, breach of fiduciary duty, conversion and fraudulent misrepresentation against Mauro and DiMercurio.

25.    On April 28, 2011, Mauro, DiMercurio, Gesuale and the BT entities filed a counter-claim against Jode and the Club Golf entities and a third party complaint against Marrocco and Fanelli ("third party defendants"), seeking an accounting and alleging claims for conversion, claim and delivery, breach of contract, breach of fiduciary duty and breach of duties owed under the Michigan Limited Liability Company Act.

26.    Jode, the Club Golf entities and the third-party defendants filed a motion for partial summary disposition as to the counterclaim, which was granted on November 18, 2011 as to all claims except for that seeking an accounting.

27.    Jode and the Club Golf entities filed a motion for disbursement of funds held in escrow and for assignment of the liquor license held by BT Investors, and a motion to compel specific performance of an assignment of redemption rights.

28.    Following a hearing before Judge Foster on January 9, 2012, the circuit court on January 31, 2012 denied the motion for disbursement of the

escrow proceeds, but granted the motion for specific performance and ordered Mauro to execute a quit claim deed to Jode and the Club Golf entities and to sign over to Jode and the Club Golf entities the liquor license held by BT Investors (a copy of the January 31, 2012 Opinion and Order is attached as Exhibit 1).

29.     However, on February 13, 2012, defendants filed a timely motion for reconsideration of the circuit court's January 31, 2012 opinion and order, which was scheduled to be heard on March 19, 2012.

30.     Yet, on March 1, 2012, the circuit court entered an order to show cause, compelling Mauro to show cause as to why he had not signed over the liquor license and personal property to Jode and the Club Golf entities, even though the motion for show cause was not filed until March 2, 2012 by counsel for defendant Marrocco, Jode and the Club Golf entities (a copy of the circuit court docket sheet is attached hereto as Exhibit 2; a copy of the motion for order to show cause and supporting documents are attached hereto as Exhibit 3).

31.     The circuit court scheduled a hearing on the motion to show cause for March 19, 2012.

32.     On March 19, 2012, the circuit court dismissed the motion for reconsideration and found Mauro in contempt of court for refusing to sign over the personal property and liquor license of BT Investors to Jode and the Club Golf entities, even though the motion for reconsideration was still pending at the time the court made its ruling.

33.     Despite the fact that the contempt occurred outside the presence of the court, the court did not conduct an evidentiary hearing before finding Mauro in contempt of court.

34.     As a result of being found in contempt of court, Mauro was ordered incarcerated in the Macomb County Jail until such time as he signed over BT Investors' personal property and liquor license to Jode and the Club Golf entities.

35.     Mauro said at the March 19, 2012 hearing that he disagreed with the court's ruling, and that the threat of incarceration was just another attempt by defendant Marrocco "to intimidate and harass me."

36.     Mauro also said to the court at the March 19, 2012 hearing, "Your honor, you expect me to transfer $787,000 in assets to Mr. Marrocco, for no financial consideration?"

37.     At the March 19, 2012 hearing, as Mauro was being led away to jail, the court said to him, "Mr. Mauro, you have the keys to the jail cell in your hands. All you have to do is sign those documents."

38.     Mauro was incarcerated in the Macomb County Jail until he signed over BT Investors' personal property and liquor license.

39.     After the circuit court ordered all of the assets of the BT entities transferred to Jode, the circuit court then ordered the dissolution of both entities on June 4, 2012.

40.     Mauro, DiMercurio, Gesuale and the BT entities appealed the circuit court's rulings to the Michigan Court of Appeals, which was assigned Docket No. 310957.

41.     On April 17, 2014, the Michigan Court of Appeals entered its Opinion on the appeal, reversing the decision of the circuit court as to BT Investors' personal property and liquor license, among other things (the majority opinion is attached as Exhibit 4).

42.     The Michigan Court of Appeals noted Mauro's incarceration as follows:

> In March 2012, Jode Investments, the Club entities, Marrocco and Fanelli moved to show cause why Mauro should not be held in contempt for failing to comply with the trial court's orders by formally transferring Burning Tree Investors' personal property, including the liquor license. After a hearing, the trial court held Mauro in contempt; it ordered Mauro remanded to the county jail until he executed the assignment and ordered him to pay more than $2,000 in costs. After Mauro executed the assignment, the trial court ordered his release.

(Exhibit 4 at 6).

43.     As to the Jode and the Club Golf entities' argument that Fifth Third sold the personal property of Burning Tree Investors to them, the Michigan Court of Appeals disagreed, stating:

> These contractual provisions are not ambiguous and plainly do not provide any basis for concluding that Fifth Third took an affirmative step to "sell, lease, license, or otherwise dispose" of Burning Tree Investors' personal property—let alone transfer that property to Marrocco or Fanelli or the entity of their choice. MCL 440.9610(1). Fifth Third did not recite or warrant that it had taken possession or title to Burning Tree Investors' personal property or liquor license. In contrast, Marrocco and Fanelli warranted that they would be forming an entity to "take title to the Burning Tree Property and further to acquire any and all remaining assets" from Burning Tree Investors. By warranting that they *intended* to acquire Burning Tree Investors' assets, they acknowledged that Burning Tree Investors still held title to the personal property. In addition, at no point in the settlement agreement did Fifth Third promise to transfer, either by quitclaim or otherwise, any of its rights to Burning Tree Investors' personal property—whatever those rights might

> have been. The only thing that it agreed to do with regard to
> Burning Tree Investors' personal property was file a termination
> statement for its UCC financing statements. A termination
> statement renders the financing statement ineffective. MCL
> 440.9513(4). Stated another way, the filing of a termination
> statement constitutes a release of the lien against the debtor's
> property covered by the financing statement—it does not cause a
> transfer of any interest in the property. See *Crestar Bank v Neal*,
> 960 F2d 1242, 1245 (CA 4, 1992). As such, the only thing that Fifth
> Third promised with regard to the personal property at issue was to
> release its lien against the personal property, which it did; it did not
> promise to transfer or actually transfer any interest that it might
> have held or could have asserted with regard to the personal
> property.

(Exhibit 4 at 9) (emphasis in original).

44.     As to the transfer of Burning Tree Investors' personal property, the

Michigan Court of Appeals concluded:

> The trial court erred when it dismissed the claims by the Burning
> Tree entities, Mauro, and DiMercurio on the grounds that Fifth Third
> transferred Burning Tree Investors' personal property and liquor
> license to Marrocco, Fanelli, or Club Golf. Given the unambiguous
> and undisputed evidence, those assets remained Burning Tree
> Investors' property. The trial court also erred when it order Burning
> Tree Investors to transfer those assets to a third party without
> compensation.

(Exhibit 4 at 11).

45.     It is clear from the majority opinion of the Michigan Court of

Appeals that the court's order incarcerating Mauro for contempt for refusing to

sign over the BT Investors' personal property was not based on the evidence in

the record, was clearly erroneous, and violated Mauro's due process rights.

46.     Mauro was wrongfully incarcerated by the County and was held a

prisoner by the County until he relented and executed documents to transfer BT

Investors' personal property to defendant Marrocco and his business entities.

47.     Upon information and belief, Marrocco used his position as Macomb County Public Works Commissioner to have Mauro held in contempt of court and incarcerated.

48.     On March 21, 2012, *The Macomb Daily* ran an article about Mauro's incarceration (Exhibit 5).

49.     The article quoted the court telling Mauro "Mr. Morrow [*sic*], you have the keys to the jail cell in your hands. All you have to do is sign the documents" (*Id*).

50.     The quoted defendant Marrocco as saying "It's like with the Board of Commissioners, when I'm right, I'm right....I don't (mess) around. This guy deserves jail" (*Id*.).

51.     Mauro's wrongful imprisonment was calculated to intentionally cause Mauro to suffer emotional distress, humiliation, embarrassment and loss of reputation, and did in fact cause Mauro emotional distress, humiliation, embarrassment and loss of reputation.

52.     Defendant Marrocco's comments in *The Macomb Daily* article were intended to further cause Mauro to suffer emotional distress, as well as public shame, humiliation, embarrassment and loss of reputation, and did in fact cause Mauro to suffer emotional distress, public shame, humiliation, embarrassment and loss of reputation.

53.     As a result of his wrongful imprisonment, Mauro has suffered, and continues to suffer, emotional distress, shame, humiliation, embarrassment and loss of reputation.

- 10 -

54.     Mauro has suffered, and continues to suffer, damages as a result of his wrongful imprisonment and the intentional infliction of emotional distress.

55.     Further, while the case filed by defendant Marrocco and his business entities was pending in the Court of Appeals and on remand in the circuit court, defendant Marrocco used his position as Public Works Commissioner to delay projects and/or threatened to delay projects, in which Mauro as involved in any way, including projects in which Mauro had no ownership interest but had been hired as the engineer for the project.

56.     Defendant Marrocco's actions were taken on behalf of himself and the County to retaliate against Mauro for filing a counterclaim against him and for pursuing his First Amendment rights to seek redress in a court of law by prosecuting his appeal in the Court of Appeals and by litigating his case on remand to the circuit court.

57.     Defendants continued the wrongful and unconstitutional harassment of Mauro since 2011 until this day.

58.     The policy to unlawfully harass Mauro and engage in unlawful activity denying Mauro his fundamental rights has been directed by defendants, and has injured Mauro personally and in his business and property.

59.     Defendants' activities in harassing Mauro and engaging in wrongful retaliatory and unconstitutional actions have had the effect of causing Mauro injury.

- 11 -

60.    Defendants' harassing and retaliatory activities are municipal actions, and are inherently arbitrary, and a deliberate misuse of governmental power.

## COUNT I

### *Violation of 42 U.S.C. § 1983*

61.    The allegations set forth in paragraphs 1 through 60 are incorporated herein by reference.

62.    Defendants, through their actions, deprived Mauro of federally protected rights, privileges and immunities provided by federal law and the United States Constitution, and Mauro is thereby entitled to damages for defendants' violation of 42 U.S.C. §1983.

63.    Defendant Marrocco is liable in his personal and individual capacities, because he acted in violation of Mauro's constitutional rights, took no action to remedy the violation of Mauro's constitutional rights, and instead engaged in further constitutionally-violative acts after he should have become aware of the unconstitutionality of his actions.

64.    The policies and actions of defendants were based on considerations other than those proper to the good-faith administration of justice, and lay far outside the scope of legitimate law enforcement or prosecutorial discretion.

65.    Defendants' actions constituted a deliberate denial, under color of law, of plaintiffs' federal rights guaranteed under the Due Process Clause of the

Fourteenth Amendment to the United States Constitution in violation of 42 U.S.C. § 1983.

66.    Mauro, as compared with others who are similarly situated, was selectively treated in adverse ways by defendants, as set forth in the preceding paragraphs.

67.    Defendants' actions constituted a deliberate denial, under color of law, of Mauro's federal rights guaranteed under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution in violation of 42 U.S.C. § 1983.

68.    Defendants' actions against Mauro, in retaliation for Mauro having filed a counterclaim against him and for Mauro having pursued his First Amendment rights to seek redress in a court of law by prosecuting his appeal in the Court of Appeals and by litigating his case on remand to the circuit court, violate the First Amendment of the United States Constitution, because Mauro had a legal right to seek redress in a court of law by prosecuting his appeal in the Court of Appeals on what he believed was, and what indeed turned out to be, an erroneous decision by the circuit court, and by litigating his case on remand to the circuit court, without fear of retaliation.

69.    Defendants' actions were taken in retaliation against Mauro for their exercise of their federal rights under the First Amendment to the United States Constitution in violation of 42 U.S.C. § 1983.

70.    As a direct and proximate result of defendants' actions, Mauro has suffered and will continue to suffer injury, including irreparable harm.

- 13 -

71.     Because of the nature of defendants' actions, which will have the effect of destroying Mauro's business activities and his reputation, Mauro does not have a complete and adequate remedy at law, and injunctive relief is required.

72.     Because defendants acted with an improper motive and intent, in an arbitrary and discriminatory manner, and their actions show reckless disregard and callous indifference for Mauro's federally protected rights, Mauro is entitled to exemplary damages and punitive damages against defendant Marrocco, as well as all other damages incurred, including costs and attorneys fees pursuant to 42 U.S.C. §1988.

WHEREFORE, Mauro respectfully requests that this Honorable Court enter an order granting the relief requested in the Request for Relief below, and enter a judgment in an amount to be determined by this Court and a jury, plus costs, interest and attorneys' fees.

## COUNT II

### *False Imprisonment*

73.     The allegations set forth in paragraphs 1 through 72 are incorporated herein by reference.

74.     Defendants caused Mauro to be wrongfully incarcerated by the circuit court.

75.     Mauro was aware of his incarceration, and suffered emotional distress which caused him to sign documents which transferred the BT Investors'

personal property and liquor license to defendant Marrocco and his business entities.

76. The Michigan Court of Appeals found that there was no basis on which the circuit court could conclude that defendant Marrocco and his business entities were entitled to BT Investors' personal property and liquor license.

77. Mauro has suffered, and continues to suffer, damages as a result of his wrongful imprisonment.

WHEREFORE, Mauro respectfully requests that this Honorable Court enter an order granting the relief requested in the Request for Relief below, and enter a judgment in an amount to be determined by this Court and a jury, plus costs, interest and attorneys' fees.

## COUNT III

### *Intentional Infliction of Emotional Distress*

78. The allegations set forth in paragraphs 1 through 77 are incorporated herein by reference.

79. As the Michigan Court of Appeals' April 17, 2014 majority opinion makes clear, defendant Marrocco knew at the time he sought Mauro's incarceration that neither he nor his business entities had any entitlement to BT Investors' personal property and liquor license.

80. Defendants conduct in seeking to have Mauro incarcerated until he signed over BT Tree Investors' personal property to defendant Marrocco and his business entities was extreme and outrageous.

- 15 -

81.     Defendants' conduct in having Mauro incarcerated was intentional and/or reckless.

82.     Defendants' conduct caused Mauro to be incarcerated wrongly.

83.     Mauro suffered severe emotional distress as a result of his incarceration, and was improperly forced to sign over the personal property and liquor license of BT Investors over his objections.

84.     Mauro has suffered, and continues to suffer, damages as a result of his emotional distress.

WHEREFORE, Mauro respectfully requests that this Honorable Court enter an order granting the relief requested in the Request for Relief below, and enter a judgment in an amount to be determined by this Court and a jury, plus costs, interest and attorneys' fees.

## **REQUEST FOR RELIEF**

Plaintiff Simone Mauro respectfully requests that this Honorable Court enter a judgment for actual, compensatory, incidental, consequential and exemplary and punitive damages on all of plaintiff's claims in an amount to be determined by a jury and entered by this Honorable Court , plus costs, interest, exemplary damages, and attorneys' fees, and that this Honorable Court also enter an order that:

A.     Awards plaintiff both pre-judgment and post judgment interest on each and every damage award;

B.     Awards plaintiff his reasonable attorneys' fees, costs and disbursements associated with this civil action; and

C.    Awards any other and further relief to plaintiff as this Honorable

Court deems just and proper.

Respectfully submitted,

CINDY RHODES VICTOR (P33613)
Kus Ryan, PLLC
2851 High Meadow Circle, Suite 120
Auburn Hills, Michigan  48326
(248) 364-3090
cvictor@krslaw.biz
cvictor@victorfirm.com

Attorneys for Plaintiff
Dated:  April 17, 2016                        Simone Mauro

## DEMAND FOR JURY

Plaintiff Simone Mauro, by and through his attorneys, Kus Ryan, PLLC,

hereby demands a trial by jury on his causes of action against defendants the

County of Macomb, Michigan and Anthony Marrocco, individually and in his

official capacity, jointly and severally.

Respectfully submitted,

CINDY RHODES VICTOR (P33613)
Kus Ryan, PLLC
2851 High Meadow Circle, Suite 120
Auburn Hills, Michigan  48326
(248) 364-3090
cvictor@krslaw.biz
cvictor@victorfirm.com

Attorneys for Plaintiff
Dated:  April 17, 2016          Simone Mauro

- 18 -

# EXHIBIT 1

FILED

2016 APR 18   PM 4:31

CARMELLA SABAUGH
MACOMB COUNTY CLERK

STATE OF MICHIGAN

MACOMB COUNTY CIRCUIT COURT

JODE INVESTMENTS, LLC,
CLUB GOLF PROPERTIES,
LLC, and CLUB GOLF
INVESTORS, LLC,

      Plaintiffs/Counter-Defendants,

vs.

                                 Case No. 2011-291-CZ

BURNING TREE PROPERTIES,
LLC, BURNING TREE INVESTORS,
LLC, SIMONE MAURO, SALVATORE
DIMERCURIO, and SERGIO GESUALE,

      Defendants/Counter-Plaintiffs/
      Third Party Plaintiffs,

vs.

ANTHONY MARROCCO and
ANTHONY FANELLI,

      Third Party Defendants.

_____/

## OPINION AND ORDER

      Plaintiffs/counter-defendants and third party defendants ("plaintiffs") have filed a motion

for disbursement of escrow and assignment of liquor license.  Defendants/counter-plaintiffs/third

party plaintiffs ("defendants") have filed a response seeking denial of the motion.   Plaintiffs

motion for distribution of escrow is denied without prejudice and the motion for assignment of

liquor license is granted.

      Plaintiffs filed their complaint on January 21, 2011 and first amended complaint on May

18, 2011 alleging count I, dissolution of Burning Tree Properties, LLC; count II, dissolution of

Burning Tree Investors, LLC; count III, declaratory judgment against all defendants; count IV, unjust enrichment against Burning Tree entities, Mauro, and DiMercurio; count V, breach of contract/specific performance against Mauro and DiMercurio; count VI, tortious interference against Mauro and DiMercurio; count VII, breach of fiduciary duty as to Mauro and DiMercurio; count VIII, conversion (statutory and common law) against Mauro and DiMercurio; and count IX, fraudulent misrepresentation against Mauro and DiMercurio.  Plaintiffs contend in 2004 defendant Burning Tree Properties, LLC ("BT Properties") and defendant Burning Tree Investors, LLC ("BT Investors") were formed for the purchase and operation of Burning Tree Golf and Country Club.  Defendant BT Properties owned the real property and defendant BT Investors owned the personal property and operated the golf course.  According to plaintiffs, plaintiff Jode Investment, defendant Simone Mauro, defendant Salvatore DiMercurio, and defendant Sergio Gesuale were each members with a 25% interest at all relevant times.  The parties acquired a loan from Fifth Third Bank in the amount of $3,360,000.00, which was secured by the assets of the BT entities, including the real and personal property, and personal guarantees.  The parties defaulted on the loan, Fifth Third Bank foreclosed on the real property, successfully bid at the Sheriff's Sale in the amount of $1,500,000.00, and recorded a sheriff's deed to the real property.  Fifth Third Bank initiated a lawsuit to recover the deficiency balance of $1,963,824.44 from plaintiffs, defendants, and third parties, and to take possession and dispose of all of the personal property of BT Investors.  Plaintiffs maintain plaintiffs and third party defendants entered into a settlement agreement with Fifth Third Bank and paid the sum of $2,100,000.00 to obtain the real and personal property, received an assignment of the redemption rights, and the UCC financing statements were terminated.

2

On April 28, 2011, defendants filed a counter-complaint and third-party complaint alleging count I, accounting; count II, conversion (statutory and common law); count III, claim and delivery; count IV, breach of contract; and count V, breach of fiduciary duty and breach of Michigan Limited Liability Act. In an Opinion and Order, dated November 18, 2011, the Court granted plaintiffs' motion for summary disposition of counts II-V of the counter-complaint/third party complaint and denied defendants' motion for reconsideration.

Plaintiffs filed this motion for disbursement of escrow and assignment of liquor license and a motion to compel specific performance of BT Properties' consent and assignment of redemption rights. Following a hearing on January 9, 2012, the Court granted plaintiffs request for specific performance and ordered defendant Mauro to execute the quit claim deed as attached to the order. The Court took the present motion under advisement.

Plaintiffs argue that to wind up and dissolve BT Entities there only remain two issues, specifically, regarding the disbursement of the tax refund proceeds and the transfer of the BT Investors' liquor license. Plaintiffs claim the tax refund proceeds are considered a receivable and/or intangible of BT Entities in which Fifth Third Bank formerly held a security interest. Additionally, plaintiffs contend BT Investors granted to Fifth Third Bank a security interest in the liquor license, which has been assigned to plaintiffs by the settlement agreement with Fifth Third Bank.

In response, defendants claim this motion is premature because the Court has not determined what portion of the value paid by plaintiffs was for the assets and defendants are entitled to an explanation of the calculation of surplus or deficiency. Defendants maintain the escrowed funds belong to the BT Entities and should be distributed equally among the members. Additionally, defendants claim it is premature to disburse funds or assets because an accounting

is necessary and an appeal is possible. Finally, defendants claim any disbursement would violate the bankruptcy stay of defendant DiMercurio.

First, the Court will address the disbursement of the escrowed tax appeal refund. The record indicates BT Properties appealed the tax assessment, which generated a refund in the amount of $105,780.44 for the years of 2008-2010. *See* Exhibit F of Defendants' response. Plaintiffs maintain the tax refund proceeds are a receivable and/or intangible, which BT Entities assigned to Fifth Third Bank as security interest. Plaintiffs rely on the Security Agreement executed by BT Investors and the UCC Financing Statement regarding BT Investors personal property. *See* Exhibits 2 and 3 of Plaintiff's motion for disbursement. However, these documents specifically refer to the receivables and intangibles of BT Investors, whereas the tax refund was received by BT Properties, a separate and distinct entity. Plaintiffs have failed to provide any supporting documentation that demonstrates BT Properties' receivables and intangibles were transferred to plaintiffs. Furthermore, plaintiffs' have failed to cite any supporting authority regarding whether a tax refund following the transfer of the property is considered a receivable or intangible. A party may not merely announce his position and leave it to the court to discover and rationalize the basis for his claims, *Wilson v Taylor*, 457 Mich 232, 243; 577 NW2d 100 (1998), nor may he give issues cursory treatment with little or no citation of supporting authority. *Houghton v Keller*, 256 Mich App 336, 339; 662 NW2d 854 (2003). Accordingly, due to plaintiffs' failure to support their assertion with documentary evidence and authority, the Court must deny their request for disbursement of escrow at this time.

Next, the Court will address plaintiffs' request for assignment of the liquor license. The record demonstrates that BT Investors granted a security interest to Fifth Third Bank in all rights, title, and interest that it had in any liquor or beer and wine license. *See* Exhibit 4 of Plaintiffs'

4

motion for disbursement. As the Court previously found, following the default, Fifth Third Bank had the right to dispose of the collateral. Further, MCL 440.9601 and MCL 440.9610 authorized Fifth Third Bank to transfer or sell this personal property to plaintiffs. Pursuant to the settlement agreement, plaintiffs paid Fifth Third Bank $2,100,000.00 to acquire the real and personal property, which specifically included the liquor license. *See* Exhibit B of Defendants' response. Accordingly, plaintiffs are entitled to the assignment of the liquor license in accordance with the terms of the Security Agreement and Agreement to Assign and Transfer Liquor License and settlement agreement. *See* Exhibit 4 of Plaintiffs' motion for disbursement.[1]

Based upon the reasons set forth above, plaintiffs/third party defendants' motion for disbursement of escrow is DENIED without prejudice; and motion for assignment of liquor license is GRANTED. Plaintiffs are ORDERED to provide an assignment of liquor license in accordance with the terms set forth in the Security Agreement and Agreement to Assign and Transfer Liquor License to defendants within seven (7) days of this Opinion and Order and defendants are ORDERED to execute the assignment within fourteen (14) days of this Opinion and Order. In compliance with MCR 2.602(A)(3), the Court states this *Opinion and Order* does not resolve the last claim and does not close the case.

IT IS SO ORDERED.

Dated: January 31, 2012

JCF/sr

JOHN C. FOSTER, Circuit Judge

---

[1] Defendants also maintain any further action regarding the assets of BT Investors or BT Properties would violate the Bankruptcy Stay on behalf of defendant DiMercurio. An automatic stay regarding defendant DiMercurio due to his bankruptcy petition was filed on October 3, 2011. However, defendants lack standing to challenge the Court's actions as a violation of the bankruptcy stay, which was activated by DiMercurio's bankruptcy petition. See *Lopez v Lopez*, 191 Mich App 427, 428-429; 478 NW2d 706 (1991). Specifically, "[i]f the debtor and trustee choose not to invoke the protections of §362, no other party may attack acts in violation of the stay." *Id.* at 429. Accordingly, the Court finds defendants argument regarding DiMercurio's bankruptcy stay unpersuasive.

5

Cc:     Robert W. Kirk, Attorney at Law
        Victor J. Torres, Attorney at Law



STATE OF MICHIGAN

MACOMB COUNTY CIRCUIT COURT

JODE INVESTMENTS, LLC,
CLUB GOLF PROPERTIES,
LLC, and CLUB GOLF
INVESTORS, LLC,

      Plaintiffs/Counter-Defendants,

vs.                                                             Case No. 2011-291-CZ

BURNING TREE PROPERTIES,
LLC, BURNING TREE INVESTORS,
LLC, SIMONE MAURO, SALVATORE
DIMERCURIO, and SERGIO GESUALE,

      Defendants/Counter-Plaintiffs/
      Third Party Plaintiffs,

vs.

ANTHONY MARROCCO and
ANTHONY FANELLI,

      Third Party Defendants.

_____/

OPINION AND ORDER

      Plaintiffs/counter-defendants and third party defendants ("plaintiffs") have filed a motion for disbursement of escrow and assignment of liquor license. Defendants/counter-plaintiffs/third party plaintiffs ("defendants") have filed a response seeking denial of the motion. Plaintiffs motion for distribution of escrow is denied without prejudice and the motion for assignment of liquor license is granted.

      Plaintiffs filed their complaint on January 21, 2011 and first amended complaint on May 18, 2011 alleging count I, dissolution of Burning Tree Properties, LLC; count II, dissolution of

App 730, 733; 405 NW2d 151 (1987).  Accordingly, defendants have failed to demonstrate a palpable error and their motion for reconsideration is denied.

Conclusion

Based upon the reasons set forth above, plaintiffs/third party defendants motion for partial summary disposition of counts II, III, IV, and V of the counter-complaint/third party complaint is GRANTED; and defendants' motion for reconsideration is DENIED.  In compliance with MCR 2.602(A)(3), the Court states this *Opinion and Order* does not resolve the last claim and does not close the case.

IT IS SO ORDERED.

JOHN C. FOSTER, Circuit Judge

Dated: November 18, 2011

JCF/sr

Cc:    Robert Kirk, Attorney at Law
       Victor Torres, Attorney at Law

11



STATE OF MICHIGAN

MACOMB COUNTY CIRCUIT COURT

JODE INVESTMENTS, LLC,
CLUB GOLF PROPERTIES,
LLC, and CLUB GOLF
INVESTORS, LLC,

      Plaintiffs/Counter-Defendants,

vs.                                                    Case No. 2011-291-CZ

BURNING TREE PROPERTIES,
LLC, BURNING TREE INVESTORS,
LLC, SIMONE MAURO, SALVATORE
DIMERCURIO, and SERGIO GESUALE,

      Defendants/Counter-Plaintiffs/
      Third Party Plaintiffs,

vs.

ANTHONY MARROCCO and
ANTHONY FANELLI,

      Third Party Defendants.

_____/

## OPINION AND ORDER

    Plaintiffs/counter-defendants and third party defendants ("plaintiffs") have filed a motion for disbursement of escrow and assignment of liquor license. Defendants/counter-plaintiffs/third party plaintiffs ("defendants") have filed a response seeking denial of the motion. Plaintiffs motion for distribution of escrow is denied without prejudice and the motion for assignment of liquor license is granted.

    Plaintiffs filed their complaint on January 21, 2011 and first amended complaint on May 18, 2011 alleging count I, dissolution of Burning Tree Properties, LLC; count II, dissolution of

Burning Tree Investors, LLC; count III, declaratory judgment against all defendants; count IV, unjust enrichment against Burning Tree entities, Mauro, and DiMercurio; count V, breach of contract/specific performance against Mauro and DiMercurio; count VI, tortious interference against Mauro and DiMercurio; count VII, breach of fiduciary duty as to Mauro and DiMercurio; count VIII, conversion (statutory and common law) against Mauro and DiMercurio; and count IX, fraudulent misrepresentation against Mauro and DiMercurio. Plaintiffs contend in 2004 defendant Burning Tree Properties, LLC ("BT Properties") and defendant Burning Tree Investors, LLC ("BT Investors") were formed for the purchase and operation of Burning Tree Golf and Country Club. Defendant BT Properties owned the real property and defendant BT Investors owned the personal property and operated the golf course. According to plaintiffs, plaintiff Jode Investment, defendant Simone Mauro, defendant Salvatore DiMercurio, and defendant Sergio Gesuale were each members with a 25% interest at all relevant times. The parties acquired a loan from Fifth Third Bank in the amount of $3,360,000.00, which was secured by the assets of the BT entities, including the real and personal property, and personal guarantees. The parties defaulted on the loan, Fifth Third Bank foreclosed on the real property, successfully bid at the Sheriff's Sale in the amount of $1,500,000.00, and recorded a sheriff's deed to the real property. Fifth Third Bank initiated a lawsuit to recover the deficiency balance of $1,963,824.44 from plaintiffs, defendants, and third parties, and to take possession and dispose of all of the personal property of BT Investors. Plaintiffs maintain plaintiffs and third party defendants entered into a settlement agreement with Fifth Third Bank and paid the sum of $2,100,000.00 to obtain the real and personal property, received an assignment of the redemption rights, and the UCC financing statements were terminated.

2

On April 28, 2011, defendants filed a counter-complaint and third-party complaint alleging count I, accounting; count II, conversion (statutory and common law); count III, claim and delivery; count IV, breach of contract; and count V, breach of fiduciary duty and breach of Michigan Limited Liability Act. In an Opinion and Order, dated November 18, 2011, the Court granted plaintiffs' motion for summary disposition of counts II-V of the counter-complaint/third party complaint and denied defendants' motion for reconsideration.

Plaintiffs filed this motion for disbursement of escrow and assignment of liquor license and a motion to compel specific performance of BT Properties' consent and assignment of redemption rights. Following a hearing on January 9, 2012, the Court granted plaintiffs request for specific performance and ordered defendant Mauro to execute the quit claim deed as attached to the order. The Court took the present motion under advisement.

Plaintiffs argue that to wind up and dissolve BT Entities there only remain two issues, specifically, regarding the disbursement of the tax refund proceeds and the transfer of the BT Investors' liquor license. Plaintiffs claim the tax refund proceeds are considered a receivable and/or intangible of BT Entities in which Fifth Third Bank formerly held a security interest. Additionally, plaintiffs contend BT Investors granted to Fifth Third Bank a security interest in the liquor license, which has been assigned to plaintiffs by the settlement agreement with Fifth Third Bank.

In response, defendants claim this motion is premature because the Court has not determined what portion of the value paid by plaintiffs was for the assets and defendants are entitled to an explanation of the calculation of surplus or deficiency. Defendants maintain the escrowed funds belong to the BT Entities and should be distributed equally among the members. Additionally, defendants claim it is premature to disburse funds or assets because an accounting

3

is necessary and an appeal is possible. Finally, defendants claim any disbursement would violate the bankruptcy stay of defendant DiMercurio.

First, the Court will address the disbursement of the escrowed tax appeal refund. The record indicates BT Properties appealed the tax assessment, which generated a refund in the amount of $105,780.44 for the years of 2008-2010. *See* Exhibit F of Defendants' response. Plaintiffs maintain the tax refund proceeds are a receivable and/or intangible, which BT Entities assigned to Fifth Third Bank as security interest. Plaintiffs rely on the Security Agreement executed by BT Investors and the UCC Financing Statement regarding BT Investors personal property. *See* Exhibits 2 and 3 of Plaintiff's motion for disbursement. However, these documents specifically refer to the receivables and intangibles of BT Investors, whereas the tax refund was received by BT Properties, a separate and distinct entity. Plaintiffs have failed to provide any supporting documentation that demonstrates BT Properties' receivables and intangibles were transferred to plaintiffs. Furthermore, plaintiffs' have failed to cite any supporting authority regarding whether a tax refund following the transfer of the property is considered a receivable or intangible. A party may not merely announce his position and leave it to the court to discover and rationalize the basis for his claims, *Wilson v Taylor*, 457 Mich 232, 243; 577 NW2d 100 (1998), nor may he give issues cursory treatment with little or no citation of supporting authority. *Houghton v Keller*, 256 Mich App 336, 339; 662 NW2d 854 (2003). Accordingly, due to plaintiffs' failure to support their assertion with documentary evidence and authority, the Court must deny their request for disbursement of escrow at this time.

Next, the Court will address plaintiffs' request for assignment of the liquor license. The record demonstrates that BT Investors granted a security interest to Fifth Third Bank in all rights, title, and interest that it had in any liquor or beer and wine license. *See* Exhibit 4 of Plaintiffs'

4

motion for disbursement. As the Court previously found, following the default, Fifth Third Bank had the right to dispose of the collateral. Further, MCL 440.9601 and MCL 440.9610 authorized Fifth Third Bank to transfer or sell this personal property to plaintiffs. Pursuant to the settlement agreement, plaintiffs paid Fifth Third Bank $2,100,000.00 to acquire the real and personal property, which specifically included the liquor license. *See* Exhibit B of Defendants' response. Accordingly, plaintiffs are entitled to the assignment of the liquor license in accordance with the terms of the Security Agreement and Agreement to Assign and Transfer Liquor License and settlement agreement. *See* Exhibit 4 of Plaintiffs' motion for disbursement.[1]

Based upon the reasons set forth above, plaintiffs/third party defendants' motion for disbursement of escrow is DENIED without prejudice; and motion for assignment of liquor license is GRANTED. Plaintiffs are ORDERED to provide an assignment of liquor license in accordance with the terms set forth in the Security Agreement and Agreement to Assign and Transfer Liquor License to defendants within seven (7) days of this Opinion and Order and defendants are ORDERED to execute the assignment within fourteen (14) days of this Opinion and Order. In compliance with MCR 2.602(A)(3), the Court states this *Opinion and Order* does not resolve the last claim and does not close the case.

IT IS SO ORDERED.

JOHN C. FOSTER, Circuit Judge

Dated: January 31, 2012

JCF/sr

---

[1] Defendants also maintain any further action regarding the assets of BT Investors or BT Properties would violate the Bankruptcy Stay on behalf of defendant DiMercurio. An automatic stay regarding defendant DiMercurio due to his bankruptcy petition was filed on October 3, 2011. However, defendants lack standing to challenge the Court's actions as a violation of the bankruptcy stay, which was activated by DiMercurio's bankruptcy petition. See *Lopez v Lopez*, 191 Mich App 427, 428-429; 478 NW2d 706 (1991). Specifically, "[i]f the debtor and trustee choose not to invoke the protections of §362, no other party may attack acts in violation of the stay." *Id.* at 429. Accordingly, the Court finds defendants argument regarding DiMercurio's bankruptcy stay unpersuasive.

5

Cc:    Robert W. Kirk, Attorney at Law
          Victor J. Torres, Attorney at Law

# Exhibit C

## ASSIGNMENT OF ALL ASSETS

This Assignment of All Assets ("Assignment") is effective as of May 4, 2010 (the "Effective Date"), between Burning Tree Investors, LLC, a Michigan limited liability company ("Assignor") and Club Golf, Inc., a Michigan corporation ("Assignee"). (Collectively, the Assignor and Assignee shall be the "Parties.")

WHEREAS on or about January 6, 2005, Assignor granted a Security Interest in its Personal Property to Fifth Third Bank ("Fifth Third") as security for a loan from Fifth Third to a related entity Burning Tree Properties, LLC. To induce Fifth Third to enter into the Loan with Burning Tree Properties, LLC, Assignor entered into several security agreements with Fifth Third involving Assignors' personal property.

WHEREAS Burning Tree Properties, LLC defaulted on the Loan and Fifth Third filed suit in the Circuit Court for the County of Oakland against Burning Tree Properties, LLC and Assignor for, amongst other things, foreclosure upon the personal property collateral.

WHEREAS Assignor was without the financial ability to pay the Loan and Assignee pursuant to a consent and assignment of redemption right and settlement agreement paid $2,100,000.00 to Fifth Third to settle the Oakland lawsuit and acquire the real and personal property of Burning Tree Properties, LLC and Burning Tree Investors, LLC.

WHEREAS Assignee filed an action in Macomb County Circuit Court, being case number 2011-000291-CZ, against Assignor and some of its members for, among other things, declaratory judgment that the $2,100,000.00 payment gave Assignor the full ownership rights in all of the assets of Burning Tree Properties, LLC and Burning Tree Investors, LLC.

WHEREAS the Macomb County Circuit Court declared in its Opinion and Order dated November 18, 2011 that Assignee takes "BT Investors' assets free of any claims of defendants" and declared and clarified in its Opinion and Order dated January 31, 2012 that Assignor is ordered to execute an assignment of liquor license within fourteen days.

NOW THEREFORE, pursuant to the Opinion and Orders of the Macomb County Circuit Court (attached hereto as **Exhibits A and B**) and other valuable consideration, including the May 4, 2010 $2,100,000.00 payment by Assignee to Fifth Third Bank to settle the Oakland lawsuit and acquire the real and personal property of Burning Tree Properties, LLC and Burning Tree Investors, LLC, the Parties hereby agree as follows:

1.  The Assignor hereby assigns, transfers, and conveys to Assignee, the Assignor's entire interest in any and all personal property or other assets of Assignor owned as of January 1, 2010 ("Assets"), subject to the liabilities of the Assignor attached to these Assets as of this date, including but not limited to the following,

    a. Cash;
    b. Accounts, Contract Rights, Chattel Paper, and General Intangibles;

    c.  Inventory;

    d.  Equipment, fixtures and furniture;

    e.  Instruments and Securities;

    f.  Accounts receivable;

    g.  Any and all Liquor License(s), Beer and Wine License(s);

    h.  the Assignor's entire interest in all other tangible and intangible assets, including all insurance policies, executory contracts, agreements, or arrangements; all claims or demands under contracts or otherwise; all rights, causes of action, deposits, bank accounts, and deferred assets; all accounts receivable and rights to moneys due or to become due; all good will and all rights to the use of the name "Burning Tree" or any variation of it;

    i.  registered business name of "Burning Tree Golf and Country Club";

    j.  telephone book yellow page advertisements, contracts, accounts and agreements for Burning Tree Golf and Country Club, business internet addresses, website and website domain name, logos, computer programs, software programs, software and technical libraries that are transferrable under existing licensing agreements;

    k.  telephone numbers, facsimile numbers and utilities relative to the Burning Tree Golf and Country Club;

    l.  contracts identified as Savin Office Copier Lease, Model 2535; Pitney Bowes Postage Meter Lease, account #4362539-004, and GE Capital (Sprayer) Lease #419458I801, or any replacement thereof; and

    m. Banquet and Group Event Booking Contracts, club memberships and Purchase Orders.

2.    This Assignment has been Ordered by the Macomb County Circuit Court so that consent of a majority of the Class A Members holding at least a eighty-five (85%) percent Membership Interest in Assignor pursuant to the Operating Agreement and Amendments to Operating Agreement is not required.

3.    Assignor and Assignee shall execute any and all documents that may be required to assign, transfer and convey the assets, contracts, leases, and contract rights being assigned to the Assignee, including any assignment or transfer documents required by the State of Michigan Liquor Control Commission or Macomb Township in regards to the Liquor License, as well as perform any and all acts that the Assignee may reasonably request in assigning all of Assignor's rights, title and interest in and to the assigned rights and purchased assets.

4.    Assignor agrees that it shall execute any and all documents related to the assignment of the "liquor or beer and wine license, and any renewals thereof issued by the Michigan Liquor Control Commission or any successor agency, together with all related permits, including but not limited to Class C license number 01-4431 with all related permits" to Assignee in accordance with the terms of the Security Agreement and Agreement to Assign and Transfer Liquor License, attached hereto as **Exhibit C,** including signing and executing such assignments, documents, instruments and papers immediately upon being requested to by Assignee, or their designee, and doing every other act and thing, to effectively transfer such License and permits.

5.   The Assignor, by signing this assignment, irrevocably appoints the Assignee its attorney-in-fact with full power and authority to sign, acknowledge, deliver, swear to, file, and record at the appropriate public offices any other confirmatory instruments and documents that are necessary or appropriate to perfect or evidence the shareholders' title or interest in and to any of the assets assigned.

6.   The Assignee agrees to be bound by all of the terms of any agreement assigned to it, to perform all of the Assignor's obligations under any such assigned agreement, and to accept the assets assigned subject to any liabilities which Assignee assumes and agrees to pay.

7.   By executing this Agreement, the Parties acknowledge that prior to executing this Agreement they have consulted with and have reviewed this Agreement with legal counsel. The Parties acknowledge the Agreement herein was obtained without duress or coercion, and without reliance on any promises or statements made other than those stated herein.

8.   All aspects of this Agreement shall be governed by the laws of the State of Michigan.

9.   This Agreement shall be binding on and shall inure to the benefit of the parties and their respective heirs, legatees, devisees, personal representatives, successors, and permitted assigns.

10.  This Agreement contains the entire agreement of the parties and is deemed to supersede and cancel any other agreement between the parties relating to the terms contemplated in this Agreement. This Agreement cannot be modified or altered unless reduced to writing and consented to by all the undersigned parties.

11.  This Agreement may be signed in counterparts, each of which shall be an original, but all of which shall constitute one and the same document. Any signature delivered by a party by facsimile transmission or e-mail shall be deemed to be an original signature.

IN WITNESS WHEREOF, the Parties have hereunto set their hands and seals:

<u>ASSIGNOR</u>

Burning Tree Investors, LLC

_____
By: Simone Mauro
Its: Manager of Burning Tree Investors, LLC        Dated: _____

STATE OF MICHIGAN        )
                                           ) ss.
COUNTY OF MACOMB        )

3

The foregoing instrument was acknowledged before me this _____ day of _____, 2012, by Simone Mauro, Authorized Member and Manager of Burning Tree Investors, LLC.

_____
_____, Notary Public
_____ County, Michigan
My Commission Expires: _____
Acting in _____ County, Michigan

## ASSIGNEE

**Club Golf, Inc.**

By: _____
Its: _____                Dated: _____

STATE OF MICHIGAN    )
                     ) ss.
COUNTY OF MACOMB     )

The foregoing instrument was acknowledged before me this _____ day of _____, 2012, by _____, Authorized Member of Club Golf, LLC.

_____
_____, Notary Public
_____ County, Michigan
My Commission Expires: _____
Acting in _____ County, Michigan

4

*Exhibit D*

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF MACOMB

JODE INVESTMENTS, LLC,
CLUB GOLF PROPERTIES, LLC, AND
CLUB GOLF INVESTORS, LLC,

   Plaintiffs/Counter-Defendants,

vs.

BURNING TREE PROPERTIES, LLC,
BURNING TREE INVESTORS, LLC,
SIMONE MAURO, SALVATORE
DIMERCURIO, AND SERGIO GESUALE,

   Defendants/Counter-Plaintiffs and
   Third Party Plaintiffs,

vs.

ANTHONY MARROCCO and
ANTHONY FANELLI,

   Third-Party Defendants/Counter-Plaintiffs.

Case No. 11-291-CZ
Hon. John C. Foster

_____/

KIRK, HUTH, LANGE & BADALAMENTI,
P.L.C.
ROBERT W. KIRK (P35627)
RAECHEL M. BADALAMENTI (P64361)
PATRICK S. MCKAY (P72106)
Attorneys for Jode Investments, LLC, Club
Golf Properties, LLC, Club Golf Investors,
LLC, Anthony Marrocco and Anthony Fanelli
19500 Hall Road, Suite 100
Clinton Township, MI 48038
(586) 412-4900  Fax: (586) 412-4949

_____/

## ORDER OF ASSIGNMENT OF ALL ASSETS, INCLUDING LIQUOR LICENSE

  This matter having come before the Court upon Plaintiffs Jode Investments, LLC, Club

Golf Properties, LLC, and **Club Golf, Inc. ("Assignee")** and Third Party Defendants/Counter-

Plaintiffs Anthony Marrocco and Anthony Fanelli ( collectively "Plaintiffs") Verified Ex-Parte

Motion for Order to Show Cause, and otherwise having been fully advised in the premises that:

1.      WHEREAS on or about January 6, 2005, **Defendant Burning Tree Investors, LLC** **("Assignor")** granted a Security Interest in its Personal Property to Fifth Third Bank ("Fifth Third") as security for a loan from Fifth Third to a related entity Burning Tree Properties, LLC. To induce Fifth Third to enter into the Loan with Burning Tree Properties, LLC, Assignor entered into several security agreements with Fifth Third involving Assignors' personal property.

2.      WHEREAS on or about January 6, 2005, Assignor also granted and entered into an Security Agreement and Agreement to Assign and Transfer Liquor License with Fifth Third as security for a loan from Fifth Third to a related entity Burning Tree Properties, LLC.

3.      WHEREAS Burning Tree Properties, LLC defaulted on the Loan and Fifth Third filed suit in the Circuit Court for the County of Oakland against Burning Tree Properties, LLC and Assignor for, amongst other things, foreclosure on Security Agreements, including the Agreement to Assign and Transfer Liquor License.

4.      WHEREAS Assignor was without the financial ability to pay the Loan and **Club Golf, Inc. ("Assignee")** pursuant to a consent and assignment of redemption right and settlement agreement paid $2,100,000.00 to Fifth Third to settle the Oakland lawsuit and acquire all of the real and personal property of Burning Tree Properties, LLC and Assignor.

5.      WHEREAS Assignee filed this action against Assignor and some of its members for, among other things, a declaratory judgment that the $2,100,000.00 payment gave Assignor the full ownership rights in all of the assets of Burning Tree Properties, LLC and Assignor, including the Liquor License.

6.      WHEREAS the Macomb County Circuit Court declared in its Opinion and Order dated November 18, 2011 that Assignee takes "BT Investors' assets free of any claims of defendants" and declared and clarified and ordered in its Opinion and Order dated January 31, 2012 that Assignor was to execute an assignment of liquor license within fourteen days.

**NOW THEREFORE, IT IS HEREBY ORDERED AS FOLLOWS:**

A.      This ORDER OF ASSIGNMENT OF ALL ASSETS, INCLUDING LIQUOR LICENSE ("Assignment") is effective as of **May 4, 2010** (the "Effective Date"), between Defendant **Burning Tree Investors, LLC**, a Michigan limited liability company ("Assignor") and Plaintiff **Club Golf, Inc.**, a Michigan corporation ("Assignee").

B.      ANY AND ALL PERSONAL PROPERTY AND ASSETS OF ASSIGNOR, including any and all Liquor License(s), Beer and Wine License(s) are fully assigned, transferred and conveyed to Assignee.

C.   Assignor's entire interest in any and all personal property or other assets of Assignor owned as of January 1, 2010 ("Assets"), subject to the liabilities of the Assignor attached to these Assets as of this date include, but are not limited to the following,

1. Any and all Liquor License(s), Beer and Wine License(s);
2. Cash;
3. Accounts, Contract Rights, Chattel Paper, and General Intangibles;
4. Inventory;
5. Equipment, fixtures and furniture;
6. Instruments and Securities;
7. Accounts receivable;
8. All books and records, whether electronic or otherwise;
9. the Assignor's entire interest in all other tangible and intangible assets, including all insurance policies, executory contracts, agreements, or arrangements; all claims or demands under contracts or otherwise; all rights, causes of action, deposits, bank accounts, and deferred assets; all accounts receivable and rights to moneys due or to become due; all good will and all rights to the use of the name "Burning Tree" or any variation of it;
10. registered business name of "Burning Tree Golf and Country Club";
11. telephone book yellow page advertisements, contracts, accounts and agreements for Burning Tree Golf and Country Club, business internet addresses, website and website domain name, logos, computer programs, software programs, software and technical libraries that are transferrable under existing licensing agreements;
12. telephone numbers, facsimile numbers and utilities relative to the Burning Tree Golf and Country Club;
13. contracts identified as Savin Office Copier Lease, Model 2535; Pitney Bowes Postage Meter Lease, account #4362539-004, and GE Capital (Sprayer) Lease #419458I801, or any replacement thereof; and
14. Banquet and Group Event Booking Contracts, club memberships and Purchase Orders.

D.   Assignor assigns, transfers, and conveys to Assignee, the Assignor's entire rights, title and interest that Assignor has or had in any liquor or beer and wine license, and any renewals thereof issued to Assignor by the Michigan Liquor Control Commission ("MLCC") or any successor agency, together with all related permits, including but not limited to Class C License number 01-4431 and/or 141521-2011 with all related permits ("License and Permits"), and in all proceeds from the sale, transfer or other disposition thereof.

E.   Assignor is ordered to to execute and sign, within seven (7) days of any request made by either the Assignee, the MLCC, local legislative body, or any other governmental agency, all instruments and papers required by the Assignee, MLCC, local legislative body, or any other governmental agency in order that the transfer of such License and Permits may be effectuated.

F.  Assignor is ordered to, as often as may be necessary or appropriate, to sign and execute any assignments, documents, instruments and papers immediately upon being requested by Assignee, its attorneys, the MLCC, local legislative body, or any other governmental agency, and will do every other act and thing, to effectively transfer such License and Permits.

G.  Consent of a majority of the Class A Members holding at least a eighty-five (85%) percent Membership Interest in Assignor pursuant to the Operating Agreement and Amendments to Operating Agreement is not required due to this Court's previous Opinions and Orders.

H.  The Assignee is appointed the Assignor's attorney-in-fact with full power and authority to sign, acknowledge, deliver, swear to, file, and record at the appropriate public offices any other confirmatory instruments and documents that are necessary or appropriate to perfect or evidence the Assignee's title or interest the License and Permits.

I.  This Order is binding upon Assignor and Assignee and their respective heirs, legatees, devisees, personal representatives, successors, and permitted assigns.


Date: _____              _____
                                     CIRCUIT COURT JUDGE
                                     HONORABLE JOHN C. FOSTER

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF MACOMB

JODE INVESTMENTS, LLC,
CLUB GOLF PROPERTIES, LLC, AND
CLUB GOLF INVESTORS, LLC,

      Plaintiffs/Counter-Defendants,

vs.

BURNING TREE PROPERTIES, LLC,
BURNING TREE INVESTORS, LLC,
SIMONE MAURO, SALVATORE
DIMERCURIO, AND SERGIO GESUALE,

      Defendants/Counter-Plaintiffs and
      Third Party Plaintiffs,

vs.

ANTHONY MARROCCO and
ANTHONY FANELLI,

      Third-Party Defendants/Counter-Plaintiffs.

Case No. 11-291-CZ
Hon. John C. Foster

---

KIRK, HUTH, LANGE & BADALAMENTI, P.L.C.
ROBERT W. KIRK (P35627)
RAECHEL M. BADALAMENTI (P64361)
PATRICK S. MCKAY (P72106)
Attorneys for Jode Investments, LLC, Club
Golf Properties, LLC, Club Golf Investors,
LLC, Anthony Marrocco and Anthony Fanelli
19500 Hall Road, Suite 100
Clinton Township, MI  48038
(586) 412-4900  Fax:  (586) 412-4949

---

## NOTICE OF HEARING AND PROOF OF SERVICE

The Show Cause Hearing, pursuant to the Verified Ex-Parte Motion for Order to Show

Cause Why Simone Mauro Should Not Be Held in Contempt of Court is scheduled for **8:00 a.m.**

**on Monday, March 19, 2012.**

1

The undersigned hereby certifies that on March 2, 2012 he served copies of this Notice of Hearing, the Order to Show Cause, a copy of the Verified Ex-Parte Motion for Order to Show Cause Why Simone Mauro Should Not Be Held in Contempt of Court and this Proof of Service upon Defendant Simone Mauro by electronic mail at his last known email address of simone@gennamauro.com and by first class mail with postage pre-paid thereon at his last known address of 57127 Willow Way, Washington Township, Michigan 48094.

I declare that the above statements are true to the best of my knowledge, information and belief.

Respectfully submitted,

**KIRK, HUTH, LANGE**
**& BADALAMENTI, PLC**

By: PATRICK S. MCKAY (P72106)
Attorney for Plaintiff
19500 Hall Road, Suite 100
Clinton Township, MI 48038
(586)412-4900

Dated: March 2, 2012

| STATE OF MICHIGAN<br>COUNTY OF MACOMB<br>CIRCUIT COURT | **REQUEST FOR HEARING**<br>NOTICE OF HEARING<br>PROOF OF SERVICE | Circuit Court No:<br><br>2011- 000291-CZ |
|---|---|---|

| Plaintiff Name:<br>JODE INVESTMENTS, LLC, CLUB GOLF PROPERTIES, LLC, AND CLUB GOLF INVESTORS, LLC | v | Defendant Name<br>BURNING TREE PROPERTIES, LLC, BURNING TREE INVESTORS, LLC, SIMONE MAURO, SALVATORE DIMERCURIO, AND SERGIO GESUALE |
|---|---|---|

1. Motion(s): Show Cause Hearing Why Simone Mauro Should not be held in Contempt of Court

2. Relief sought: Order Mauro to execute assignment of all assets and contempt

3. Moving Party: Plaintiffs Jode Investments, LLC, Club Golf Properties, LLC and Club Golf Investors, LLC and Third-Party Defendants/Counter-Plaintiffs Anthony Marrocco and Anthony Fanelli

Atty/Moving Party: Robert W. Kirk (P35627)/Raechel M. Badalamenti (P64361)
Phone No. of Atty/Moving Party (586) 412-4900

4. Responding parties/attorneys (include Bar No.(s))      Simone Mauro

5. [ ] I certify that I made personal contact with the individual(s) listed below requesting concurrence in the relief sought but it was denied:
   [X]   I certify that I made reasonable and diligent efforts to contact the individual(s) listed below but was unable to do so.

| Simone Mauro | various |
|---|---|
| Individual Contacted | Date(s) |

6. **NOTICE OF HEARING:**   The above motion(s) will be heard as follows:

| Judge    Hon. John Foster | Date **Monday, March 19, 2012** | Time   8:00 a.m. |
|---|---|---|

   **Please note: Per LCR 2.119 and MCR 2.116(G)(1)(c) and MCR 2.119(A)(2), a copy of a motion or response must be provided to the office of the judge hearing the motion! Judge's copy must be clearly marked "JUDGE'S COPY."**

| Signature of moving attorney or party | March 2, 2011<br>Date |
|---|---|

| ☐ Motion Fee Paid | **FOR COURT USE ONLY** |
|---|---|
| Adj to:<br>REFEREE | ☐ THIS MOTION IS REFERRED TO A FRIEND OF THE COURT |

6. **PROOF OF SERVICE:**

   I certify that I served a copy of this document and the motion and Order to Show Cause referred to in paragraph 1 to Simone Mauro by electronic mail to simone@gennamauro.com and by first class mail to his last known address of 57127 Willow Way, Washington Township, Michigan 48094, as permitted by the Order to Show Cause. I declare that the statements above are true to the best of my information, knowledge and belief.

| Patrick S. McKay (P72106) | 3-2-12<br>Date |
|---|---|

# EXHIBIT 3

# KIRK, HUTH, LANGE
# & BADALAMENTI, PLC
### ATTORNEYS AT LAW

ROBERT W. KIRK *
ROBERT S. HUTH, JR.
CRAIG W. LANGE
RAECHEL M. BADALAMENTI
MARYANNE J. DENEWETH
ROBERT F. CELLA
ROSEMARY V. DAVIS
PATRICK S. MCKAY
OLIVIA N. KEUTEN
KATHRYN E. TIGNANELLI

*Also Member of Florida Bar

19500 HALL ROAD
SUITE 100
CLINTON TOWNSHIP, MICHIGAN 48038

———

(586) 412-4900

www.KHLBlaw.com

WRITER'S E-MAIL: pmckay@KHLBlaw.com
FACSIMILE: (586) 412-4949

March 2, 2012

### Via First Class Mail and Electronic Mail to simone@gennamauro.com

Simone Mauro
57127 Willow Way
Washington Township, MI 48094

Re:   **Jode Investments, LLC et. al. v. Burning Tree Properties, LLC et. al.**
      **Macomb County Circuit Court Case No.: 11-291-CZ**

Dear Mr. Mauro:

Enclosed please find an Order to Show Cause, Verified Ex-Parte Motion for Order to Show Cause and Notice of Hearing with Proof of Service thereon. If you wish to forgo the Show Cause Hearing please execute in the presence of a notary the Assignment of Assets attached as Exhibit C to the Verified Ex-Parte Motion for Order to Show Cause and provide us with an original no later than 4:30 p.m. on March 15, 2012.

Please contact me if you have any questions.

Very truly yours,

**KIRK, HUTH, LANGE**
**& BADALAMENTI, PLC**

Patrick S. McKay

Enclosures

xc:   Anthony Fanelli (via e-mail)
      Anthony V. Marrocco (via e-mail)

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF MACOMB

JODE INVESTMENTS, LLC,
CLUB GOLF PROPERTIES, LLC, AND
CLUB GOLF INVESTORS, LLC,

     Plaintiffs/Counter-Defendants,

                                  Case No. 11-291-CZ
                                  Hon. John C. Foster

vs.
BURNING TREE PROPERTIES, LLC,
BURNING TREE INVESTORS, LLC,
SIMONE MAURO, SALVATORE
DIMERCURIO, AND SERGIO GESUALE,

        Defendants/Counter-Plaintiffs and
        Third Party Plaintiffs,

vs.
ANTHONY MARROCCO and
ANTHONY FANELLI,

        Third-Party Defendants/Counter-Plaintiffs.

_____/

KIRK, HUTH, LANGE & BADALAMENTI, P.L.C.
ROBERT W. KIRK (P35627)
RAECHEL M. BADALAMENTI (P64361)
PATRICK S. MCKAY (P72106)
Attorneys for Jode Investments, LLC, Club
Golf Properties, LLC, Club Golf Investors,
LLC, Anthony Marrocco and Anthony Fanelli
19500 Hall Road, Suite 100
Clinton Township, MI 48038
(586) 412-4900  Fax: (586) 412-4949

_____/

## ORDER TO SHOW CAUSE

     This matter having come before the Court upon Plaintiffs Jode Investments, LLC, Club

Golf Properties, LLC, and Club Golf, Inc. and Third Party Defendants/Counter-Plaintiffs

Anthony Marrocco and Anthony Fanelli ("Plaintiffs") Verified Ex-Parte Motion for Order to

Show Cause, and otherwise having been fully advised in the premises:

**IT IS HEREBY ORDERED** that Defendant Simone Mauro shall appear before the Honorable John C. Foster, Macomb County Circuit Court, 40 N. Main St, Mt, Clemens, Michigan on **Monday, March 12, 2012** at 8:00 a.m., to show cause why he should not be held in Contempt of Court for his continued failure to comply with this Honorable Court's Rulings and Orders, and to show cause why the Court should not grant the additional relief as requested in the Verified Ex-Parte Motion for Order to Show Cause.

**IT IS FURTHER ORDERED** that all Defendant Simone Mauro be served with said Motion and this Order to Show Cause on or before Monday, March 5, 2012, by electronic mail at his known email address of simone@gennamauro.com. *and by 1st class mail at last known address.*

Date: March 1, 2012

_____
Hon. John C. Foster

JOHN C. FOSTER
CIRCUIT JUDGE

MAR 0 1 2012

A TRUE COPY
CARMELLA SABAUGH, COUNTY CLERK
BY: Cheryl P Burgh
Court Clerk

2

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF MACOMB

JODE INVESTMENTS, LLC,
CLUB GOLF PROPERTIES, LLC, AND
CLUB GOLF INVESTORS, LLC,

     Plaintiffs/Counter-Defendants,

vs.

BURNING TREE PROPERTIES, LLC,
BURNING TREE INVESTORS, LLC,
SIMONE MAURO, SALVATORE
DIMERCURIO, AND SERGIO GESUALE,

     Defendants/Counter-Plaintiffs and
     Third Party Plaintiffs,

vs.

ANTHONY MARROCCO and
ANTHONY FANELLI,

     Third-Party Defendants/Counter-Plaintiffs.

Case No. 11-291-CZ
Hon. John C. Foster

_____/

KIRK, HUTH, LANGE & BADALAMENTI, P.L.C.
ROBERT W. KIRK (P35627)
RAECHEL M. BADALAMENTI (P64361)
PATRICK S. MCKAY (P72106)
Attorneys for Jode Investments, LLC, Club
Golf Properties, LLC, Club Golf Investors,
LLC, Anthony Marrocco and Anthony Fanelli
19500 Hall Road, Suite 100
Clinton Township, MI 48038
(586) 412-4900  Fax: (586) 412-4949

_____/

## VERIFIED EX-PARTE MOTION FOR ORDER TO SHOW CAUSE WHY SIMONE MAURO SHOULD NOT BE HELD IN CONTEMPT OF COURT

NOW COME Plaintiffs Jode Investments, LLC, Club Golf Properties, LLC, and Club

Golf, Inc. and Third Party Defendants/Counter-Plaintiffs Anthony Marrocco and Anthony

Fanelli (hereinafter collectively "Plaintiffs"), by and through their attorneys, KIRK, HUTH,

1

LANGE & BADALAMENTI, P.L.C., and for their Ex-Parte Motion for Order to Show Cause Why Simone Mauro Should not be Held in Contempt of Court, state as follows:

1.     On November 11, 2011, this Court issued an Opinion and Order Granting Plaintiffs' Motion for Partial Summary Disposition of Counts II-V which provides, in relevant part, that "Fifth Third Bank disposed of BT Investors' assets after default, **transferred to plaintiffs for value all of BT Investors rights in the collateral, and discharged security interest** [pursuant to] MCL 440.9617(1). Therefore, plaintiffs take free of all claims if they acted in good faith [pursuant to] MCL 440.9617(2). Defendants do not allege and the record does not demonstrate bad faith, but rather that plaintiffs acted in good faith in the transaction. **Accordingly, even if Fifth Third Bank failed to comply with the UCC, plaintiffs/third-party defendants take BT Investors' assets free of any claims of defendants." Exhibit A, p. 7-8.**

2.     Even after the Opinion and Order dated 11/18/2011, the Defendants refused to execute an assignment of *all* BT Investors' assets because, they asserted, there had been no ruling particularly requiring an assignment to Plaintiffs of BT Investors' liquor license. Plaintiffs' Motion for Disbursement of Escrow and for Assignment of Liquor License was thereafter filed.

3.     On January 31, 2012, this Court issued an Opinion and Order granting in part Plaintiffs' Motion for Disbursement of Escrow and for Assignment of Liquor License which confirmed that the BT Investors' liquor license was to be assigned to Plaintiffs. The Order dated 1/31/2012 required Plaintiffs to send Defendants a BT Investors' Assignment Agreement by 2/7/2012 and for Defendants to execute and return the assignment to Plaintiffs' counsel on or before 2/14/2012. **Exhibit B.**

4.     On February 7, 2012, pursuant to the foregoing, counsel for Plaintiffs served an

KIRK, HUTH, LANGE & BADALAMENTI, P.L.C.

Assignment of All Assets of Burning Tree Investors, LLC, including the Liquor License, upon counsel for Defendants for execution in accordance with the Court's Order dated 1/31/2012. **Exhibit C.** As this Court knows, Defendant Simone Mauro must execute this Assignment as Manager of BT Investors.

5.     There was no objection to the language of this Assignment of All Assets of Burning Tree Investors, LLC, including the Liquor License before February 14, 2012, nor was it returned executed as required by the Court's Order dated 1/31/2012.

6.     Instead, on February 14, 2012 Defendants' counsel filed a Motion to Withdraw. Following electronic receipt of this Motion to Withdraw, counsel for Plaintiffs asked counsel for Defendants about whether the Assignment of All Assets would be executed by the close of business that same day as required by the Court's Order dated 1/31/2012. Counsel for Defendants thereafter responded that the Assignment of All Assets is "not a proper document to present for signature" given the Court's rulings in this matter. **Exhibit D.**

7.     This Assignment of All Assets is required to confirm transfer and ownership, with an effective date of 5/4/2010, of the all of the assets of Burning Tree Investors, LLC "free of any claim by Defendants" as set forth in this Court's Orders dated 11/18/2011 and 1/31/2012. Accordingly, Plaintiffs objected to the withdrawal of defense counsel before the Assignment of All Assets was duly executed and returned to their counsel.

8.     On February 21, 2012, this Court heard defense counsel's Motion to Withdraw and, while granting the request to withdraw, advised that the refusal to execute the Assignment of All Assets should be brought before the Court for Show Cause hearing so the Court could evaluate whether the proposed Assignment was proper and, if so, whether Defendants could show cause for refusal to execute.

3

9. The failure of Defendants to execute the Assignment of All Assets in violation of the directives in this Court's Orders dated 11/18/2011 and 1/31/2012 continues to severely prejudice Plaintiffs. More particularly, the Plaintiffs need to formalize the assignment of the liquor license through the Macomb Township and the Michigan Liquor Control Commission to properly operating the Burning Tree Golf Course. Plaintiffs should have been able to begin this process on May 4, 2010, but Defendants, including Simone Mauro continue to hinder these efforts. This has imposed upon the Plaintiffs significant tax consequences and financial burdens.

10. Additionally, there is no dispute that there exists no other pre-cursor(s) to the winding-up and dissolution of Burning Tree Investors, LLC. To this end, the Defendants, who have contributed zero to the expense of maintaining this defunct entity, are quite apparently operating in bad faith by refusing to execute an Assignment.

11. MCL 600.1701(g) provides that the Honorable Court has to power to punish by fine or imprisonment, or both, all persons for disobeying any lawful order, decree or process of the Court.

12. For his refusal to execute the Assignment of All Assets in the face of this Court's Orders dated 11/18/2011 and 1/31/2012, Defendant Simone Mauro should be held in civil contempt which may include the imposition of jail time, monetary fines, injunctive relief, and similar orders. *Harvey v. Lewis*, 10 Mich.App. 709, 717 (1968). Unlike criminal contempt, a civil contemnor may be incarcerated, without a fixed term, until he remedies the contempt or loses the ability to remedy the contempt. *In re Contempt of Calcutt*, 184 Mich.App. 749, 758 (1990) and MCL 600.1715(2).

13. Pursuant to MCL 600.1721, the contempt order must also require Defendant Simone Mauro to pay the Plaintiffs reasonable attorney fees and costs for having to file its

KIRK, HUTH, LANGE & BADALAMENTI, P.L.C.

4

Response to the Motion to Withdraw and the instant Motion. *In re Contempt of Calcutt*, 184 Mich.App. 749, 758(1990).

WHEREFORE, Plaintiffs, by and through their attorneys KIRK, HUTH, LANGE & BADALAMENTI, P.L.C. request that this Honorable Court enter an order:

A. Requiring Defendant Simone Mauro to appear before this Honorable Court on **Monday, March 12, 2012, at 8:30 a.m.** to show cause why he shall not be held in Contempt of Court for his continued refusal comply with this Court's Orders dated 11/18/2011 and 1/31/2012;

B. Requiring Defendant Simone Mauro to execute the Assignment of All Assets which is attached hereto as **Exhibit C** or, alternatively, entering the Order of Assignment of All Assets, Including Liquor License, attached hereto as **Exhibit D** which is required by the Michigan Liquor Control Commission to effectuate the transfer of the subject assets;

C. Awarding Plaintiffs a contempt judgment in an amount not less than $2,120.00 (7 attorney hours, plus $20.00 motion fee) against Defendant Simone Mauro; and

D. Awarding any other such relief this Honorable Court deems appropriate.

## BRIEF IN SUPPORT

In support of this Motion, Plaintiffs, by and through their attorneys KIRK, HUTH, LANGE & BADALAMENTI, P.L.C. relies on the provisions of MCR 3.606, MCL 600.1701(g), MCL 600.1715 and MCL 600.1721, the Orders of this Honorable Court, the facts stated in the foregoing Motion and the authority and discretion of this Honorable Court.

WHEREFORE, Plaintiffs, by and through their attorneys KIRK, HUTH, LANGE & BADALAMENTI, P.L.C. request that this Honorable Court enter an order:

5

A. Requiring Defendant Simone Mauro to appear before this Honorable Court on **Monday, March 12, 2012, at 8:30 a.m.** to show cause why he shall not be held in Contempt of Court for his continued refusal comply with this Court's Orders dated 11/18/2011 and 1/31/2012;

B. Requiring Defendant Simone Mauro to execute the Assignment of All Assets which is attached hereto as **Exhibit C** or, alternatively, entering the Order of Assignment of All Assets, Including Liquor License, attached hereto as **Exhibit D** which is required by the Michigan Liquor Control Commission to effectuate the transfer of the subject assets;

C. Awarding Plaintiffs a contempt judgment in an amount not less than $2,120.00 (7 attorney hours, plus $20.00 motion fee) against Defendant Simone Mauro; and

D. Awarding any other such relief this Honorable Court deems appropriate.

## VERIFICATION

I DECLARE THAT I HAVE READ THE FOREGOING AND THAT THE STATEMENTS THEREIN ARE TRUE TO THE BEST OF MY KNOWLEDGE, INFORMATION AND BELIEF:

PATRICK S. MCKAY
Counsel for Plaintiffs

## VERIFICATION

I DECLARE THAT I HAVE READ THE FOREGOING AND THAT THE STATEMENTS THEREIN ARE TRUE TO THE BEST OF MY KNOWLEDGE, INFORMATION AND BELIEF:

RAECHEL M. BADALAMENTI
Counsel for Plaintiffs

6

Respectfully submitted,

KIRK, HUTH, LANGE
& BADALAMENTI, P.L.C.

ROBERT S. HUTH (P42531)
RAECHEL M. BADALAMENTI (P64361)
PATRICK S. MCKAY (P72106)
Attorneys for Plaintiff
19500 Hall Road, Suite 100
Clinton Township, MI 48038
(586) 412-4900

Dated: March 1, 2012

KIRK, HUTH, LANGE & BADALAMENTI, P.L.C.

*Exhibit A*

STATE OF MICHIGAN

MACOMB COUNTY CIRCUIT COURT

JODE INVESTMENTS, LLC,
CLUB GOLF PROPERTIES,
LLC, and CLUB GOLF
INVESTORS, LLC,

      Plaintiffs/Counter-Defendants,

vs.                                       Case No. 2011-291-CZ

BURNING TREE PROPERTIES,
LLC, BURNING TREE INVESTORS,
LLC, SIMONE MAURO, SALVATORE
DIMERCURIO, and SERGIO GESUALE,

      Defendants/Counter-Plaintiffs/
      Third Party Plaintiffs,

vs.

ANTHONY MARROCCO and
ANTHONY FANELLI,

      Third Party Defendants.

_____/

## OPINION AND ORDER

Plaintiffs/counter-defendants ("plaintiffs") and third party defendants have filed a motion for partial summary disposition of counts II-V of the counter-complaint/third party complaint pursuant to MCR 2.116(C)(7), (8), and (10). Defendants/counter-plaintiffs/third party plaintiffs ("defendants") have filed a response seeking denial of the motion. Additionally, defendants have filed a motion for reconsideration of the Court's Orders, dated July 5, 2011.

Plaintiffs filed their complaint on January 21, 2011 and first amended complaint on May 18, 2011. Plaintiffs contend in 2004 defendant Burning Tree Properties, LLC ("BT Properties")

and defendant Burning Tree Investors, LLC ("BT Investors") were formed for the purchase and operation of Burning Tree Golf and Country Club. Defendant BT Properties owned the real property and defendant BT Investors owned the personal property and operated the golf course. According to plaintiffs, plaintiff Jode Investment, defendant Simone Mauro, defendant Salvatore DiMercurio, and defendant Sergio Gesuale were each members with a 25% interest at all relevant times.

In January 2005 the parties acquired a loan from Fifth Third Bank in the amount of $3,360,000.00, which was secured by the assets of the BT entities, including the real and personal property, and personal guarantees. The parties defaulted on the loan by failing to make the balloon payment and Fifth Third Bank foreclosed on the real property by advertisement on October 23, 2009. On November 4, 2009, Fifth Third Bank successfully bid at the Sheriff's Sale in the amount of $1,500,000.00 and recorded a sheriff's deed to the real property. Fifth Third Bank initiated a lawsuit in Oakland County Circuit Court, Case No. 2009-105176-CH, to recover the deficiency balance of $1,963,824.44 from plaintiffs, defendants, and third parties, and to take possession and dispose of all of the personal property of BT Investors. Plaintiffs maintain plaintiffs and third party defendants entered into a settlement agreement with Fifth Third Bank and paid the sum of $2,100,000.00 to obtain the real and personal property, received an assignment of the redemption rights, and the UCC financing statements were terminated. Plaintiffs allege count I, dissolution of Burning Tree Properties, LLC; count II, dissolution of Burning Tree Investors, LLC; count III, declaratory judgment against all defendants; count IV, unjust enrichment against Burning Tree entities, Mauro, and DiMercurio; count V, breach of contract/specific performance against Mauro and DiMercurio; count VI, tortious interference against Mauro and DiMercurio; count VII, breach of fiduciary duty as to Mauro and DiMercurio;

2

count VIII, conversion (statutory and common law) against Mauro and DiMercurio; and count IX, fraudulent misrepresentation against Mauro and DiMercurio.

On April 28, 2011, defendants filed a counter-complaint and third-party complaint alleging count I, accounting; count II, conversion (statutory and common law); count III, claim and delivery; count IV, breach of contract; and count V, breach of fiduciary duty and breach of Michigan Limited Liability Act. The Court will separately address plaintiffs/third party defendants' motion for summary disposition of counts II-V of the counter-complaint/third party complaint and defendants' motion for reconsideration.

Plaintiffs/third party defendants' motion for partial summary disposition of counts II-V of counter-complaint/third party complaint

MCR 2.116(C)(7) permits summary disposition where the claim is barred because of any one of several occurrences. In reviewing a motion under MCR 2.116(C)(7), the Court accepts as true the plaintiff's well-pleaded allegations, construing them in the plaintiff's favor. *Hanley v Mazda Motor Corp*, 239 Mich App 596, 600; 609 NW2d 203 (2000). The Court must consider affidavits, pleadings, depositions, admissions, and documentary evidence filed or submitted by the parties when determining whether a genuine issue of material fact exists. *Id.* Where a material factual dispute exists such that factual development could provide a basis for recovery, summary disposition is inappropriate. *Kent v Alpine Valley Ski Area, Inc*, 240 Mich App 731, 736; 613 NW2d 383 (2000). Where no material facts are in dispute, whether the claim is barred is a question of law. *Id.*

Summary disposition may be granted pursuant to MCR 2.116(C)(8) on the ground that the opposing party "has failed to state a claim on which relief can be granted." *Radtke v Everett*, 442 Mich 368, 373; 501 NW2d 155 (1993). All factual allegations are accepted as true, as well

3

as any reasonable inferences or conclusions that can be drawn from the facts. *Id.* The motion should be granted only when the claim is so clearly unenforceable as a matter of law that no factual development could possibly justify a right of recovery. *Wade v Dep't of Corrections,* 439 Mich 158, 163; 483 NW2d 26 (1992); *Cork v Applebee's Inc,* 239 Mich App 311, 315-316; 608 NW2d 62 (2000).

A motion under MCR 2.116(C)(10) tests the factual support for a claim. In reviewing such a motion, the court will consider affidavits, pleadings, depositions, admissions, and documentary evidence filed in the action or submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion. *Smith v Globe Life Insurance Co,* 460 Mich 446, 454; 597 NW2d 28 (1999). A trial court may grant a motion for summary disposition under MCR 2.116(C)(10) if the affidavits or other documentary evidence show that there is (1) no genuine issue in respect to any material fact and (2) the moving party is entitled to judgment as a matter of law. *Smith, supra.* If the opposing party fails to present documentary evidence establishing the existence of a material factual dispute, the motion is properly granted. *Id.* at 446.

Plaintiffs argue they are not liable on any theory asserted by defendants for their acquisition of personal property of BT Investors. Plaintiffs maintain Fifth Third Bank had the right to take and transfer the interest in the personal property, with or without judicial enforcement, to plaintiffs. Accordingly, plaintiffs assert they are not liable under the claims of conversion and claim and delivery because there is no unlawful possession or taking. Additionally, plaintiffs argue the claims of breach of fiduciary duty and the limited liability act are without merit under the terms of the operating agreement and statute. Further, plaintiffs claim no provisions in the operating agreement support a claim of breach of contract.

4

In response, defendants assert the evidence does not support the claim that Fifth Third Bank transferred or sold the BT Investors' assets to plaintiffs under the UCC or other statutes. Defendants claim the law relied upon by plaintiffs is not applicable to this matter. According to defendants, there has been no sale or transfer and their counter-claims are valid.

The first issue the Court will address is whether the assets of BT Investors were sold or transferred to plaintiffs by Fifth Third Bank. Upon review of the record, including the Security Agreement, and applicable law, Fifth Third Bank was authorized to take possession of the goods and transfer them for value to plaintiffs with or without formal judicial process.

Upon a default a secured party has the rights and remedies provided for in the security agreement and "may reduce his claim to judgment, foreclosure or otherwise enforce the claim, security interest, or agricultural lien by any available judicial procedure." MCL 440.9601(1)(a), (4). A secured party's rights after default are not limited but are cumulative and may be exercised simultaneously, provided the secured party acts in good faith. MCL 440.9601(3); UCC §9-601 comment 5. Upon a default, a secured party may take possession of the collateral or dispose of the collateral on the debtor's property with or without judicial process, provided it proceeds without a breach of the peace. MCL 440.9609. Once a secured party takes possession, the secured party has the right to transfer the secured items for value without formal process. MCL 440.9601(6). "After default, a secured party may sell, lease, license, or otherwise dispose of any or all of the collateral in its present condition or following any commercially reasonable preparation or processing." MCL 440.9610(1).

In this case, the Security Agreements and UCC expressly authorized Fifth Third Bank to take possession of the collateral and sell or dispose of it in any commercially reasonable manner. *See* Exhibit 15 of Plaintiffs' motion for partial summary disposition. The parties do not dispute

that a default occurred and Fifth Third Bank had the right to dispose of the collateral. Fifth Third Bank filed the Oakland County lawsuit demanding immediate possession for sale of the personal property of BT Investors. *See* Exhibit 4 of Plaintiffs' motion for partial summary disposition. The parties to that lawsuit entered into several settlement agreements. The Settlement Agreement, dated April 23, 2010, between Fifth Third Bank, Mr. Fanelli, and Mr. Marrocco, indicates they paid a portion of the $2,100,000.00 settlement payment to Fifth Third Bank to obtain releases of the encumbrances and UCC Financing Statements pertaining to the personal property of BT Investors. *See* Exhibit 3 of Plaintiffs' motion for partial summary disposition. The agreement specifically provided that Fifth Third Bank "shall file termination statements for any Uniform Commercial Code financing statements filed by Fifth Third as security for the Loan naming BTI or Borrower as the "Debtor" and discharge any interest claimed by Fifth Third in any liquor license held by BTI for the operation of the Burning Tree Property." *Id.* Additionally, the agreement provides that Mr. Fanelli and Mr. Marrocco "represent that they are creating new entities to take title to the Burning Tree Property and further to acquire any and all remaining assets of BTI and Borrower." *Id.* Due to the default, MCL 440.9601 and MCL 440.9610 authorized Fifth Third Bank to transfer or sell this personal property to plaintiffs, in the name of the new entity CG Investors, with or without formal judicial process. Pursuant to the settlement agreement, plaintiffs paid Fifth Third Bank $2,100,000.00 to acquire the real and personal property.

Defendants contest this transaction and claim the personal property was not transferred to plaintiffs pursuant to the settlement agreement. However, the settlement agreements executed by defendants indicate they acknowledged the transaction. *See* Exhibits 5 and 6 of Plaintiffs'

6

motion for partial summary disposition. Specifically, the Settlement Agreement, dated July 19, 2010, provides:

> Obligors understand and acknowledge that Lender has entered into a settlement with one or more of the Other Obligors and that one or more of the Other Obligors redeemed the mortgage, obtained terminations of the UCC financing statements and were released. Obligors have consulted with counsel of their choice, or have had the opportunity to consult with counsel of their choice, and have freely, knowingly, and voluntarily signed this Agreement and do not object to the settlement with the Other Obligors.

*See* Exhibit 6 of Plaintiffs' motion for partial summary disposition at 9. Accordingly, defendants assertion that the settlement agreement did not transfer the interest in the personal property or that they were unaware of this transfer is without merit.

Moreover, defendants maintain various requirements of the UCC were not followed by Fifth Third Bank during the transfer of the assets. However, MCL 440.9617 provides in pertinent part:

> (1) A secured party's disposition of collateral after default does all of the following:
> (a) Transfers to a transferee for value all of the debtor's rights in the collateral.
>
> (b) Discharges the security interest under which the disposition is made.
>
> (c) Discharges any subordinate security interest or other subordinate lien.
>
> (2) A transferee that acts in good faith takes free of the rights and interests described in subsection (1), even if the secured party fails to comply with this article or the requirements of any judicial proceeding.

See also *Cooper v Klopfenstein*, 29 Mich App 569; 185 NW2d 604 (1971).

In this matter, the record demonstrated Fifth Third Bank disposed of BT Investors' assets after default, transferred to plaintiffs for value all of BT Investors rights in the collateral, and discharged the security interest. MCL 440.9617(1). Therefore, plaintiffs take free of all claims if they acted in good faith. MCL 440.9617(2). Defendants do not allege and the record does not demonstrate bad faith, but rather that plaintiffs' acted in good faith in the transaction.

7

Accordingly, even if Fifth Third Bank failed to comply with the UCC, plaintiffs/third party defendants take BT Investors' assets free of any claims of defendants.

Based on the above analysis, count II, conversion, and count III, claim and delivery, must be dismissed.  First, the common law tort of conversion is defined as "any distinct act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with the rights therein."  *Head v Phillips Camper Sales & Rental, Inc*, 234 Mich App 94, 111; 593 NW2d 595 (1999), quoting *Foremost Ins Co v Allstate Ins Co*, 439 Mich 378, 391; 486 NW2d 600 (1992).  "The gist of conversion is the interference with control of the property." *Sarver v Detroit Edison Co*, 225 Mich App 580, 585; 571 NW2d 759 (1997) (internal citation omitted).  In addition, statutory conversion, pursuant to MCL 600.2919a(1)(a), provides for damages three times the amount of actual damages to a person damaged as a result of another person's stealing or embezzling property or converting property to the other person's own use.  Liability for conversion does not arise if the actor is privileged to dispossess another of the chattel. *Sparling Plastic Industries, Inc v Sparling*, 229 Mich App 704; 583 NW2d 232 (1998); *Thoma v Tracy Motor Sales, Inc*, 360 Mich 434, 438; 104 NW2d 306 (1960).

Here, plaintiffs/third party defendants are in possession of the personal property of BT Investors after a payoff of Fifth Third Bank's encumbrances on this property, which is permitted by the Security Agreement and UCC.  Therefore, there is no wrongful act of dominion as a matter of law and summary disposition of count II is warranted.

Next, MCL 600.2920 and MCR 3.105 provide for a civil cause of action for "claim and delivery" to recover possession of tangible property, goods or chattels, which have been unlawfully taken or detained and for damages sustained by the unlawful taking or detention.  See *Sparling Plastic Indus, supra* at 713-714; *Whitecraft v Wolfe*, 148 Mich App 40, 44; 384 NW2d

8

400 (1985). In this matter, as discussed above, there was no unlawful taking or unlawful detention of the personal property of BT Investors by plaintiffs/third party defendants and summary disposition on count III is granted.

Finally, the Court will address count IV, breach of contract, and count V, breach of fiduciary duty and Michigan Limited Liability Act. Defendants' allegations to support these counts relate to the transfer of BT Investors' assets to plaintiffs/third party defendants. However, as discussed above, the record demonstrates this transaction was permissible and plaintiffs/third party defendants acted in good faith. The Operating Agreement does not prohibit plaintiffs/third party defendants' actions. Defendants rely on §8.1 and 8.3 of the Operating Agreement which require consent by members for transactions conveying assets or exercising power on behalf of the company. However, Fifth Third Bank, due to the default, had the authority to transfer the assets to plaintiffs/third party defendants. Defendants fail to establish that the members of BT Investors were required to consent to this transaction. Further, defendants fail to provide evidence that plaintiffs/third party defendants discharged their duties under the Operating agreement in bad faith, contrary to §8.1. Accordingly, the Court finds summary disposition in favor of plaintiffs/third party defendants on counts IV and V is warranted.

Defendants' motion for reconsideration

Following a hearing on July 5, 2011 regarding various discovery motions, the Court issued Orders granting, in part, and denying, in part Fifth Third Bank's motion to quash subpoena and protective order; denying defendants' request for protective order; and granting plaintiffs' motion to quash and protective order. Defendants now request reconsideration of the Court's rulings.

9

Motions for reconsideration are provided for at MCR 2.119. Such a motion is not to be granted unless filed within 21 days of the challenged decision. The moving party must demonstrate a palpable error by which the Court and the parties have been misled and show a different disposition of the motion must result from correction of the error. A motion for reconsideration, which merely presents the same issue ruled upon by the Court, either expressly or by reasonable implication, will not be granted. MCR 2.119(F)(3). The purpose of MCR 2.119(F)(3) is to allow a trial court to immediately correct any obvious mistakes it may have made in ruling on a motion, which would otherwise be subject to correction on appeal but at a much greater expense to the parties. *Bers v Bers*, 161 Mich App 457, 462; 411 NW2d 732 (1987). The grant or denial of a motion for reconsideration is a matter within the discretion of the trial court. *Cole v Ladbroke Racing Michigan, Inc*, 241 Mich App 1, 6-7; 614 NW2d 169 (2000).

Defendants assert the discovery orders are highly prejudicial. Defendants maintain the requested documents are relevant and/or reasonably calculated to lead to discoverable evidence. Additionally, defendants argue the documents requested by plaintiffs, and ordered by the Court, are not relevant.

Upon review of the record, the Court finds defendants' motion for reconsideration merely presents the same issues previously ruled upon by the Court. The Court will not entertain the same arguments defendants previously raised. Moreover, when considering a motion for reconsideration, it is well within the Court's discretion to refuse to entertain facts or legal arguments that were not only previously raised, but that could have been previously raised prior to the Court's original order. See, e.g., *Charbeneau v Wayne Co General Hospital*, 158 Mich

10

# EXHIBIT 4

# STATE OF MICHIGAN

# COURT OF APPEALS

JODE INVESTMENTS LLC, CLUB GOLF
PROPERTIES LLC, and CLUB GOLF
INVESTORS, LLC,

      Plaintiffs/Counter-Defendants-
      Appellees/Cross-Appellants,

v

BURNING TREE PROPERTIES, LLC,
BURNING TREE INVESTORS, LLC, SIMONE
MAURO, and SALVATORE DIMERCURIO,

      Defendants/Third-Party-Plaintiffs-
      Counter-Plaintiffs-
      Appellants/Cross-Appellees,

and

SERGIO GESUALE,

      Defendant-Appellant/Cross-
      Appellee,

and

ANTHONY MARROCCO and ANTHONY
FANELLI,

      Third-Party-Defendants-
      Appellees/Cross-Appellants.

UNPUBLISHED
April 17, 2014

No.  310957
Macomb Circuit Court
LC No.  2011-000291-CZ

Before:  JANSEN, P.J., and O'CONNELL and M. J. KELLY, JJ.

PER CURIAM.

-1-

In this dispute arising from the failure of Burning Tree Golf and Country Club beginning in January 2009 and its eventual acquisition by Club Golf Properties, LLC (Club Properties) and Club Golf, Inc. (Club Golf) (collectively the Club entities),[1] defendants Burning Tree Properties, LLC, Burning Tree Investors, LLC, Simone Mauro, and Salvatore DiMercurio appeal by right the trial court's orders granting summary disposition in favor of plaintiffs Jode Investments, LLC, the Club entities, and third-party defendants Anthony Marrocco and Anthony Fanelli. Jode Investments, LLC, the Club entities, and third-party defendants Marrocco and Fanelli cross-appeal by right the trial court's decision not to sanction the Burning Tree entities, Mauro and DiMercurio. On appeal, we agree that the trial court erred in several respects. However, under the facts peculiar to this case—including the bankruptcy of several parties—we decline to grant the relief requested by the parties. Instead, for the reasons more fully explained below, we affirm in part, reverse in part, vacate in part, and remand for further proceedings.

## 1. BASIC FACTS

In September 2004, Marrocco, Fanelli, Mauro, DiMercurio, Sergio Gesuale, and Ralph Patti formed two limited liability companies: Burning Tree Properties, LLC and Burning Tree Investors, LLC (collectively the Burning Tree entities). Marrocco and Fanelli did not participate in the formation of the Burning Tree entities in their individual capacities; instead, they caused their own limited liability company—Jode Investments—to form the new entities along with the other members. Eventually Jode Investments, Mauro, DiMercurio, and Gesuale each owned 25% of the Burning Tree entities. The members formed the Burning Tree entities to purchase and operate the Burning Tree Golf and Country Club; specifically, they organized Burning Tree Properties to purchase the golf course's real property and organized Burning Tree Investors to operate the golf course and country club.

The Burning Tree entities financed the purchase of the golf course with a $3,360,000 loan from Fifth Third Bank. To secure the loan, Burning Tree Properties granted Fifth Third a mortgage on its real property and Burning Tree Investors guaranteed the loan and provided Fifth Third with a security agreement covering all of its personal property, including its liquor license. Marrocco, Fanelli and the individual members of the Burning Tree entities also each personally guaranteed the loan. The note obligated the Burning Tree entities to make a balloon payment in January 2009, which they did not make.

Fifth Third foreclosed against Burning Tree's real property by advertisement and purchased the property at a foreclosure sale held in October 2009. Fifth Third bid $1,500,000 for the property and recorded its deed in November of that same year. The remaining debt after the foreclosure was approximately $2 million.

---

[1] We note that the caption refers to Club Golf Investors, LLC, which the parties seemed to use interchangeably with Club Golf, Inc., in many of the lower court filings. However, Club Golf Investors, LLC does not appear in a search of registered entities, but Club Golf does. The filings also show that Club Golf is in the business of managing a golf course and does business under the name Burning Tree Club. Therefore, we shall use Club Golf to refer to the successor entity that manages the golf course, but does not own the underlying real property.

In November 2009, Fifth Third sued the Burning Tree entities, DiMercurio, Fanelli, Gesuale, Marrocco, Mauro, and Patti. Fifth Third alleged that the Burning Tree Investors, DiMercurio, Fanelli, Gesuale, Marrocco, Mauro, and Patti breached their guaranties. It also alleged the right to take possession of Burning Tree Investors' personal property in partial satisfaction of the remaining debt. Fifth Third asked the circuit court to appoint a receiver to preserve the personal property and any profits from the operation of the golf course.

In April 2010, Marrocco and Fanelli entered into a settlement agreement with Fifth Third. Marrocco and Fanelli agreed to pay Fifth Third $2.1 million and to release all claims against Fifth Third. In exchange, Fifth Third agreed to dismiss its civil claims against Marrocco and Fanelli "with prejudice" and without impairing Fifth Third's right to proceed against the other guarantors. Fifth Third also agreed to quit claim its interest in "the Burning Tree Property" or issue a certificate of redemption to an entity to be named by Marrocco and Fanelli. Finally, Fifth Third agreed to terminate its financing statements under the Uniform Commercial Code (UCC) against Burning Tree Investors' personal property and discharge any interest in Burning Tree Investors' liquor license. Marrocco and Fanelli also represented that they intended to create an entity to acquire Burning Tree Investors' remaining assets.

Also in April 2010, members holding a 70% interest in Burning Tree Properties (Marrocco, on behalf of Jode Investments, Mauro, and DiMercurio) caused Burning Tree Properties to assign all of its "right, title, and interest" in the real property, including its redemption rights, to Club Properties.[2] Under the terms of the agreement, the manager of Burning Tree Properties had to execute a quit claim deed to Club Properties.

Club Properties paid $2,100,000 to Fifth Third as part of the settlement between Fifth Third, Fanelli, and Marrocco in May 2010. Fifth Third executed a 'redemption certificate' acknowledging that Club Properties had redeemed the real property in that same month. The redemption was not recorded until February 2011. Fifth Third also stipulated to the dismissal of its claims against the Burning Tree entities, Marrocco, Fanelli, and Patti.

In July 2010, Fifth Third settled with Mauro and DiMercurio. Under the settlement agreement, Mauro and DiMercurio agreed to each execute a deficiency note for $70,000 to cover their personal guaranties. In exchange, Fifth Third agreed that the settlement would resolve its claims against Mauro and DiMercurio. The circuit court dismissed Fifth Third's claims against Mauro and DiMercurio later that same month.

In January 2011, Jode Investments, Club Properties, and Club Golf Investors sued the Burning Tree entities, Mauro, DiMercurio, and Gesuale. Jode Investments and the Club entities alleged that a dispute had arisen between the members of the Burning Tree entities concerning the dissolution of those entities and the personal property owned by Burning Tree Investors. Jode Investments and the Club entities asked the trial court to order the dissolution of the two Burning Tree entities on the grounds that both entities were no longer able to carry on business and their members were deadlocked over whether to dissolve the entities' existence. They

---

[2] Club Golf and Club Properties were formed in April 2010.

alleged that Burning Tree Properties could not carry on its business because its only asset—the golf course—was now owned by Club Properties. They also alleged that Burning Tree Investors could no longer operate its business because Club Golf had taken over operation of the golf course.

Jode Investments and the Club entities also asked the trial court to declare that Club Properties owns the real property formerly owned by Burning Tree Properties and to declare that Club Golf owns the personal property formerly owned by Burning Tree Investors, including its liquor license. They alleged too that Mauro, DiMercurio, and Gesuale were unjustly enriched. Specifically, they alleged that the individual defendants directly benefited from Club Properties' settlement with Fifth Third and that it would be inequitable to permit them to retain the benefit from that settlement without compensating Club Properties. For that reason, they asked the trial court to order the other members of the Burning Tree entities to reimburse Jode Investments for the payments that it made to Fifth Third through Club Properties in settlement of the Burning Tree entities' debts. Finally, the Club entities alleged that Mauro, DiMercurio, and Gesuale each interfered with their business expectations by refusing to release Burning Tree Investors' personal property to Club Investors and by restricting the Club entities' ability to operate the golf course.

In February 2011, Jode Investments and the Club entities filed a motion asking the trial court to issue an order to maintain the status quo. They alleged that, as of May 2010, Club Properties owned the golf course's real property and Burning Tree Investors had ceased operating the golf course. The Club entities, they further alleged, were operating the golf course. For these reasons, they asked the trial court to order Burning Tree Investors to transfer all of its personal property, including its liquor license, to Club Golf so that the Club entities could properly run the business pending resolution of the claims.

The Burning Tree entities and individual defendants opposed the motion. They argued that Jode Investments and the Club entities were in effect asking the court to grant them the relief requested in their complaint, which would amount to an improper prejudgment attachment.

In March 2011, the trial court issued an order providing that Jode Investments shall "continue to operate the golf course" until further order of the court. It otherwise denied all other relief requested in the motion.

In April 2011, the Burning Tree entities, Mauro, DiMercurio, and Gesuale, countersued Jode Investments and the Club entities and sued Marrocco and Fanelli in their individual capacities. For their first claim, they alleged that Jode Investments, the Club entities, and Marrocco and Fanelli seized control of the day-to-day operation of the golf course and, therefore, had an obligation to provide the accounting. The Burning Tree entities, Mauro, and DiMercurio also alleged that Jode Investments, the Club entities, and Marrocco and Fanelli wrongfully exercised dominion over Burning Tree Investors' personal property; accordingly, they asked for damages for the conversion and the return of the property. Finally, they alleged that Jode Investments breached the Burning Tree Investors' operating agreement and breached its fiduciary duties to the members of Burning Tree Investors, in relevant part, by operating the golf course and settling with Fifth Third without obtaining permission from a majority of Burning Tree Investors' members.

-4-

In May 2011, Jode Investments and the Club entities, along with Marrocco and Fanelli, filed an amended complaint. Jode Investments, the Club entities, and Fanelli and Marrocco alleged that Mauro was the managing member of the Burning Tree entities and that he took no actions to save the golf course from foreclosure. They further claimed that, after Fifth Third sued them in circuit court, Mauro abandoned his obligation to manage the golf course for the Burning Tree entities. They similarly alleged that DiMercurio and Gesuale abandoned any involvement with the Burning Tree entities. They asked the trial court to dissolve the Burning Tree entities and declare that the Club entities own all the real and personal property formerly owned by the Burning Tree entities. They also restated claims for unjust enrichment, breach of the Burning Tree entities' operating agreements, and tortious interference. In a new claim, they alleged that Mauro and DiMercurio breached their fiduciary duties by abandoning their obligation to continue operations and by engaging in self-dealing. They also alleged claims of conversion and interference with the Club entities' operation of the golf course.

In July 2011, the trial court ordered the escrow of a tax refund obtained on behalf of Burning Tree Properties and provided that it could not be distributed except on stipulation of the parties or order of the court.

In September 2011, Jode Investments, the Club entities, Marrocco, Fanelli moved for partial summary disposition of the claims against them under MCR 2.116(C)(7), (C)(8), and (C)(10). They argued that the claims against them for conversion, claim and delivery, and breach of fiduciary duty were untenable because the undisputed facts showed that Club Golf lawfully acquired Burning Tree Investors' personal property. Specifically, they alleged that the Burning Tree entities and Mauro and DiMercurio were aware that Marrocco and Fanelli settled with Fifth Third and redeemed the Burning Tree entities' property and waived any objection to the settlement. They also argued that their redemption amounted to a disposition after default under the UCC, which transferred Burning Tree Investors' personal property to Club Golf.

In response, the Burning Tree entities and Mauro[3] argued that Fifth Third never exercised its right to take possession of Burning Tree Investors' personal property; indeed, they contended that Fifth Third disavowed having made a disposition of the collateral after the Burning Tree entities' default.

The trial court issued its opinion and order granting the motion for partial summary disposition in November 2011. The trial court noted that Fifth Third had the right to seize Burning Tree Investors' personal property after the default. The trial court then examined the settlement between Fifth Third, Marrocco, and Fanelli and determined that Fifth Third agreed to transfer its rights in Burning Tree Investors' property to an entity to be named by Marrocco and Fanelli in that agreement. The trial court stated that Mauro and the other non-moving parties had acknowledged in their own settlements with Fifth Third that Marrocco and Fanelli had "redeemed the mortgage, obtained terminations of the UCC financing statements, and were released." It concluded that the undisputed evidence showed that Marrocco and Fanelli lawfully

---

[3] DiMercurio did not join the response because the trial court closed the case as to him after he filed for bankruptcy.

obtained Burning Tree Investors' personal property and did so in good faith. Because the transfer of the personal property was proper, it agreed that the claims for conversion, claim and delivery, breach of fiduciary duty, and breach of contract must be dismissed.

In December 2011, Jode Investments, the Club entities, Marrocco, and Fanelli filed two motions. In their first motion they asked the trial court to order the escrowed tax refund to be disbursed to them and asked for an order compelling Burning Tree Investors to assign its liquor license. They argued that the tax refund and liquor license were personal property, which belonged to them—as the trial court already determined—after the settlement with Fifth Third. In a separate motion, they asked the trial court to order Mauro to execute a quit claim deed transferring Burning Tree Properties' real estate, as contemplated under the April 2010 assignment of the right of redemption.

In response, Mauro and the Burning Tree entities argued that the trial court should deny the motions as premature. They argued that the trial court's order granting summary disposition did not address the ownership of the tax refund and, before distributing any assets, the trial court should calculate the value of the personal property to determine whether the members were entitled to any surplus.

The trial court granted the motion for specific performance in January 2012. Accordingly, the trial court ordered Mauro to execute the quitclaim deed transferring the golf course's real property to Club Properties. However, in an opinion and order entered in February 2012, the trial court denied the request to disburse the escrowed tax refund without prejudice, but ordered the assignment of Burning Tree Investors' liquor license.

In March 2012, Jode Investments, the Club entities, Marrocco and Fanelli moved to show cause why Mauro should not be held in contempt for failing to comply with the trial court's orders by formally transferring Burning Tree Investors' personal property, including the liquor license. After a hearing, the trial court held Mauro in contempt; it ordered Mauro remanded to the county jail until he executed the assignment and ordered him to pay more than $2,000 in costs. After Mauro executed the assignment, the trial court ordered his release.

The trial court also ordered the disbursement of the escrowed tax refund to Jode Investments, the Club entities, Marrocco, and Fanelli on reconsideration in that same month. The trial court determined that they were entitled to the refund because Burning Tree Properties assigned its right and title to the real property to Club Properties.

In April 2012, Jode Investments, the Club entities, Marrocco, and Fanelli moved for an order dissolving the Burning Tree entities. They noted that the Burning Tree entities' were no longer represented and no longer had any assets and could not conduct business. For those reasons, they asked the court to enter an order dissolving both entities and asked the trial court to dismiss their own claims without prejudice.

The trial court granted the motion to dissolve Burning Tree Properties in April 2012 and granted the motion as to Burning Tree Investors in June 2012. In the latter order, the trial court also dismissed Jode Investments, the Club entities and Marrocco and Fanelli's remaining claims without prejudice. The trial court indicated that this was the final order and closed the case.

-6-

The Burning Tree entities moved for reconsideration in June 2012, but the trial court struck the motion as untimely in July 2012.

The parties now appeal to this Court.

## II. THE BURNING TREE ENTITIES' ASSETS AND DISSOLUTION

### A. STANDARDS OF REVIEW

On appeal, the Burning Tree entities, Mauro and DiMercurio raise several claims of error. They argue that the trial court erred when it determined that the undisputed evidence showed that Fifth Third transferred all of the Burning Tree entities' property—real and personal—to Marrocco and Fanelli in the settlement agreement and related documents. They contend that the evidence showed that Fifth Third only had a security interest in Burning Tree Investors' personal property and that Fifth Third did not seize the personal property. They also argue that, after Marrocco and Fanelli paid the redemption price for Burning Tree Properties' real property, Fifth Third's sheriff's deed became void and title to the real property reverted back to Burning Tree Properties. They further maintain that the trial court improperly ordered the dissolution of the Burning Tree entities. On the basis of these errors, they ask this Court to reverse the trial court's erroneous opinions and orders and further order the real and personal property—including the liquor license—returned to the Burning Tree entities.

This Court reviews de novo a trial court's decision on a motion for summary disposition. *Barnard Mfg Co, Inc v Gates Performance Engineering, Inc*, 285 Mich App 362, 369; 775 NW2d 618 (2009). This Court also reviews de novo the proper interpretation of contractual agreements. *Rory v Continental Ins Co*, 473 Mich 457, 464; 703 NW2d 23 (2005). Likewise, this Court reviews de novo whether the trial court properly selected, interpreted, and applied the law. *Gay v Select Specialty Hosp*, 295 Mich App 284, 291; 813 NW2d 354 (2012). To the extent that the claims of error involve the trial court's discretionary decisions, this Court reviews the exercise of discretion for abuse. *Maldonado v Ford Motor Co*, 476 Mich 372, 388; 719 NW2d 809 (2006).

### B. BURNING TREE INVESTORS' PERSONAL PROPERTY

We shall first address the Burning Tree entities' argument that the trial court erred when it determined that the undisputed evidence showed that Fifth Third transferred all of Burning Tree Investors' personal property, including the liquor license, to Marrocco and Fanelli.

It is undisputed that Burning Tree Investors pledged all its personal property, including its liquor license, as security for repayment of the funds borrowed from Fifth Third to finance the purchase of the golf course. It is also undisputed that Burning Tree Investors defaulted on the terms of the note in January 2009. After Burning Tree investors defaulted, Fifth Third had the right to take possession of Burning Tree Investors' personal property. MCL 440.9609(1). It had the right to take possession through judicial process or without judicial process as long as it proceeded without breaching the peace. MCL 440.9609(2). Fifth Third also had the right to "sell, lease, license, or otherwise dispose of any or all of the collateral . . . ." MCL 440.9610(1); see also *Fodale v Waste Mgt of Mich, Inc*, 271 Mich App 11, 23; 718 NW2d 827 (2006). If, however, Fifth Third elected to take some affirmative act to exercise its right to dispose of

Burning Tree Investors' personal property, it would have had to comply with the protections afforded to debtors under the UCC. See, e.g., MCL 440.9610(2) (stating that every "aspect of the disposition" must be commercially reasonable); MCL 440.9610(3) (limiting the secured party's ability to purchase the collateral); MCL 440.9611 (stating the notice requirements that the secured party must meet before disposing of collateral); MCL 440.9615 (providing for the distribution of the proceeds from a secured party's disposition of collateral); MCL 440.9620 (stating the conditions under which a secured party may accept collateral in full or partial satisfaction of the obligation); see also *Fodale*, 271 Mich App at 24-33 (discussing the debtor's rights under the UCC). And it could be liable to Burning Tree Investors for any harm caused by its failure to comply with these statutory provisions. See MCL 440.9625. Reading these statutory provisions together, it is evident that Fifth Third had to take some affirmative step to assert its rights—that is, the UCC does not provide for an automatic transfer of collateral on a debtor's default and Fifth Third had no obligation to seize the collateral or take any particular action to dispose of Burning Tree Investors' personal property.

In their motion for summary disposition, Jode Investments, the Club entities, Marrocco, and Fanelli argued—and the trial court agreed—that the undisputed evidence showed that Fifth Third exercised its right to dispose of Burning Tree Investors' personal property. Specifically, they relied on the fact that Fifth Third had the right to dispose of the collateral at issue, sued Burning Tree Investors, and then entered into a settlement agreement in which it transferred the collateral for consideration to Marrocco and Fanelli. As already explained, having the right to dispose of collateral is not the same as acting on the right. Moreover, although Fifth Third elected to exercise its right to seek possession through judicial process by suing Burning Tree Investors, see MCL 440.9609(2), it did not complete that process; instead, it stipulated to the dismissal of its claims against Burning Tree Investors. Therefore, the propriety of the trial court's decision on the motion for summary disposition depends solely on whether Fifth Third took some act to dispose of Burning Tree Investors' personal property within the settlement agreement that it made with Marrocco and Fanelli.

Fifth Third entered into a settlement agreement with Marrocco, Fanelli, and Patti—in their individual capacities and as the trustees of their various trusts—after the Burning Tree entities' default. Notably, the settlement agreement did not include Jode Investments or the Burning Tree entities as parties. Instead, it related solely to Marrocco and Fanelli's personal guaranties.

In the background section, the parties to the settlement agreement referred to Marrocco and Fanelli's personal guaranties for the financing of the purchase of the "Burning Tree Property." Although the parties did not define the "Burning Tree Property", the parties recited that the financing was secured by a "mortgage" on the "Burning Tree Property together with various security agreements." The parties also stated that Fifth Third successfully bid for the "Burning Tree Property" at a foreclosure sale. Finally, the parties recited that it was their intent that Fifth Third would quitclaim its interest in the "Burning Tree Property" to an entity to be named by Marrocco and Fanelli, or would "issue a certificate of redemption" for that property. From these recitations, it is evident that the parties used "Burning Tree Property" to refer to the real property on which Fifth Third held a mortgage and which Fifth Third purchased at the foreclosure sale. The parties also plainly distinguished this property from the other collateral covered by the "various security agreements."

-8-

After making these background recitations, the parties stated the terms of the settlement. Marrocco and Fanelli (and Patti) agreed to pay $2.1 million to Fifth Third. In exchange, Fifth Third agreed to dismiss its claims against them in circuit court and to release them from their personal guaranties. As for the collateral, Fifth Third agreed to quitclaim its interest in the "Burning Tree Property" to a limited liability company to be named by Marrocco and Fanelli or, at their option, to issue a redemption certificate to the new entity. Fifth Third also agreed to file "termination statements" for its financing statements covering Burning Tree Investors' personal property and to discharge "any interest" that it might have in its liquor license.

These contractual provisions are not ambiguous and plainly do not provide any basis for concluding that Fifth Third took an affirmative step to "sell, lease, license, or otherwise dispose" of Burning Tree Investors' personal property—let alone transfer that property to Marrocco or Fanelli or the entity of their choice. MCL 440.9610(1). Fifth Third did not recite or warrant that it had taken possession or title to Burning Tree Investors' personal property or liquor license. In contrast, Marrocco and Fanelli warranted that they would be forming an entity to "take title to the Burning Tree Property and further to acquire any and all remaining assets" from Burning Tree Investors. By warranting that they *intended* to acquire Burning Tree Investors' assets, they acknowledged that Burning Tree Investors still held title to the personal property. In addition, at no point in the settlement agreement did Fifth Third promise to transfer, either by quitclaim or otherwise, any of its rights to Burning Tree Investors' personal property—whatever those rights might have been. The only thing that it agreed to do with regard to Burning Tree Investors' personal property was file a termination statement for its UCC financing statements. A termination statement renders the financing statement ineffective. MCL 440.9513(4). Stated another way, the filing of a termination statement constitutes a release of the lien against the debtor's property covered by the financing statement—it does not cause a transfer of any interest in the property. See *Crestar Bank v Neal*, 960 F2d 1242, 1245 (CA 4, 1992). As such, the only thing that Fifth Third promised with regard to the personal property at issue was to release its lien against the personal property, which it did; it did not promise to transfer or actually transfer any interest that it might have held or could have asserted with regard to the personal property.

On appeal, Jode Investments, the Club entities, Marrocco, and Fanelli argue that the trial court did not err when it interpreted this settlement agreement. They contend that the evidence showed that the separate settlements between Fifth Third, Mauro, and DiMercurio were conditioned on a successful settlement between Fifth Third, Marrocco, and Fanelli. This, they maintain, is evidence that Mauro and DiMercurio benefited from Marrocco and Fanelli's settlement with Fifth Third. They also noted in their motion for partial summary disposition that the payment that they made in settlement to Fifth Third exceeded the redemption price of the real estate; presumably because this showed that they intended to purchase more than just the real property with the settlement. However, courts must apply unambiguous contracts as written— they may not look beyond the intent actually expressed in the agreement. *Rory*, 473 Mich at 468-470, 469 n 21. And at no point in the settlement agreement at issue did Fifth Third assert that it had taken possession or title to Burning Tree Investors' personal property and at no point did it promise to take an affirmative step to transfer Burning Tree Investors' personal property to Marrocco or Fanelli or an entity of their choice. As such, this settlement agreement was not evidence that Jode Investments, the Club entities, Marrocco, Fanelli—or anyone else for that matter—had taken lawful title to Burning Tree Investors' personal property or liquor license.

Jode Investments, the Club entities, Marrocco, and Fanelli had the initial burden to demonstrate that they were entitled to summary disposition of the claims by the Burning Tree entities, Mauro, DiMercurio, and Gesuale; they had to meet this burden by both identifying the issues as to which they believed there was no question of fact and by presenting evidence that, if left unrebutted, would demonstrate that they were entitled to judgment as a matter of law. See *Barnard Mfg*, 285 Mich App at 369-370. In their motion, Jode Investments, the Club entities, Marrocco, and Fanelli relied exclusively on Marrocco and Fanelli's settlement agreement with Fifth Third as evidence that Fifth Third transferred Burning Tree Investors' property to them. Because that agreement did not purport to transfer Burning Tree Investors' property, they failed to demonstrate that they were entitled to summary disposition. Accordingly, the trial court should have denied their motion. *Id.* at 370. For the same reason, the trial court erred when it ordered Burning Tree Investors' to formalize the transfer of its assets to Club Golf under the mistaken belief that Club Golf had lawfully obtained title to the property through the settlement agreement with Fifth Third. There simply was no record evidence that Fifth Third took any steps to dispose of Burning Tree Investors' personal property.

On appeal, Jode Investments, the Club entities, Marrocco, and Fanelli in passing contend that the Club entities had lawful title to Burning Tree Investors' personal property because Mauro and DiMercurio caused the Burning Tree entities to assign their rights to "all" their assets to Marrocco and Fanelli. They did not, however, make this argument to the trial court in their motion for partial summary disposition. Indeed, in their motion, they noted the assignment, but acknowledged that it applied only to Burning Tree Properties—not Burning Tree Investors—and concerned only Burning Tree Properties' real property. Because they did not argue that this assignment gave them lawful title to Burning Tree Investors' personal property or liquor license before the trial court, to the extent that they now raise this as an alternate basis for relief, it is not properly before this Court. *Id.* at 380-381 (stating that this Court's review of a trial court's decision on a motion for summary disposition is limited to the arguments and evidence actually presented to the trial court).

On appeal, Jode Investments, the Club entities, Marrocco, and Fanelli make much of the fact that Fifth Third *could have* taken some action to dispose of Burning Tree Investors' personal property. They also argue that any failure on the part of Fifth Third to comply with the UCC provisions governing such a disposition would not invalidate the transfer. But these claims beg the question: what evidence is there that Fifth Third actually took some action to transfer Burning Tree Investors' personal property and liquor license? Jode Investments, the Club entities, Marrocco and Fanelli relied exclusively on their settlement with Fifth Third, but that settlement at no point purports to make such a transfer. Because there was no evidence that Fifth Third actually disposed of Burning Tree Investors' personal property, the trial court erred when it concluded otherwise. The undisputed evidence showed that Fifth Third agreed to take steps to formalize the transfer of only one asset in this settlement: Burning Tree Properties' real property. Each of its remaining promises involved relinquishing its liens against the personal property and liquor license.

-10-

The trial court erred when it dismissed the claims by the Burning Tree entities, Mauro, and DiMercurio on the grounds that Fifth Third transferred Burning Tree Investors' personal property and liquor license to Marrocco, Fanelli, or Club Golf. Given the unambiguous and undisputed evidence, those assets remained Burning Tree Investors' property. The trial court also erred when it order Burning Tree Investors to transfer those assets to a third party without compensation.

## C. BURNING TREE PROPERTIES' REAL PROPERTY

We shall next address the argument by the Burning Tree entities and Mauro that, after Marrocco and Fanelli paid the redemption price for Burning Tree Properties' real property, Fifth Third's sheriff's deed became void and title to the real property reverted back to Burning Tree Properties. By timely paying the required amount to redeem a property after a foreclosure sale, the redeeming party voids the deed obtained by the purchaser at a foreclosure sale. MCL 600.3240(1). After a foreclosure sale, equitable title to the property vests in the purchaser, but the mortgagor retains legal title until the expiration of the redemption period. *Ruby & Assoc, PC v Shore Financial Services*, 276 Mich App 110, 118; 741 NW2d 72 (2007), vacated not in relevant part 480 Mich 1107 (2008). The mortgagor's right to redeem is a property interest that may be conveyed to third parties. *Id.* And, if a party other than the mortgagor redeems the property, the redeeming party becomes subrogated to the "lien, priority, and remedies of the creditor whose claim" the redeeming party paid. *Lieblien v Hansen*, 178 Mich 11, 15; 144 NW 496 (1913). Thus, it stands to reason that a person who purchases a mortgagor's right to redeem purchases a contingent interest in the mortgagor's legal title, which vests when he or she makes the payment required to redeem the property. In any event, under the facts involved here, Club Properties plainly obtained full title to the real property at issue.

It is undisputed that Burning Tree Properties executed an assignment of its right to redeem the real property. Under the terms of the assignment, Burning Tree Properties conveyed to Club Properties all of its "right, title, and interest in and to any and all" of its "Redemption Rights" to the real property that Fifth Third purchased at foreclosure sale in October 2009. Burning Tree Properties also agreed that its manager had the authority "and shall execute" a quitclaim deed conveying the interest to the property to Club Properties. This assignment is unambiguous and clearly transferred Burning Tree Properties right to redeem the real estate at issue to Club Properties. In addition, when read as a whole, it is evident that Burning Tree Properties agreed to quitclaim title to Club Properties along with its right to redeem. Therefore, the trial court did not err when it ordered Burning Tree Properties to meet its obligations under the assignment and quitclaim its title to the real property to Club Properties.

## D. BURNING TREE PROPERTIES' TAX REFUND

The Burning Tree entities and Mauro also argue that the trial court erred when it determined that Burning Tree Properties' assignment of its right to redeem to Club Properties also transferred Burning Tree Properties' right to its tax refund. Jode Investments, the Club entities, Marrocco, and Fanelli contend that this Court should decline to address this claim of error because the Burning Tree entities and Mauro did not claim that the assignment of redemption was invalid before the trial court. The Burning Tree entities and Mauro state their belief on appeal that the assignment of redemption was of "questionable origin" and conclude

that the trial court should not have relied on it, but their real argument is that the trial court erred when it determined that the assignment of the right to redeem included an assignment of Burning Tree Properties' right to its tax refund. Although the argument was not fleshed out, the Burning Tree entities and Mauro did argue in their brief in opposition to the motion to disburse the tax refund that there was no evidence that Burning Tree Properties transferred its right to the tax refund. And, in its opinion and order on reconsideration, the trial court addressed this issue and concluded that Burning Tree Properties' assignment of its redemption rights included an assignment of the right to the tax refund. This was sufficient to preserve this issue for appeal.

As described above, Burning Tree Properties transferred to Club Properties all of its "right, title, and interest in and to any and all of [its] Redemption Rights to which [it] is now or may hereinafter become entitled" to the golf course, which "Fifth Third Bank purchased" at a foreclosure sale. Although this provision refers to rights "hereinafter" acquired, it also plainly limits the transfer to those rights—including the later acquired rights—involving the redemption of the real property. Burning Tree Properties also provided that its manager "shall execute" a quitclaim deed conveying its interest in the real property to Club Properties. Examining the language actually used in the assignment, there is no indication that Burning Tree Properties agreed to transfer anything other than the specified rights to the real property, whether then existing or later acquired. Accordingly, the trial court erred to the extent that it failed to enforce this assignment as written and instead expanded it to include interests other than those identified in the assignment. *Rory*, 473 Mich at 468-470.

## E. BREACH OF FIDUCIARY DUTY

The Burning Tree entities and Mauro also argue that the trial court erred when it dismissed their claims for breach of fiduciary duties. Specifically, they argue that the undisputed evidence showed that Marrocco and Fanelli were not authorized to settle with Fifth Third on behalf of the Burning Tree entities; consequently, they maintain, the settlement constituted a breach of their fiduciary duties. Marrocco and Fanelli settled with Fifth Third in their individual capacities and as the trustees of their own trusts—they did not purport to act on the Burning Tree entities' behalf. In addition, because the settlement agreement did not impair any asset or right held by either Burning Tree entity, the decision to settle with Fifth Third cannot serve as a basis for a claim that they breached their duties to the Burning Tree entities. Therefore, the trial court did not err when it dismissed the claims premised on Marrocco and Fanelli's decision to settle with Fifth Third, even if it did so for a different reason. *Taylor v Laban*, 241 Mich App 449, 458; 616 NW2d 229 (2000).

## F. DISSOLUTION

The Burning Tree entities and Mauro next argue that the trial court erred when it ordered the dissolution of the Burning Tree entities. Specifically, they argue that there was no evidence to establish any of the grounds permitting a trial court to dissolve a corporation under MCL 450.1823. Although the Burning Tree entities and Mauro cite the provisions governing the dissolution of corporations rather than limited liability companies, we agree that the trial court erred when it prematurely ordered the dissolution of the Burning Tree entities, in part, under a mistaken understanding of the facts.

A trial court has the discretion to dissolve a limited liability company upon the application of a member if the "company is unable to carry on its business in conformity with the articles of organization or operating agreements." MCL 450.4802. A trial court may be justified in ordering the dissolution of a limited liability company under this statute where there is evidence that the members are so deadlocked that the company is unable to carry on its business. Here the record plainly supports such a finding. However, the trial court's decision to order the dissolution of the Burning Tree entities was, at least in part, premised on its erroneous conclusion that the Burning Tree entities no longer had any assets after Fifth Third transferred Burning Tree Investors' property to Marrocco and Fanelli and Burning Tree Properties' transferred all of its property to Club Properties. Because its exercise of discretion was premised on this error, we agree that it abused its discretion. *Gay*, 295 Mich App at 291.

### III. CONTEMPT

The Burning Tree entities and Mauro finally argue that the trial court abused its discretion when it ordered him incarcerated for contempt of court for refusing to assign Burning Tree Investors' property to Club Golf. Specifically, they contend that the trial court abused its discretion by finding Mauro in contempt without affording him due process and while there was a motion for reconsideration of the order underlying the purported contempt. The Burning Tree entities and Mauro ask this court to "reverse" the trial court's order that Mauro be incarcerated for contempt. However, it is clear that Mauro is no longer incarcerated. Therefore, this claim of error is moot, see *B P 7 v Bureau of State Lottery*, 231 Mich App 356, 359; 586 NW2d 117 (1998), and we decline to address it.

### IV. SANCTIONS

Jode Investments, the Club entities, Marrocco, and Fanelli cross-appeal the trial court's decision to deny their requests for costs and sanctions against the Burning Tree entities and Mauro. Specifically, they contend that the Burning Tree entities and Mauro's defense was frivolous under MCL 600.2591 because they did not have a reasonable basis to believe that the Burning Tree entities still owned the property at issue or had valid claims. Consequently, they maintain, the trial court abused its discretion by failing to order them to pay costs, attorney fees, and sanctions to Jode Investments, the Club entities, Marrocco, and Fanelli.

Given our resolution of the issues on appeal, we cannot agree that the Burning Tree entities or Mauro raised or alleged frivolous claims or defenses. Accordingly, the trial court did not abuse its discretion when it declined to order sanctions beyond those that it actually ordered.

### V. CONCLUSION AND RELIEF

As we have already stated, the trial court erred in several respects: it erred when it dismissed the claims by the Burning Tree entities, Mauro, and DiMercurio on the grounds that Fifth Third transferred Burning Tree Investors' personal property and liquor license to Marrocco, Fanelli, or Club Golf; it erred when it determined that Burning Tree Properties' assigned its right to its property tax refund; it erred when it ordered Burning Tree Investors to transfer its personal property without compensation; and it erred when it ordered the dissolution of the Burning Tree entities on the grounds that those entities were no longer capable of conducting business because

-13-

they did not own any property. On the basis of these errors, the Burning Tree entities, Mauro, and DiMercurio ask this Court to reverse the trial court's decisions, restore the entities, and order the return of "all personal property, including the liquor license" and the "tax refund." However, given the unique facts and procedural history of this case, we do not agree that this relief is appropriate.

Here, the record shows that Mauro and DiMercurio filed for bankruptcy protection while this case was pending. As such, it is unclear whether and to what extent Mauro and DiMercurio's individual claims might still be actionable even if we were to reverse the trial court's decision to dismiss those claims. See generally *Spohn v Van Dyke Public Schools*, 296 Mich App 470; 822 NW2d 239 (2012). Similarly, it is also unclear on this record that Mauro or DiMercurio have the authority to act on the Burning Tree entities' behalf or to cause those entities to continue prosecuting their claims should we reinstate the entities' claims. In addition, and notwithstanding that the trial court erred when it ordered the dissolution of the Burning Tree entities under a mistaken conclusion of law, it is clear from the record that the Burning Tree entities will be unable to conduct the business that they were originally formed to conduct and it is equally clear that their members are unable or unwilling to work together to wind up these entities' affairs. For these reasons, the trial court likely came to the correct result when it ordered the dissolution of these entities, even if it did so prematurely. *Taylor*, 241 Mich App at 458.

Additionally, at a very early point in this dispute, the trial court gave Jode Investments permission to manage the golf course using the personal property and accounts that belonged to Burning Tree Investors. The trial court later ordered the personal property transferred to Club Golf and it has since owned and used the property to operate the golf course. During this time, the personal property likely suffered from wear and tear and had to be maintained or replaced. Other property may have been added to the inventory and mingled in such a way that it would be impractical to now segregate the property. As such, we cannot agree that it would be appropriate to order Club Golf to return the property that the trial court erroneously ordered Burning Tree Investors' to transfer to Club Golf.

Under these circumstances, we elect to exercise our discretion "to grant further or different relief as the case may require." MCR 7.216(A)(7). We reverse the trial court's order compelling Burning Tree Investors to transfer its personal property, including its liquor license, to Club Golf, but only to the extent that the court ordered the transfer without compensation. We further remand this case to the trial court to conduct a hearing to determine the value of those assets. After determining the value, the trial court shall amend its order to provide that Club Golf must pay that amount to Burning Tree Investors' members; the order shall provide that each member is entitled to that proportion of the payment that the member would have been entitled to under the membership agreement as of the date of the original order compelling the transfer.

We also reverse and vacate the trial court's order distributing the Burning Tree Property's tax refund to Jode Investments, the Club entities, Marrocco, and Fanelli. On remand, the trial court shall enter an order compelling Jode Investments, the Club entities, Marrocco, and Fanelli to pay the members of Burning Tree Property for the erroneously disbursed tax refund; the order shall provide that each member is entitled to that proportion of the payment that the member

-14-

would have been entitled to under the membership agreement as of the date of the original order disbursing the tax refund.

Finally, we remand this matter to the trial court to amend its orders dismissing the parties' various claims. With the exception of those claims that we have resolved in this appeal, the trial court shall amend the orders to provide that those claims have been dismissed without prejudice. In all other respects, we affirm.

Affirmed in part, reversed in part, vacated in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction. We further order that none of the parties may tax their costs on appeal. MCR 7.219(A).

/s/ Peter D. O'Connell
/s/ Michael J. Kelly

-15-

# EXHIBIT 5

4/22/2014                         Man jailed for not signing over his share of Burning Tree golf ... se

The Macomb Daily (http://www.macombdaily.com)

## Man jailed for not signing over his share of Burning Tree golf course

By Chad Selweski
chad.selweski@macombdaily.com">chad.selweski@macombdaily.com; @cbsnewsman

Wednesday, March 21, 2012

Seeking to gain full financial control of a Macomb Township golf course, Macomb County Public Works Commissioner Anthony Marrrocco looked on with satisfaction earlier this week as a prominent developer was jailed for contempt of court by Macomb Circuit Judge John Foster.

Simon Mauro, who co-owned the Burning Tree Golf and Country Club before a 2009 foreclosure, refuses to sign over his share of the assets to Marrocco and a business partner who split from Mauro, formed a new company and bought the facility in 2010 for a fraction of the prior price.

Mauro, standing before the judge in a suit and tie, without an attorney present, was hauled off to jail on Monday after Foster warned him that he was ordered to sign over the assets months ago. As a deputy led him out of the courtroom, Foster advised:

"Mr. Morrow, you have the keys to the jail cell in your hands. All you have to do is sign those documents."
Before he was led away, Mauro noted that he had "vehemently" disagreed with Foster's past rulings in the case and he called the new motion seeking the imposition of jail and fines "an attempt by Mr. Marrocco to intimidate me and harass me."

Mauro, who told the court he has filed for personal bankruptcy, added:"Your honor, you expect me to transfer $787,000 in assets to Mr. Marrocco, for no financial consideration?"

Marrocco and builder Anthony Fanelli, acting in the capacity of officers for Club Golf Properties and Club Golf Investors, acquired the property for $2.1 million in a deal with Fifth Third Bank, which had financed a previous purchase of the 18-hole golf course. Mauro and his then-partners bought the 21 Mile Road property in 2004 for $3.4 million, presumably to turn the course into a residential subdivision.

After the loan default and foreclosure in the summer of 2009, Fifth Third bought the property for just $1.5 million at a sheriff's auction. Marrocco and Fanelli then grabbed the property back through a "settlement deal" with the bank and hoped to resume business at the course in the spring of 2010.

Marrocco, who has been battling with the Board of Commissioners in his role as public works commissioner, was pleased with Foster's decision.

"It's like with the Board of Commissioners, when I'm right, I'm right," he said as he left the courtroom. "I don't (mess) around. This guy deserves jail."

Marrocco, who has delved in property investments for decades, outside of his longtime role as an elected official, currently owns two companies in Macomb County in addition to the firm that owns the golf course.

Mauro insisted that former partners could not acquire Burning Tree without his consent and without judicial proceedings. He ignored two rulings to the contrary by Foster, in November and in January, and in February he fired his attorney.

The owner of Mauro Land Development, Mauro, an engineer by trade, had developed several major projects in

4/22/2014                                    man jailed for not signing over his share of Burning Tree golf ...se

Shelby Township over the past two decades. His subdivisions, featuring large luxury homes, included The
Orchards, Stoney Park Place and Pinewood Estates. He built the Pinewood Plaza and Farmbrooke Shops
shopping centers and the Shelby Park office complex.

His most ambitious project, converting the sprawling Wolverine Country Club in Macomb Township into a 450-
lot subdivision, didnâ€™t go far before the real estate market collapse of 2008. Prior to the market slide he
planned to build an outdoor mall, similar to Partridge Creek in Clinton Township, at 26 Mile and Van Dyke.

His partners in the Burning Tree accquisition, also named as defendants in the court case, include Salvatore
DiMercurio and Sergio Gesuale. The site has served as home to the Burning Tree golf course since 1955.

Among the partners in the new business venture is prominent attorney Robert Kirk, whose firm is representing
Marrocco and Fanelli in the circuit court case. The Club Golf companies are based at Kirkâ€™s Hall Road law
office in Clinton Township.

The most valuable asset sought by Marrocco in the ongoing court fight is Burning Treeâ€™s liquor license. The
inability to serve liquor at the clubhouse and banquet room, according to court documents, has hurt the new
entityâ€™s finances since the business takeover in May 2010.

URL: http://www.macombdaily.com/20120321/man-jailed-for-not-signing-over-his-share-of-burning-tree-golf-course

© 2014 The Macomb Daily (http://www.macombdaily.com)

# EXHIBIT 2

2011-000291-CZ

| | | | |
|---|---|---|---|
| Case Type: | CZ-OTHER GENERAL CIVIL | Case Status: | Reopen (RO) |
| File Date: | 01/21/2011 | Case Judge: | VIVIANO, KATHRYN A |
| Next Event: | | | |

| All Information || Docket || Party || Event || Financial || Receipt || Disposition |

## Docket Information

| Date | Description | Docket Text | Amount |
|---|---|---|---|
| 01/21/2011 | ENTRY FEE | ENTRY FEE  Receipt: 417386  Date: 01/21/2011 | $0.00 |
| 01/21/2011 | COMPLAINT/PETITION FILED | COMPLAINT/PETITION FILED | |
| 01/21/2011 | SUMMONS ISSUED | SUMMONS ISSUED **EXP 4-25-11** | |
| 02/17/2011 | MOTION FEE | MOTION FEE  Receipt: 424652  Date: 02/22/2011 | $0.00 |
| 02/17/2011 | MOTION: | MOTION TO MAINTAIN STATUS QUO, APPOINT RECEIVER FOR DISSOLUTION AND TRANSFER OF PROPERTY W/EX. A ATTCHD | |
| 02/22/2011 | HEARING: MTN TO MAINTAIN STATUS QUO | HEARING: MTN TO MAINTAIN STATUS QUO<br>Event: MTN TO MAINTAIN STATUS QUO<br>Date: 02/28/2011   Time: 8:00 am<br>Judge: FOSTER, JOHN C   Location: COURTROOM SW - 4TH FLOOR<br><br>KIRK<br><br>Result: ADJOURNED-PLAINTIFF REQUEST | |
| 02/24/2011 | ADJOURNED - PLAINTIFF REQUEST | ADJOURNED - PLAINTIFF REQUEST --ADJ TO 3/21/11 8AM PER ATTY KIRK'S OFFICE<br>The following event: MTN TO MAINTAIN STATUS QUO scheduled for 02/28/2011 at 8:00 am has been resulted as follows:<br><br>Result: ADJOURNED-PLAINTIFF REQUEST<br>Judge: FOSTER, JOHN C   Location: COURTROOM SW - 4TH FLOOR | |

| Date | Description | Docket Text | Amount |
|---|---|---|---|
| | | Result Staff:<br>    Staff:  COURT REPORTER: VIDEO<br>Certification Number: | |
| 02/25/2011 | HEARING: MTN TO MAINTAIN STATUS QUO | HEARING: MTN TO MAINTAIN STATUS QUO<br>Event: MTN TO MAINTAIN STATUS QUO<br>Date: 03/21/2011   Time: 8:00 am<br>Judge: FOSTER, JOHN C   Location: COURTROOM SW - 4TH FLOOR<br><br>KIRK<br><br>Result: ADJOURNED-PLAINTIFF REQUEST | |
| 03/18/2011 | ADJOURNED - PLAINTIFF REQUEST | ADJOURNED - PLAINTIFF REQUEST<br>--ADJ TO 3/28/11 8AM PER ATTY KIRK'S OFFICE<br>The following event: MTN TO MAINTAIN STATUS QUO scheduled for 03/21/2011 at 8:00 am has been resulted as follows:<br><br>Result: ADJOURNED-PLAINTIFF REQUEST<br>Judge: FOSTER, JOHN C   Location: COURTROOM SW - 4TH FLOOR<br>Result Staff:<br>    Staff:  COURT REPORTER: VIDEO<br>Certification Number: | |
| 03/18/2011 | HEARING: MTN TO MAINTAIN STATUS QUO | HEARING: MTN TO MAINTAIN STATUS QUO<br><br>The following event: MTN TO MAINTAIN STATUS QUO scheduled for 03/21/2011 at 8:00 am has been rescheduled as follows:<br><br>Event: MTN TO MAINTAIN STATUS QUO<br>Date: 03/28/2011   Time: 8:00 am<br>Judge: FOSTER, JOHN C   Location: COURTROOM SW - 4TH FLOOR<br><br>KIRK<br><br>Result: ADJOURNED-PLAINTIFF REQUEST | |
| 03/23/2011 | ANSWER TO COMPLAINT | ANSWER (LITIGANT'S PRIMARY ATTORNEY)<br>Attorney: TORRES, VICTOR J. (43240)<br>BURNING TREE PROPERTIES LLC (DEFENDANT); BURNING TREE INVESTORS LLC (DEFENDANT); SIMONE | |

| Date | Description | Docket Text | Amount |
|------|-------------|-------------|--------|
| | | MAURO (DEFENDANT); SALVATORE DIMERCURIO (DEFENDANT); | |
| 03/23/2011 | AFFIRMATIVE DEFENSES | AFFIRMATIVE DEFENSES | |
| 03/23/2011 | DOCUMENT FILED: | DEFENDANT RESPONSE AND OPPOSITION TO PLAINTIFFS MOTION TO MAINTAIN STATUS QUO, APPOINT A RECEIVER, FOR DISSOLUTION AND FOR TRANSFER OF PROPERTY | |
| 03/23/2011 | EXHIBITS FILED | EXHIBITS FILED | |
| 03/23/2011 | PROOF OF SERVICE | PROOF OF SERVICE | |
| 03/24/2011 | ADJOURNED - PLAINTIFF REQUEST | ADJOURNED - PLAINTIFF REQUEST-- RESET TO 4/4 AT 8:00 A.M. PER KIRK'S OFFICE. The following event: MTN TO MAINTAIN STATUS QUO scheduled for 03/28/2011 at 8:00 am has been resulted as follows: Result: ADJOURNED-PLAINTIFF REQUEST Judge: FOSTER, JOHN C    Location: COURTROOM SW - 4TH FLOOR Result Staff: Staff:  COURT REPORTER: VIDEO Certification Number: | |
| 03/24/2011 | HEARING: MTN TO MAINTAIN STATUS QUO | HEARING: MTN TO MAINTAIN STATUS QUO The following event: MTN TO MAINTAIN STATUS QUO scheduled for 03/28/2011 at 8:00 am has been rescheduled as follows: Event: MTN TO MAINTAIN STATUS QUO Date: 04/04/2011    Time: 8:00 am Judge: FOSTER, JOHN C    Location: COURTROOM SW - 4TH FLOOR KIRK Result: NOT HELD - ORDER TO ENTER | |
| 03/25/2011 | DISCOVERY AND CASE EVALUATION ORDER ISSUED | DISCOVERY AND CASE EVALUATION ORDER ISSUED (N) DISCOVERY ORDER Sent on:  03/25/2011  07:56:01 | |
| 03/25/2011 | NOT HELD - ORDER TO ENTER | NOT HELD - KIRK'S OFFICE CALLED AND WANTS MOTION TO BE HEARD ON 3/28/11 | |

| Date | Description | Docket Text | Amount |
|------|-------------|-------------|--------|
| | | The following event: MTN TO MAINTAIN STATUS QUO scheduled for 04/04/2011 at 8:00 am has been resulted as follows:<br><br>Result: NOT HELD - ORDER TO ENTER<br>Judge: FOSTER, JOHN C   Location: COURTROOM SW - 4TH FLOOR<br>Result Staff:<br>  Staff: COURT REPORTER: VIDEO<br>Certification Number: | |
| 03/25/2011 | HEARING: MTN TO MAINTAIN STATUS QUO | HEARING: MTN TO MAINTAIN STATUS QUO<br>Event: MTN TO MAINTAIN STATUS QUO<br>Date: 03/28/2011   Time: 8:00 am<br>Judge: FOSTER, JOHN C   Location: COURTROOM SW - 4TH FLOOR<br><br>Result: HELD-CIVIL | |
| 03/25/2011 | CASE EVAL AFTER: SUMMARY DISPO MOTION BY: PLTF'S WITNESS LIST BY: DEFT'S WITNESS LIST BY: | (N) DISCOVERY AND CASE EVAL ORDER SENT; CASE EVAL AFTER 7/21/11; SUMRY DISPO MTNS BY: 10/19/11; WITNESS LIST DUE BY PLTF: 5/9/11; DEFT: 5/23/11<br>ROBERT W KIRK (Attorney) on behalf of JODE INVESTMENTS LLC, CLUB GOLF PROPERTIES LLC, CLUB GOLF INVESTORS LLC (PLAINTIFF); VICTOR J. TORRES (Attorney) on behalf of BURNING TREE PROPERTIES LLC, BURNING TREE INVESTORS LLC, SIMONE MAURO, SALVATORE DIMERCURIO (DEFENDANT) | |
| 03/25/2011 | BRIEF IN SUPPORT OF MOTION | BRIEF IN SUPPORT OF MOTION | |
| 03/25/2011 | PROOF OF SERVICE | PROOF OF SERVICE | |
| 03/28/2011 | HELD: | HELD: PLACED ON RECORD --STATUS QUO GRANTED -OTE<br>The following event: MTN TO MAINTAIN STATUS QUO scheduled for 03/28/2011 at 8:00 am has been resulted as follows:<br><br>Result: HELD-CIVIL<br>Judge: FOSTER, JOHN C   Location: COURTROOM SW - 4TH FLOOR<br>Result Staff:<br>  Staff: COURT REPORTER: VIDEO<br>Certification Number: | |
| 03/28/2011 | ORDER SIGNED: | ORDER OF NMAINTAINENCE OF STATUS QUO & SETTLEMENT CONFERENCE 4/19/11 8AM -SGD | |

| Date | Description | Docket Text | Amount |
|---|---|---|---|
| 03/28/2011 | SETTLEMENT CONFERENCE SCHEDULED | SETTLEMENT CONFERENCE SCHEDULED Event: SETTLEMENT CONFERENCE Date: 04/19/2011   Time: 8:00 am Judge: FOSTER, JOHN C   Location: COURTROOM SW - 4TH FLOOR  Result: HELD: NOT PLACED ON RECORD | |
| 03/30/2011 | EARLY DISPOSITION SETTLEMENT CONFERENCE SCHEDULED | EARLY DISPOSITION SETTLEMENT CONFERENCE SCHEDULED Event: EARLY DISPOSITION SETTLEMENT CONFERENCE Date: 07/14/2011   Time: 8:00 am Judge: FOSTER, JOHN C   Location: COURTROOM SW - 4TH FLOOR  Result: ADJOURNED-BY ASSIGNMENT CLERK | |
| 03/30/2011 | IMAGE OF EVENT NOTICE SENT | (N) EVENT NOTICE SENT | |
| 03/31/2011 | PROOF OF SERVICE | PROOF OF SERVICE | |
| 04/01/2011 | MOTION FEE | MOTION FEE  Receipt: 435921  Date: 04/05/2011 | $0.00 |
| 04/01/2011 | MOTION: | MOTION TO COMPEL DEFENDANTS SIMONE MAURO AND SALVATORE DIMERCURIO TO EXECUTE THE APPLICATION FOR LICENSE RENEWAL W/ EXHIBIT | |
| 04/04/2011 | HEARING: MTN TO COMPEL SCHEDULED | HEARING: MTN TO COMPEL SCHEDULED Event: MTN TO COMPEL Date: 04/11/2011   Time: 8:00 am Judge: FOSTER, JOHN C   Location: COURTROOM SW - 4TH FLOOR  KIRK  Result: DISMISSAL OF MOTION | |
| 04/08/2011 | DISMISSAL OF MOTION | DISMISSAL OF MOTION PER KIRK'S OFFICE The following event: MTN TO COMPEL scheduled for 04/11/2011 at 8:00 am has been resulted as follows:  Result: DISMISSAL OF MOTION Judge: FOSTER, JOHN C   Location: COURTROOM SW - 4TH FLOOR Result Staff: | |

| Date | Description | Docket Text | Amount |
|---|---|---|---|
| | | Staff: COURT REPORTER: VIDEO Certification Number: | |
| 04/19/2011 | HELD: NOT PLACED ON RECORD, | HELD: NOT PLACED ON RECORD, The following event: SETTLEMENT CONFERENCE scheduled for 04/19/2011 at 8:00 am has been resulted as follows:<br><br>Result: HELD: NOT PLACED ON RECORD Judge: FOSTER, JOHN C    Location: COURTROOM SW - 4TH FLOOR Result Staff:<br>    Staff:  COURT REPORTER: VIDEO Certification Number: | |
| 04/19/2011 | INTERIM DISPOSITION ORDER - SGD | INTERIM DISPOSITION ORDER --BOTH PARTIES TO AMEND, DEFT FILING COUNTER & 3RD PARTY COMPLAINT, PLEADINGS W/IN 21 DAYS -SGD | |
| 04/28/2011 | SUMMONS ISSUED | THIRD PARTY SUMMONS ISSUED (2) (EXPIRES 5/19/11) | |
| 04/28/2011 | COUNTER COMPLAINT | COUNTER COMPLAINT (FILED AS PART OF COUNTER & 3RD PARTY COMPLAINT); BURNING TREE PROPERTIES, BURNING TREE INVESTORS LLC, SIMONE MAURO, & SALVATORE DIMERCURIO -V- JODE INVESTMENTS LLC, CLUB GOLF PROPERTIES LLC, & CLUB GOLF INC | |
| 04/28/2011 | EXHIBITS FILED | EXHIBITS FILED | |
| 04/28/2011 | PROOF OF SERVICE | PROOF OF SERVICE | |
| 04/28/2011 | THIRD PARTY COMPLAINT | THIRD PARTY COMPLAINT (FILED AS PART OF COUNTER & 3RD PARTY COMPLAINT); BURNING TREE PROPERTIES LLC, BURNING TREE INVESTORS LLC, SIMONE MAURO, SALVATORE DIMERCURIO -V- ANTHONY MARROCCO & ANTHONY FANELLI | |
| 04/28/2011 | PROOF OF SERVICE | PROOF OF SERVICE | |
| 05/03/2011 | MOTION FEE | MOTION FEE  Receipt: 442646  Date: 05/03/2011 | $0.00 |
| 05/03/2011 | HEARING: MTN TO COMPEL SCHEDULED | HEARING: MTN TO COMPEL SCHEDULED Event: MTN TO COMPEL Date: 05/09/2011    Time: 8:00 am Judge: FOSTER, JOHN C    Location: COURTROOM SW - 4TH FLOOR | |

| Date | Description | Docket Text | Amount |
|---|---|---|---|
| | | TORRES | |
| | | Result: HELD-CIVIL | |
| 05/03/2011 | PROOF OF SERVICE | PROOF OF SERVICE | |
| 05/03/2011 | BRIEF IN SUPPORT OF MOTION | BRIEF IN SUPPORT OF DEFTS/CNTR-PLTFS MOTION TO COMPEL ACCOUNTING & FOR LLC RELIEF W/ATT EXHIBITS | |
| 05/03/2011 | DOCUMENT FILED: | DEFTS/CNTR PLTFS MTN TO COMPEL ACCOUNTING & FOR RELIEF RELATED TO LLC | |
| 05/03/2011 | NOTICE OF HEARING | NOTICE OF HEARING | |
| 05/06/2011 | MOTION FEE | MOTION FEE  Receipt: 444150  Date: 05/09/2011 | $0.00 |
| 05/06/2011 | RESPONSE TO MOTION | PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFTS/COUNTER-PLAINTIFFS' MOTION TO COMPEL ACCOUNTING AND FOR LLC RELIEF WITH EXHIBITS | |
| 05/06/2011 | CERTIFICATE OF SERVICE | CERTIFICATE OF SERVICE | |
| 05/06/2011 | MOTION: | PLAINTIFF'S MOTION TO COMPEL DISCOVERY | |
| 05/06/2011 | BRIEF IN SUPPORT | BRIEF IN SUPPORT WITH EXHIBITS | |
| 05/06/2011 | PROOF OF SERVICE | PROOF OF SERVICE | |
| 05/09/2011 | HEARING: MTN TO COMPEL DISCOVERY SCHEDULED | HEARING: MTN TO COMPEL DISCOVERY SCHEDULED Event: MTN TO COMPEL DISCOVERY Date: 05/16/2011   Time: 8:00 am Judge: FOSTER, JOHN C   Location: COURTROOM SW - 4TH FLOOR  KIRK  Result: ADJOURNED-PLAINTIFF REQUEST | |
| 05/09/2011 | HELD: | HELD: PLACED ON RECORD The following event: MTN TO COMPEL scheduled for 05/09/2011 at 8:00 am has been resulted as follows:  Result: HELD-CIVIL Judge: FOSTER, JOHN C   Location: COURTROOM SW - 4TH FLOOR Result Staff: | |

| Date | Description | Docket Text | Amount |
|---|---|---|---|
| | | Staff:  COURT REPORTER: VIDEO Certification Number: | |
| 05/09/2011 | ORDER EXTENDING DISCOVERY - SGD | ORDER OF DEFTS/CNTR-PLTFS MTN TO COMPEL ACCOUNTING & FOR LLC RELIEF --EVID HRG 7/26/11 10AM & EXTENDING DISCOVERY 60 DAYS - SGD | |
| 05/09/2011 | EVIDENTIARY HEARING SCHEDULED | EVIDENTIARY HEARING SCHEDULED Event: EVIDENTIARY HEARING Date: 07/26/2011   Time: 10:00 am Judge: FOSTER, JOHN C   Location: COURTROOM SW - 4TH FLOOR<br><br>Result: ADJOURNED WITHOUT DATE | |
| 05/09/2011 | ORDER SIGNED: | STIP/ORDER ALLOWING SERVICE BY EMAIL -SGD | |
| 05/09/2011 | PROOF OF SERVICE | PROOF OF SERVICE | |
| 05/16/2011 | ADJOURNED - PLAINTIFF REQUEST | ADJOURNED - PLAINTIFF REQUEST --ADJ TO 5/31/11 8AM The following event: MTN TO COMPEL DISCOVERY scheduled for 05/16/2011 at 8:00 am has been resulted as follows:<br><br>Result: ADJOURNED-PLAINTIFF REQUEST Judge: FOSTER, JOHN C   Location: COURTROOM SW - 4TH FLOOR Result Staff:   Staff:  COURT REPORTER: VIDEO Certification Number: | |
| 05/16/2011 | HEARING: MTN TO COMPEL DISCOVERY SCHEDULED | HEARING: MTN TO COMPEL DISCOVERY SCHEDULED Event: MTN TO COMPEL DISCOVERY Date: 05/31/2011   Time: 8:00 am Judge: FOSTER, JOHN C   Location: COURTROOM SW - 4TH FLOOR<br><br>KIRK<br><br>Result: NOT HELD - ORDER ENTERED | |
| 05/16/2011 | DOCUMENT FILED: | PLAINTIFF / COUNTER-DEFTS' FIRST REQUEST FOR ADMISSIONS AND INTERROGATORIES TO SALVATORE DIMERCURIO | |
| 05/16/2011 | DOCUMENT FILED: | PLAINTIFF / COUNTER-DEFTS' FIRST REQUEST FOR ADMISSIONS AND INTERROGATORIES TO SIMONE MAURO | |
| 05/16/2011 | PROOF OF SERVICE | PROOF OF SERVICE | |

| Date | Description | Docket Text | Amount |
|---|---|---|---|
| 05/18/2011 | ANSWER TO COUNTER COMPLAINT | ANSWER TO COUNTER COMPLAINT Attorney: KIRK, ROBERT W (35627) JODE INVESTMENTS LLC (COUNTER-DEFENDANT); CLUB GOLF PROPERTIES LLC (COUNTER-DEFENDANT); CLUB GOLF INC (COUNTER-DEFENDANT); | |
| 05/18/2011 | ANSWER TO 3RD PARTY COMPLAINT | ANSWER TO 3RD PARTY COMPLAINT Attorney: KIRK, ROBERT W (35627) ANTHONY MARROCCO (THIRD PARTY DEFENDANT); ANTHONY FANELLI (THIRD PARTY DEFENDANT); | |
| 05/18/2011 | AFFIRMATIVE DEFENSES | AFFIRMATIVE DEFENSES | |
| 05/18/2011 | PROOF OF SERVICE | PROOF OF SERVICE | |
| 05/18/2011 | DOCUMENT FILED: | EXHIBIT C TO COUNTER COMPLAING & 3RD PRTY COMPLT WHICH WAS FILED 4/28/11 | |
| 05/18/2011 | PROOF OF SERVICE | PROOF OF SERVICE | |
| 05/18/2011 | AMENDED COMPLAINT | FIRST AMENDED COMPLAINT (NO ADDITIONS) | |
| 05/18/2011 | PROOF OF SERVICE | PROOF OF SERVICE | |
| 05/23/2011 | MOTION FEE | MOTION FEE  Receipt: 447820  Date: 05/23/2011 | $0.00 |
| 05/23/2011 | MOTION: | PLTFS MTN TO ENFOCE THE TERMS AND/OR FOR CLARIFICATION OF THE ORD OF MAINTENANCE OF STATUS QUO DATED MARCH 28, 2011 W/ EXHIBITS | |
| 05/24/2011 | HEARING: MTN TO CLARIFY ORDER SCHEDULED | HEARING: MTN TO CLARIFY ORDER SCHEDULED Event: MTN TO CLARIFY ORDER Date: 05/31/2011   Time: 8:00 am Judge: FOSTER, JOHN C   Location: COURTROOM SW - 4TH FLOOR  KIRK/BADALAMENTI  Result: ADJOURNED-PLAINTIFF REQUEST | |
| 05/31/2011 | NOT HELD - ORDER ENTERED | NOT HELD - ORDER ENTERED The following event: MTN TO COMPEL DISCOVERY scheduled for 05/31/2011 at 8:00 am has been resulted as follows:  Result: NOT HELD - ORDER ENTERED Judge: FOSTER, JOHN C   Location: | |

| Date | Description | Docket Text | Amount |
|---|---|---|---|
| | | COURTROOM SW - 4TH FLOOR<br>Result Staff:<br>  Staff: COURT REPORTER: VIDEO<br>Certification Number: | |
| 05/31/2011 | ORDER SIGNED: | STIP/ORDER FOR PROD OF DOCS AFTR ENTRY OF AGREED UPON PROTECTIVE ORDER -SGD | |
| 05/31/2011 | ADJOURNED - PLAINTIFF REQUEST | ADJOURNED - PLAINTIFF REQUEST<br>The following event: MTN TO CLARIFY ORDER scheduled for 05/31/2011 at 8:00 am has been resulted as follows:<br><br>Result: ADJOURNED-PLAINTIFF REQUEST<br>Judge: FOSTER, JOHN C   Location: COURTROOM SW - 4TH FLOOR<br>Result Staff:<br>  Staff: COURT REPORTER: VIDEO<br>Certification Number: | |
| 05/31/2011 | HEARING: MTN TO CLARIFY ORDER SCHEDULED | HEARING: MTN TO CLARIFY ORDER SCHEDULED<br><br>The following event: MTN TO CLARIFY ORDER scheduled for 05/31/2011 at 8:00 am has been rescheduled as follows:<br><br>Event: MTN TO CLARIFY ORDER<br>Date: 06/06/2011   Time: 8:00 am<br>Judge: FOSTER, JOHN C   Location: COURTROOM SW - 4TH FLOOR<br><br>KIRK/BADALAMENTI<br><br>Result: DISMISSAL OF MOTION | |
| 05/31/2011 | PROOF OF SERVICE | PROOF OF SERVICE | |
| 05/31/2011 | REQUEST FOR ADMISSIONS | THIRD PARTY DEFTS COUNT PLTFS FIRST REQUESTS FOR ADMISSIONS AND INTERROGS TO SALVATORE DEIMERCURIO | |
| 06/03/2011 | DISMISSAL OF MOTION | DISMISSAL OF MOTION PER ATTY KIRK'S OFFICE<br>The following event: MTN TO CLARIFY ORDER scheduled for 06/06/2011 at 8:00 am has been resulted as follows:<br><br>Result: DISMISSAL OF MOTION<br>Judge: FOSTER, JOHN C   Location: COURTROOM SW - 4TH FLOOR<br>Result Staff: | |

| Date | Description | Docket Text | Amount |
|------|-------------|-------------|--------|
| | | Staff:  COURT REPORTER: VIDEO Certification Number: | |
| 06/03/2011 | MOTION FEE | MOTION FEE  Receipt: 450349  Date: 06/03/2011 | $0.00 |
| 06/03/2011 | MOTION: | DEFENDANT/COUNTER PLAINTIFFS MOTION FOR PROTECTIVE ORDER | |
| 06/03/2011 | NOTICE OF HEARING | NOTICE OF HEARING | |
| 06/03/2011 | PROOF OF SERVICE | PROOF OF SERVICE | |
| 06/03/2011 | PROOF OF SERVICE | PROOF OF SERVICE | |
| 06/03/2011 | DOCUMENT FILED: | DEFENDANT COUNTER PLAINTIFFS RESPONSE AND OPPOSITION TO PLAINTIFFS/COUNTER DEFTS MOTION TO ENFORCE THE TERMS AND/OR CLARIFICATION OF THE ORDER OF MAINTENANCE OF STATUS QUO DTD 3/28/11 W/ ATTD EXHIBITS | |
| 06/03/2011 | PROOF OF SERVICE | PROOF OF SERVICE | |
| 06/03/2011 | DOCUMENT FILED: | DEFTS/COUNTER PLTFS MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PROTECTIVE ORDER W/ ATTD EXHIBITS | |
| 06/06/2011 | HEARING: MTN FOR PROTECTIVE ORDER SCHEDULED | HEARING: MTN FOR PROTECTIVE ORDER SCHEDULED Event: MTN FOR PROTECTIVE ORDER Date: 06/13/2011    Time: 8:00 am Judge: FOSTER, JOHN C    Location: COURTROOM SW - 4TH FLOOR <br><br> TORRES <br><br> Result: DISMISSAL OF MOTION | |
| 06/08/2011 | JURY FEE | JURY FEE  Receipt: 451346  Date: 06/08/2011 | $0.00 |
| 06/08/2011 | ANSWER TO COMPLAINT | ANSWER TO FIRST AMENDED COMPLAINT Attorney: TORRES, VICTOR J. (43240) BURNING TREE PROPERTIES LLC (DEFENDANT); BURNING TREE INVESTORS LLC (DEFENDANT); SIMONE MAURO (DEFENDANT); SALVATORE DIMERCURIO (DEFENDANT); | |
| 06/08/2011 | AFFIRMATIVE DEFENSES | AFFIRMATIVE DEFENSES | |
| 06/08/2011 | JURY DEMAND | JURY DEMAND | |
| 06/08/2011 | PROOF OF SERVICE | PROOF OF SERVICE | |

| Date | Description | Docket Text | Amount |
|------|-------------|-------------|--------|
| 06/10/2011 | DOCUMENT FILED: | RESPONSE TO PLTF COUNT DEFTS FIRST REQUESTS FOR ADMISSIONS TO SIMONE MAURO | |
| 06/10/2011 | DOCUMENT FILED: | RESPONSE TO PLTF COUNT DEFTS FIRST REQUESTS FOR ADMISSIONS TO SALVATORE DIMERCURIO | |
| 06/10/2011 | PROOF OF SERVICE | PROOFS OF SERVICE (TWO) | |
| 06/10/2011 | RE-NOTICE OF HEARING | RE-NOTICE OF HEARING | |
| 06/13/2011 | HEARING: MTN FOR PROTECTIVE ORDER SCHEDULED | HEARING: MTN FOR PROTECTIVE ORDER SCHEDULED Event: MTN FOR PROTECTIVE ORDER Date: 07/05/2011 Time: 8:00 am Judge: FOSTER, JOHN C Location: COURTROOM SW - 4TH FLOOR TORRES Result: HELD - DENIED/ORDER SIGNED | |
| 06/13/2011 | DISMISSAL OF MOTION | DISMISSAL OF MOTION FOR FAILURE TO APPEAR The following event: MTN FOR PROTECTIVE ORDER scheduled for 06/13/2011 at 8:00 am has been resulted as follows: Result: DISMISSAL OF MOTION Judge: FOSTER, JOHN C Location: COURTROOM SW - 4TH FLOOR Result Staff: Staff: COURT REPORTER: VIDEO Certification Number: | |
| 06/16/2011 | ADJOURNED - BY ASSIGNMENT CLERK | ADJOURNED - BY ASSIGNMENT CLERK The following event: EARLY DISPOSITION SETTLEMENT CONFERENCE scheduled for 07/14/2011 at 8:00 am has been resulted as follows: Result: ADJOURNED-BY ASSIGNMENT CLERK Judge: FOSTER, JOHN C Location: COURTROOM SW - 4TH FLOOR Result Staff: Staff: COURT REPORTER: VIDEO Certification Number: | |
| 06/16/2011 | INITIAL COURT CONFERENCE SCHEDULED | STATUS CONFERENCE PRIOR TO EDSC SCHEDULED | |

| Date | Description | Docket Text | Amount |
|---|---|---|---|
| | | The following event: EARLY DISPOSITION SETTLEMENT CONFERENCE scheduled for 07/14/2011 at 8:00 am has been rescheduled as follows:<br><br>Event: STATUS CONFERENCE PRIOR TO EDSC<br>Date: 07/06/2011   Time: 8:00 am<br>Judge: FOSTER, JOHN C   Location: COURTROOM SW - 4TH FLOOR<br><br>Result: ADJOURNED-BY COURT | |
| 06/17/2011 | MOTION FEE | MOTION FEE  Receipt: 454014  Date: 06/17/2011 | $0.00 |
| 06/17/2011 | ORDER SIGNED: | PROTECTIVE ORDER --SIGNED  EAS/JCF | |
| 06/17/2011 | MOTION: | PLAINTIFFS AND THIRD PARTY DEFENDANTS/COUNTER-PLAINTIFFS MOTION TO QUASH SUBPOENA AND FOR PROTECTIVE ORDER | |
| 06/17/2011 | BRIEF IN SUPPORT OF MOTION | BRIEF IN SUPPORT OF MOTION W/ EXHIBITS | |
| 06/20/2011 | HEARING: MTN TO QUASH SCHEDULED | HEARING: MTN TO QUASH SCHEDULED<br>Event: MTN TO QUASH<br>Date: 07/05/2011   Time: 8:00 am<br>Judge: FOSTER, JOHN C   Location: COURTROOM SW - 4TH FLOOR<br><br>KIRK/BADALAMENTI<br><br>Result: HELD - GRANTED/ORDER SIGNED | |
| 06/20/2011 | PROOF OF SERVICE | PROOF OF SERVICE | |
| 06/20/2011 | DOCUMENT FILED: | DEFTS / COUNTER PLAINTIFFS FIRST REQUESTS FOR ADMISSIONS, FIRST INTERROGATORIES, AND SECOND REQUESTS FOR PRODUCTION OF DOCUMENTS TO PLAINTIFFS / COUNTER DEFENDANTS WITH EXHIBITS | |
| 06/27/2011 | FAX FILING FEE | FAX FILING FEE  Receipt: 456021  Date: 06/28/2011 | $0.00 |
| 06/27/2011 | MOTION FEE | MOTION FEE  Receipt: 455892  Date: 06/27/2011 | $0.00 |
| 06/27/2011 | HEARING: MTN TO QUASH SCHEDULED | HEARING: MTN TO QUASH SCHEDULED<br>Event: MTN TO QUASH<br>Date: 07/05/2011   Time: 8:00 am<br>Judge: FOSTER, JOHN C   Location: COURTROOM SW - 4TH FLOOR | |

| Date | Description | Docket Text | Amount |
|------|-------------|-------------|--------|
| | | MACYDA | |
| | | Result: HELD - GRANTED/ORDER SIGNED | |
| 06/27/2011 | MOTION FEE | MOTION FEE Receipt: 456021 Date: 06/28/2011 | $0.00 |
| 06/27/2011 | MOTION: | FIFTH THIRD BANK'S MTN TO QUASH SUBPOENA | |
| 06/27/2011 | BRIEF IN SUPPORT | BRIEF IN SUPPORT W/ EXHIBITS | |
| 06/27/2011 | PROOF OF SERVICE | PROOF OF SERVICE | |
| 06/27/2011 | MOTION: | PLTF & 3RD PTY DEFT/CTR-PLTF MTN TO ESCROW PROCEEDS FROM TAX APPEAL | |
| 06/28/2011 | MISCELLANEOUS MOTION HEARING SCHEDULED | MISCELLANEOUS MOTION HEARING SCHEDULED<br>Event: MISCELLANEOUS MOTION HEARING<br>Date: 07/05/2011   Time: 8:00 am<br>Judge: FOSTER, JOHN C   Location: COURTROOM SW - 4TH FLOOR<br><br>KIRK/BADALAMENTI - MOTION TO ESCROW PROCEEDS FROM TAX APPEAL<br><br>Result: HELD-CIVIL | |
| 06/29/2011 | PROOF OF SERVICE | PROOF OF SERVICE | |
| 06/29/2011 | REQUEST FOR ADMISSIONS | DEFT/CTR-PLTF 1ST REQ FOR ADMISSIONS, 1ST INTERROGATORIES & 2ND REQ FOR PRODUCTION OF DOCS TO 3RD PTY DEFT/CTR-PLTF | |
| 06/29/2011 | RESPONSE TO MOTION | RESPONSE IN OPPSTN TO DEFTS/COUNTR PLTFS MOTION  FOR PROTCTVE ORD W/ ATTCHD EXHBTS | |
| 06/30/2011 | PROOF OF SERVICE | PROOF OF SERVICE | |
| 07/05/2011 | FAX FILING FEE | FAX FILING FEE  Receipt: 457463  Date: 07/06/2011 | $0.00 |
| 07/05/2011 | FAX FILING FEE | FAX FILING FEE  Receipt: 457463  Date: 07/06/2011 | $0.00 |
| 07/05/2011 | HELD - GRANTED/ORDER SIGNED, PLACED ON RECORD | HELD - GRANTED/ORDER SIGNED, PLACED ON RECORD<br>The following event: MTN TO QUASH scheduled for 07/05/2011 at 8:00 am has been resulted as follows: | |

| Date | Description | Docket Text | Amount |
|------|-------------|-------------|--------|
| | | Result: HELD - GRANTED/ORDER SIGNED<br>Judge: FOSTER, JOHN C   Location: COURTROOM SW - 4TH FLOOR<br>Result Staff:<br>   Staff:  COURT REPORTER: VIDEO<br>Certification Number: | |
| 07/05/2011 | ORDER SIGNED: | ORDER GRANTING FIFTH THIRD BANK'S MTN TO QUASH IN PART & DENYING IN PART -SGD | |
| 07/05/2011 | HELD - DENIED/ORDER SIGNED | HELD - DENIED/ORDER SIGNED, PLACED ON RECORD<br>The following event: MTN FOR PROTECTIVE ORDER scheduled for 07/05/2011 at 8:00 am has been resulted as follows:<br><br>Result: HELD - DENIED/ORDER SIGNED<br>Judge: FOSTER, JOHN C   Location: COURTROOM SW - 4TH FLOOR<br>Result Staff:<br>   Staff:  COURT REPORTER: VIDEO<br>Certification Number: | |
| 07/05/2011 | ORDER SIGNED: | ORDER OF DEFTS/CNTR PLTFS MTN FOR PROTECTIVE ORDER -SGD | |
| 07/05/2011 | HELD - GRANTED/ORDER SIGNED, PLACED ON RECORD | HELD - GRANTED/ORDER SIGNED, PLACED ON RECORD<br>The following event: MTN TO QUASH scheduled for 07/05/2011 at 8:00 am has been resulted as follows:<br><br>Result: HELD - GRANTED/ORDER SIGNED<br>Judge: FOSTER, JOHN C   Location: COURTROOM SW - 4TH FLOOR<br>Result Staff:<br>   Staff:  COURT REPORTER: VIDEO<br>Certification Number: | |
| 07/05/2011 | ORDER SIGNED: | ORDER OF PLTFS & 3RD PARTY DEFTS/CNTR-PLTFS MTN TO QUASH SUBPOENA AND FOR PROTECTIVE ORDER -SGD | |
| 07/05/2011 | HELD: | HELD: PLACED ON RECORD<br>The following event: MISCELLANEOUS MOTION HEARING scheduled for 07/05/2011 at 8:00 am has been resulted as follows:<br><br>Result: HELD-CIVIL | |

| Date | Description | Docket Text | Amount |
|------|-------------|-------------|--------|
| | | Judge: FOSTER, JOHN C   Location: COURTROOM SW - 4TH FLOOR Result Staff: Staff:  COURT REPORTER: VIDEO Certification Number: | |
| 07/05/2011 | ORDER SIGNED: | ORDER OF PLTFS MTN TO ESCROW PROCEEDS FROM TAX APPEAL -SGD | |
| 07/05/2011 | ADJOURNED-BY COURT | ADJOURNED-BY COURT, PLACED ON RECORD The following event: STATUS CONFERENCE PRIOR TO EDSC scheduled for 07/06/2011 at 8:00 am has been resulted as follows: Result: ADJOURNED-BY COURT Judge: FOSTER, JOHN C   Location: COURTROOM SW - 4TH FLOOR Result Staff: Staff:  COURT REPORTER: VIDEO Certification Number: | |
| 07/05/2011 | ORDER SIGNED: | ORDER ADJ EVID HRG TO A DAT TBD & SETTING STATUS CONF 7/26/11 8AM -SGD | |
| 07/05/2011 | INITIAL COURT CONFERENCE SCHEDULED | STATUS CONFERENCE PRIOR TO EDSC SCHEDULED The following event: STATUS CONFERENCE PRIOR TO EDSC scheduled for 07/06/2011 at 8:00 am has been rescheduled as follows: Event: STATUS CONFERENCE PRIOR TO EDSC Date: 07/26/2011   Time: 8:00 am Judge: FOSTER, JOHN C   Location: COURTROOM SW - 4TH FLOOR Result: HELD: NOT PLACED ON RECORD | |
| 07/05/2011 | ADJOURNED WITHOUT DATE | ADJOURNED WITHOUT DATE, PLACED ON RECORD The following event: EVIDENTIARY HEARING scheduled for 07/26/2011 at 10:00 am has been resulted as follows: Result: ADJOURNED WITHOUT DATE Judge: FOSTER, JOHN C   Location: COURTROOM SW - 4TH FLOOR Result Staff: | |

| Date | Description | Docket Text | Amount |
|------|-------------|-------------|--------|
| | | Staff: COURT REPORTER: VIDEO Certification Number: | |
| 07/05/2011 | FAX FILING FEE | FAX FILING FEE  Receipt: 457463  Date: 07/06/2011 | $0.00 |
| 07/05/2011 | RESPONSE TO MOTION | DEFTS RESPONSE TO PLTFS  MOTION TO ESCROW PROCEEDS FRM TAX APPEAL W/EXHIBS | |
| 07/05/2011 | PROOF OF SERVICE | PROOF OF SERVICE | |
| 07/05/2011 | DOCUMENT FILED: | DEFTS RESPNS & OPPOSITION TO FIFTH THIRD BANKS MTN TO QUASH SUBPOENA W/EXHIBS | |
| 07/05/2011 | PROOF OF SERVICE | PROOF OF SERVICE | |
| 07/05/2011 | RESPONSE TO MOTION | DEFTS RESPONSE & OPPOSITION TO PLTFS MOTION TO QUASH SUBPOENA & FOR PROTECTIVE ORD W/EXHIBS | |
| 07/05/2011 | PROOF OF SERVICE | PROOF OF SERVICE | |
| 07/05/2011 | DOCUMENT FILED: | RESPONSE TO 3RD PRTY DEFTS/CNTR-PLTFS 1ST REQ FOR ADMISSIONS TO SALVATORE DIMERCURIO | |
| 07/05/2011 | PROOF OF SERVICE | PROOF OF SERVICE | |
| 07/05/2011 | DOCUMENT FILED: | RESPONSE TO 3RD PRTY DEFTS/CNTR PLTFS 1ST REQ FOR ADMISSIONS TO SIMONE MAURO | |
| 07/08/2011 | ORDER SIGNED: | STIP/LIMITED PROTECTIVE ORDER -SGD | |
| 07/21/2011 | PROOF OF SERVICE | PROOF OF SERVICE | |
| 07/21/2011 | PROOF OF SERVICE | PROOF OF SERVICE | |
| 07/21/2011 | PROOF OF SERVICE | PROOF OF SERVICE | |
| 07/21/2011 | PROOF OF SERVICE | PROOF OF SERVICE | |
| 07/21/2011 | PROOF OF SERVICE | PROOF OF SERVICE | |
| 07/25/2011 | ORDER SIGNED: | STIP/ORDER AMENDING CTS ORDER OF PLTFS MTN TO EXCROW PROCEEING FROM TAX APPEAL DD 7/5/11 -SGD | |
| 07/25/2011 | PROOF OF SERVICE | PROOF OF SERVICE | |
| 07/25/2011 | DOCUMENT FILED: | RESPONSES TO DEFTS/CNTR PLTFS 1ST REQ FOR ADMISSIONS, 1ST INTERROG & 2ND REQ FOR PROD OF DOCS TO PLTFS/CNTR DEFTS | |
| 07/26/2011 | HELD: NOT PLACED ON RECORD, | HELD: NOT PLACED ON RECORD, STATUS CONFERENCE IN THIS MATTER IS ADJOURNED TO 8/30/11 @ 8:00 AM, PARTIES TO PROCEED W/ PROPER | |

| Date | Description | Docket Text | Amount |
|---|---|---|---|
| | | MOTIONS FOR DISSOLUTION AND ACCOUNTING, PARTIES TO AGREE ON APPRAISER OF PERSONAL PROPERTY W/IN 14 DAYS -SGD/JCF The following event: STATUS CONFERENCE PRIOR TO EDSC scheduled for 07/26/2011 at 8:00 am has been resulted as follows: Result: HELD: NOT PLACED ON RECORD Judge: FOSTER, JOHN C   Location: COURTROOM SW - 4TH FLOOR Result Staff:   Staff:  COURT REPORTER: VIDEO Certification Number: | |
| 07/26/2011 | STATUS CONFERENCE SCHEDULED | STATUS CONFERENCE SCHEDULED  The following event: STATUS CONFERENCE PRIOR TO EDSC scheduled for 07/26/2011 at 8:00 am has been rescheduled as follows:  Event: STATUS CONFERENCE Date: 08/30/2011   Time: 8:00 am Judge: FOSTER, JOHN C   Location: COURTROOM SW - 4TH FLOOR  Result: HELD: NOT PLACED ON RECORD | |
| 07/26/2011 | MOTION: | DEFTS/CNTR PLTFS AND THIRD PARTY PLTFS MTN FOR RECONSIDERATION | |
| 07/26/2011 | BRIEF IN SUPPORT OF MOTION | BRIEF IN SUPPORT OF MOTION W/EXH'S ATTACHED | |
| 07/26/2011 | PROOF OF SERVICE | PROOF OF SERVICE | |
| 07/26/2011 | MOTION FEE | MOTION FEE  Receipt: 462339  Date: 07/26/2011 | $0.00 |
| 08/05/2011 | PROOF OF SERVICE | PROOF OF SERVICE | |
| 08/09/2011 | PROOF OF SERVICE | PROOF OF SERVICE | |
| 08/10/2011 | CASE EVALUATION HEARING SCHEDULED | CASE EVALUATION HEARING SCHEDULED Event: CASE EVALUATION HEARING Date: 10/17/2011   Time: 3:00 pm Judge: C2101711   Location: CONF ROOM 510 - 5TH FLOOR  Result: CASE EVALUATION ADJOURNED | |
| 08/10/2011 | CASE EVAL NOTICE SENT | CASE EVAL NOTICE SENT | |

| Date | Description | Docket Text | Amount |
|---|---|---|---|
| | | CASE EVALUATION HEARING NOTICE Sent on: 08/10/2011 15:56:55 | |
| 08/24/2011 | PROOF OF SERVICE | PROOF OF SERVICE | |
| 08/30/2011 | HELD: NOT PLACED ON RECORD, | HELD: NOT PLACED ON RECORD-- MOTIONS TO BE FILED W/I 30 DAYS. IF NOT DISMISSED BY MOTION, DEFTS MAY DEPOSE PLTFS PRINCIPALS RE: TRANSFER OF INTEREST IN PERS PROP & CT TO APPOINT APPRAISER OF ASSETS--OTE The following event: STATUS CONFERENCE scheduled for 08/30/2011 at 8:00 am has been resulted as follows: Result: HELD: NOT PLACED ON RECORD Judge: FOSTER, JOHN C   Location: COURTROOM SW - 4TH FLOOR Result Staff:   Staff:  COURT REPORTER: VIDEO Certification Number: | |
| 08/30/2011 | ORDER ADJOURNING CASE EVALUATION - SGD | STIP/ORDER FOR 2ND XTNSION OF SCHEDULING ORDER DATES & ADJ CASE EVALUATION FOR 90 DAYS- SGD | |
| 08/30/2011 | CASE EVALUATION HEARING TO BE RESCHEDULED | CASE EVALUATION HEARING TO BE RESCHEDULED--ADJ 10/17/11 CASE EVAL TO A DATE IN JAN/2012 & EXT DISC TO 12/19/11--KIRK PD ADJ COST The following event: CASE EVALUATION HEARING scheduled for 10/17/2011 at 3:00 pm has been resulted as follows: Result: CASE EVALUATION ADJOURNED Judge: C2101711   Location: CONF ROOM 510 - 5TH FLOOR | |
| 08/30/2011 | CASE EVALUATION HEARING FEE PAID | CASE EVALUATION HEARING FEE PAID***ADJ COST***CK#8942 FOR $150 FOR THE 10/17/11 HRG ROBERT W KIRK (Attorney) on behalf of JODE INVESTMENTS LLC (PLAINTIFF) | |
| 08/30/2011 | CASE EVALUATION ADJOURNMENT COSTS PAID | CASE EVALUATION ADJOURNMENT COSTS PAID | |
| 08/30/2011 | INTERIM DISPOSITION ORDER - SGD | INTERIM DISPOSTION ORDER -- -SGD | |
| 08/30/2011 | PROOF OF SERVICE | PROOF OF SERVICE | |
| 08/30/2011 | DOCUMENT FILED: | DEFT/CTR-PLTF & 3RD PTY PLTF 2ND REQ FOR ADMISSIONS, 2ND | |

| Date | Description | Docket Text | Amount |
|------|-------------|-------------|--------|
| | | INTERROGATORIES & 3RD REQ FOR PRODUCTION OF DOCS TO PLTF/CTR-DEFT & 3RD PTY DEFT | |
| 09/28/2011 | MOTION FEE | MOTION FEE  Receipt: 477798  Date: 09/28/2011 | $0.00 |
| 09/28/2011 | MOTION FOR SUMMARY DISPOSITION | PLTF MOTION FOR PARTIAL SUMMARY DISPOSITION OF COUNTS 2-5 OF COUNTER CMPLT | |
| 09/28/2011 | BRIEF IN SUPPORT OF MOTION | BRIEF IN SUPPORT OF MOTION W/EXHIBITS | |
| 09/29/2011 | HEARING: MTN FOR SUMMARY DISP SCHEDULED | HEARING: MTN FOR SUMMARY DISP SCHEDULED<br>Event: MTN FOR SUMMARY DISPOSITION<br>Date: 10/24/2011   Time: 8:00 am<br>Judge: FOSTER, JOHN C   Location: COURTROOM SW - 4TH FLOOR<br><br>KIRK<br><br>Result: HELD - TAKEN UNDER ADVISEMENT | |
| 10/03/2011 | DOCUMENT FILED: | CPY OF NTC OF BNKRPTCY CASE FILING  FROM US BNKRPTCY CT ESTRN DIST OF MI AS TO SALVATORE DIMERCURIO R/F IN FILE | |
| 10/03/2011 | CASE NOTE: | B/O SENT TO JUDGE FOR SIGNATURE | |
| 10/05/2011 | ORDER FOR ADMINISTRATIVE CLOSING DUE TO BANKRUPTCY STAY SGD | ORDER FOR ADMINISTRATIVE CLOSING DUE TO BANKRUPTCY STAY AS TO SALVATORE DIMERCURIO --SGD  (CASE REMAINS OPEN) | |
| 10/07/2011 | SUBPOENA TO APPEAR RETURNED | SUBPOENA TO APPEAR RETURNED (2) | |
| 10/07/2011 | PROOF OF SERVICE | PROOF OF SERVICE | |
| 10/12/2011 | MOTION FEE | MOTION FEE  Receipt: 481035  Date: 10/12/2011 | $0.00 |
| 10/12/2011 | DOCUMENT FILED: | PLTFS & 3RD PRTY DEFTS/CNTR-PLTFS MTN TO QUASH SUBPOENAS DIRECTED TO FRANK IANNUZZI | |
| 10/12/2011 | BRIEF IN SUPPORT | BRIEF IN SUPPORT W/ATT EXHIBITS | |
| 10/13/2011 | HEARING: MTN TO QUASH SCHEDULED | HEARING: MTN TO QUASH SCHEDULED<br>Event: MTN TO QUASH<br>Date: 10/31/2011   Time: 8:00 am<br>Judge: FOSTER, JOHN C   Location: | |

| Date | Description | Docket Text | Amount |
|------|-------------|-------------|--------|
| | | COURTROOM SW - 4TH FLOOR | |
| | | KIRK/BADALAMENTI | |
| | | Result: ADJOURNED-BY COURT | |
| 10/17/2011 | MOTION FEE | MOTION FEE  Receipt: 482316  Date: 10/17/2011 | $0.00 |
| 10/17/2011 | MOTION FEE | MOTION FEE  Receipt: 482344  Date: 10/17/2011 | $0.00 |
| 10/17/2011 | PROOF OF SERVICE | PROOF OF SERVICE | |
| 10/17/2011 | NOTICE OF HEARING | NOTICE OF HEARING | |
| 10/17/2011 | DOCUMENT FILED: | DEFTS/CNTR PLTFS & 3RD PRTY PLTFS MTN TO DEEM REQ FOR ADMISSION ADMITTED & TO COMPEL DISCOVERY | |
| 10/17/2011 | DOCUMENT FILED: | BRIEF IN SUPPORT OF DEFTS/CNTR PLTFS & 3RD PRTY PLTFS MTN TO DEEM REQ FOR ADMISSION ADMITTED & TO COMPEL DISCOVERY W/ATT EXHIBITS | |
| 10/17/2011 | INTERROGATORIES | RESPONSE TO DEFTS/CNTR PTLFS & 3RD PRTY PLTFS 2ND REQ FOR ADMISSIONS, 2ND INTERROGATORIES, & 3RD REQ FOR PROD OF DOCS TO PLTFS/CNTR DEFTS & 3RD PRTY DEFTS | |
| 10/17/2011 | PROOF OF SERVICE | PROOF OF SERVICE | |
| 10/17/2011 | DOCUMENT FILED: | PLTFS & 3RD PRTY DEFTS/CNTR PLTFS 2ND MTN FOR PROTECTIVE ORDER RE: 2ND INTERROG & 3RD REQ FOR PROD OF DOCS | |
| 10/17/2011 | BRIEF IN SUPPORT | BRIEF IN SUPPORT W/ATTCHD EXHIBITS | |
| 10/18/2011 | HEARING: MTN FOR PROTECTIVE ORDER SCHEDULED | HEARING: MTN FOR PROTECTIVE ORDER SCHEDULED Event: MTN FOR PROTECTIVE ORDER Date: 10/31/2011   Time: 8:00 am Judge: FOSTER, JOHN C   Location: COURTROOM SW - 4TH FLOOR<br><br>KIRK/BADALAMENTI<br><br>Result: ADJOURNED-BY COURT | |
| 10/18/2011 | HEARING: MTN TO COMPEL DISCOVERY SCHEDULED | HEARING: MTN TO COMPEL DISCOVERY SCHEDULED Event: MTN TO COMPEL DISCOVERY Date: 10/31/2011   Time: 8:00 am Judge: FOSTER, JOHN C   Location: | |

| Date | Description | Docket Text | Amount |
|------|-------------|-------------|--------|
| | | COURTROOM SW - 4TH FLOOR | |
| | | TORRES | |
| | | Result: ADJOURNED-BY COURT | |
| 10/20/2011 | BRIEF IN SUPPORT | BRIEF IN SUPPORT W/ ATTCHD EXHBTS | |
| 10/20/2011 | RESPONSE TO MOTION | DEFTS/CNTR PLTFS & 3RD PRTY PLTFS RESPONSE & OPPSTN TO PLTFS/3RD PRTY' MTN FOR PRTL SMMRY DISPO OF COUNTY II-V OF THE CNTR CMPLT | |
| 10/20/2011 | PROOF OF SERVICE | PROOF OF SERVICE | |
| 10/20/2011 | DOCUMENT FILED: | REPLY IN SUPPORT OF PLTFS/THIRD PARTIES MOTION FOR PARTIAL SUMMARY DISPO OF COUNTS II - V OF THE COUNT COMPLAINT | |
| 10/20/2011 | PROOF OF SERVICE | PROOF OF SERVICE | |
| 10/21/2011 | PROOF OF SERVICE | PROOF OF SERVICE | |
| 10/24/2011 | HELD - TAKEN UNDER ADVISEMENT | HELD - TAKEN UNDER ADVISEMENT, PLACED ON RECORD The following event: MTN FOR SUMMARY DISPOSITION scheduled for 10/24/2011 at 8:00 am has been resulted as follows: Result: HELD - TAKEN UNDER ADVISEMENT Judge: FOSTER, JOHN C   Location: COURTROOM SW - 4TH FLOOR Result Staff: Staff: COURT REPORTER: VIDEO Certification Number: | |
| 10/24/2011 | ORDER SIGNED: | PRELIMINARY ORDER ON PLTFS MTN FOR PARTIAL SUMM DISPO -SGD | |
| 10/24/2011 | ORDER SIGNED: | PRELIMINARY ORDER ON PLTFS MTN FOR PARTIAL SUMM DISPO -SGD | |
| 10/25/2011 | ADJOURNED-BY COURT | ADJOURNED-BY COURT, PLACED ON RECORD ON 10/24 -- ADJ TO 11/21/11 8AM The following event: MTN FOR PROTECTIVE ORDER scheduled for 10/31/2011 at 8:00 am has been resulted as follows: Result: ADJOURNED-BY COURT Judge: FOSTER, JOHN C   Location: COURTROOM SW - 4TH FLOOR Result Staff: | |

| Date | Description | Docket Text | Amount |
|------|-------------|-------------|--------|
| | | Staff: COURT REPORTER: VIDEO Certification Number: | |
| 10/25/2011 | HEARING: MTN FOR PROTECTIVE ORDER SCHEDULED | HEARING: MTN FOR PROTECTIVE ORDER SCHEDULED<br><br>The following event: MTN FOR PROTECTIVE ORDER scheduled for 10/31/2011 at 8:00 am has been rescheduled as follows:<br><br>Event: MTN FOR PROTECTIVE ORDER Date: 11/21/2011 Time: 8:00 am Judge: FOSTER, JOHN C Location: COURTROOM SW - 4TH FLOOR<br><br>KIRK/BADALAMENTI<br><br>Result: DISMISSAL OF MOTION | |
| 10/25/2011 | ADJOURNED-BY COURT | ADJOURNED-BY COURT, PLACED ON RECORD ON 10/24/11 -- ADJ TO 11/21/11 8AM<br>The following event: MTN TO COMPEL DISCOVERY scheduled for 10/31/2011 at 8:00 am has been resulted as follows:<br><br>Result: ADJOURNED-BY COURT Judge: FOSTER, JOHN C Location: COURTROOM SW - 4TH FLOOR Result Staff: Staff: COURT REPORTER: VIDEO Certification Number: | |
| 10/25/2011 | HEARING: MTN TO COMPEL DISCOVERY SCHEDULED | HEARING: MTN TO COMPEL DISCOVERY SCHEDULED<br><br>The following event: MTN TO COMPEL DISCOVERY scheduled for 10/31/2011 at 8:00 am has been rescheduled as follows:<br><br>Event: MTN TO COMPEL DISCOVERY Date: 11/21/2011 Time: 8:00 am Judge: FOSTER, JOHN C Location: COURTROOM SW - 4TH FLOOR<br><br>TORRES<br><br>Result: DISMISSAL OF MOTION | |
| 10/25/2011 | ADJOURNED-BY COURT | ADJOURNED-BY COURT, PLACED ON RECORD 10/24/11 --ADJ TO 11/21/11 8AM<br>The following event: MTN TO QUASH scheduled for 10/31/2011 at 8:00 am has | |

| Date | Description | Docket Text | Amount |
|------|-------------|-------------|--------|
| | | been resulted as follows:<br><br>Result: ADJOURNED-BY COURT<br>Judge: FOSTER, JOHN C   Location:<br>COURTROOM SW - 4TH FLOOR<br>Result Staff:<br>   Staff:  COURT REPORTER: VIDEO<br>Certification Number: | |
| 10/25/2011 | HEARING: MTN TO QUASH SCHEDULED | HEARING: MTN TO QUASH SCHEDULED<br><br>The following event: MTN TO QUASH scheduled for 10/31/2011 at 8:00 am has been rescheduled as follows:<br><br>Event: MTN TO QUASH<br>Date: 11/21/2011   Time: 8:00 am<br>Judge: FOSTER, JOHN C   Location:<br>COURTROOM SW - 4TH FLOOR<br><br>KIRK/BADALAMENTI<br><br>Result: DISMISSAL OF MOTION | |
| 10/27/2011 | CASE EVALUATION HEARING SCHEDULED | CASE EVALUATION HEARING SCHEDULED<br>Event: CASE EVALUATION HEARING<br>Date: 01/09/2012   Time: 3:00 pm<br>Judge: C2010912   Location: CONF ROOM 510 - 5TH FLOOR<br><br>Result: CASE EVALUATION ADJOURNED | |
| 10/28/2011 | CASE EVAL NOTICE SENT | CASE EVAL NOTICE SENT<br><br>CASE EVALUATION HEARING NOTICE<br>Sent on:  10/28/2011 13:02:53 | |
| 10/28/2011 | DOCUMENT FILED: | SUR REPLY IN SUPPORT OF PLTFS THIRD PARTIES MTN FOR PARTIAL SUM DISPO OF COUNTS II-V OF COUNTER COMPLAINT W/ATTACHED EXHS | |
| 10/28/2011 | PROOF OF SERVICE | PROOF OF SERVICE | |
| 10/28/2011 | PROOF OF SERVICE | PROOF OF SERVICE | |
| 10/28/2011 | DOCUMENT FILED: | DEFT CNTR PLTFS SUPPLEMENTAL BRIEF IN RESP TO PLTF THIRD PARTIES MTN FOR PARTIAL SUM DISPO OF COUNTS II-V OF THE COUNTER COMPLAINT | |
| 11/02/2011 | PLAINTIFF'S WITNESS LIST | PLAINTIFF WITNESS LIST | |

| Date | Description | Docket Text | Amount |
|------|-------------|-------------|--------|
| 11/02/2011 | PROOF OF SERVICE | PROOF OF SERVICE | |
| 11/03/2011 | PROOF OF SERVICE | PROOF OF SERVICE | |
| 11/03/2011 | DEFENDANTS WITNESS LIST | DEFTS/COUNTER PLTFS AND THIRD PARTY PLTFS WITNESS LIST | |
| 11/04/2011 | PLAINTIFF'S WITNESS LIST | PLAINTIFFS SPPLMNTL WITNESS LIST | |
| 11/04/2011 | PROOF OF SERVICE | PROOF OF SERVICE | |
| 11/08/2011 | PROOF OF SERVICE | PROOF OF SERVICE | |
| 11/08/2011 | RE-NOTICE OF HEARING | RE-NOTICE OF HEARING | |
| 11/17/2011 | PROOF OF SERVICE | PROOF OF SERVICE | |
| 11/17/2011 | RESPONSE TO MOTION | RESPONSE IN OPPOSITION TO DEFTS/CNTR PLTFS  MOTION TO DEEM REQ FOR ADMISSION AND TO COMPEL DISCOVERY | |
| 11/18/2011 | OPINION & ORDER SIGNED | OPINION & ORDER SIGNED (PLAINTIFFS /THIRD PARTY DEFENDANTS MTN FOR PARTIAL SUMMARY DISPO OF COUNTS II, III, IV AND V OF THE COUNTER COMPLAINT/THIRD PARTY COMPLAINT IS GRANTED; AND DEFENDANTS MTN FOR RECONSIDERATION IS DENIED) REMAINS OPEN | |
| 11/18/2011 | PROOF OF SERVICE | PROOF OF SERVICE | |
| 11/18/2011 | RESPONSE TO MOTION | DEFT/CNTR PLTF AND THIRD PARTY PLTF RESPONSE TO MOTION FOR PROTECTIVE ORDER REGARDING SECOND INTERROGATORIES AND THIRD REQUESTS FOR PROD OF DOCS W/EXH | |
| 11/18/2011 | RESPONSE TO MOTION | DEFT/CNTR PLTF AND THIRD PARTY PLTF RESPONSE TO MOTION QUASH SUBPOENAS DIRECTED TO IANNUZZI CO W/EXH | |
| 11/21/2011 | DISMISSAL OF MOTION | DISMISSAL OF MOTION PER BADALAMENTI'S OFFICE The following event: MTN FOR PROTECTIVE ORDER scheduled for 11/21/2011 at 8:00 am has been resulted as follows: Result: DISMISSAL OF MOTION Judge: FOSTER, JOHN C   Location: COURTROOM SW - 4TH FLOOR | |

| Date | Description | Docket Text | Amount |
|---|---|---|---|
| | | Result Staff:<br>  Staff:  COURT REPORTER: VIDEO<br>Certification Number: | |
| 11/21/2011 | DISMISSAL OF MOTION | DISMISSAL OF MOTION PER<br>BADALAMENTI'S OFFICE<br>The following event: MTN TO QUASH<br>scheduled for 11/21/2011 at 8:00 am has<br>been resulted as follows:<br><br>Result: DISMISSAL OF MOTION<br>Judge: FOSTER, JOHN C   Location:<br>COURTROOM SW - 4TH FLOOR<br>Result Staff:<br>  Staff:  COURT REPORTER: VIDEO<br>Certification Number: | |
| 11/21/2011 | DISMISSAL OF MOTION | DISMISSAL OF MOTION PER TORRES<br>The following event: MTN TO COMPEL<br>DISCOVERY scheduled for 11/21/2011 at<br>8:00 am has been resulted as follows:<br><br>Result: DISMISSAL OF MOTION<br>Judge: FOSTER, JOHN C   Location:<br>COURTROOM SW - 4TH FLOOR<br>Result Staff:<br>  Staff:  COURT REPORTER: VIDEO<br>Certification Number: | |
| 12/13/2011 | PROOF OF SERVICE | PROOF OF SERVICE | |
| 12/14/2011 | PROOF OF SERVICE | PROOF OF SERVICE | |
| 12/20/2011 | MOTION FEE | MOTION FEE  Receipt: 497429  Date:<br>12/21/2011 | $0.00 |
| 12/20/2011 | MISCELLANEOUS<br>MOTION HEARING<br>SCHEDULED | MISCELLANEOUS MOTION HEARING<br>SCHEDULED<br>Event: MISCELLANEOUS MOTION<br>HEARING<br>Date: 01/09/2012   Time: 8:00 am<br>Judge: FOSTER, JOHN C   Location:<br>COURTROOM SW - 4TH FLOOR<br><br>KIRK/BADALAMENTI - DISBURSEMENT<br>OF ESCROW<br><br>Result: HELD - TAKEN UNDER<br>ADVISEMENT | |
| 12/20/2011 | ORDER SIGNED: | STIP/ORDER OF SCHEDULING ON PLTFS<br>MTN TO COMPEL SPECIFICE<br>PERFORMANCE & PLTFS MTN FOR<br>DISBURSEMENT OF  ESCROW &<br>ASSIGNMENT OF LIQUOR LICENSE -SGD | |

| Date | Description | Docket Text | Amount |
|------|-------------|-------------|--------|
| 12/20/2011 | MISCELLANEOUS MOTION HEARING SCHEDULED | MISCELLANEOUS MOTION HEARING SCHEDULED<br>Event: MISCELLANEOUS MOTION HEARING<br>Date: 01/09/2012  Time: 8:00 am<br>Judge: FOSTER, JOHN C  Location: COURTROOM SW - 4TH FLOOR<br><br>KIRK - SPECIFIC PERFORMANCE OF CONSENT AND ASSIGNMENT<br><br>Result: HELD - TAKEN UNDER ADVISEMENT | |
| 12/20/2011 | MOTION: | MOTION FOR DISBURSEMENT OF ESCROW AND ASSIGNMENTS OF LIQUOR LICENSE W/EXH 1-4 ATTACHED | |
| 12/20/2011 | MOTION: | MOTION TO COMPEL SPECIFIC PERFORMANCE OF BURNING TREE PROPERTIES LLC CONSENT AND ASSIGNMENT OF REDEMPTION RIGHTS W/EXH 1-4 ATTACHED | |
| 12/22/2011 | ORDER ADJOURNING CASE EVALUATION - SGD | STIP/ORD RE: ORDER ADJOURNING CASE EVALUATION & CASE SCHEDULE-SGD | |
| 12/22/2011 | CASE EVALUATION HEARING TO BE RESCHEDULED | CASE EVALUATION HEARING TO BE RESCHEDULED--ADJ 1/09/12 CASE EVAL & EXT DISC TO 4/13/12--TORRES PD ADJ COST<br>The following event: CASE EVALUATION HEARING scheduled for 01/09/2012 at 3:00 pm has been resulted as follows:<br><br>Result: CASE EVALUATION ADJOURNED<br>Judge: C2010912  Location: CONF ROOM 510 - 5TH FLOOR | |
| 12/22/2011 | CASE EVALUATION HEARING FEE PAID | CASE EVALUATION HEARING FEE PAID***ADJ COST***CK#4197 FOR $150 FOR THE 1/09/12 HRG ,<br>VICTOR J. TORRES (Attorney) on behalf of BURNING TREE PROPERTIES LLC (DEFENDANT) | |
| 12/22/2011 | CASE EVALUATION ADJOURNMENT COSTS PAID | CASE EVALUATION ADJOURNMENT COSTS PAID | |
| 12/22/2011 | PROOF OF SERVICE | PROOF OF SERVICE | |
| 12/29/2011 | PROOF OF SERVICE | PROOF OF SERVICE | |
| 01/04/2012 | RESPONSE TO MOTION | | |

| Date | Description | Docket Text | Amount |
|------|-------------|-------------|--------|
| | | RESPONSE TO MOTION TO COMPEL W/ ATTACH | |
| 01/04/2012 | PROOF OF SERVICE | PROOF OF SERVICE | |
| 01/04/2012 | RESPONSE TO MOTION | RESPONSE AND OPPOSITION TO MOTION FOR DISBURSEMENT OF ESCROW AND ETC W/ EXH A-J | |
| 01/06/2012 | PROOF OF SERVICE | PROOF OF SERVICE | |
| 01/06/2012 | DOCUMENT FILED: | REPLY BRIEF IN SUPPORT OF PLTFS MTN FOR DISBURSEMENT OF ESCROW AND ASSIGNMENT OF LIQUOR LICENSE W/EXHIBIT | |
| 01/09/2012 | HELD - TAKEN UNDER ADVISEMENT | HELD - TAKEN UNDER ADVISEMENT, PLACED ON RECORD<br>The following event: MISCELLANEOUS MOTION HEARING scheduled for 01/09/2012 at 8:00 am has been resulted as follows:<br><br>Result: HELD - TAKEN UNDER ADVISEMENT<br>Judge: FOSTER, JOHN C    Location: COURTROOM SW - 4TH FLOOR<br>Result Staff:<br>   Staff:  COURT REPORTER: VIDEO Certification Number: | |
| 01/09/2012 | HELD - TAKEN UNDER ADVISEMENT | HELD - TAKEN UNDER ADVISEMENT, PLACED ON RECORD<br>The following event: MISCELLANEOUS MOTION HEARING scheduled for 01/09/2012 at 8:00 am has been resulted as follows:<br><br>Result: HELD - TAKEN UNDER ADVISEMENT<br>Judge: FOSTER, JOHN C    Location: COURTROOM SW - 4TH FLOOR<br>Result Staff:<br>   Staff:  COURT REPORTER: VIDEO Certification Number: | |
| 01/09/2012 | ORDER SIGNED: | ORDER RE: PLTFS MTN FOR DISBURSEMENT OF ESCROW & ASSIGNMENT OF LIQUOR LICENSE (U/A) -SGD | |
| 01/09/2012 | ORDER SIGNED: | ORDER COMPELLING SPECIFIC PERFORMANCE OF BT PROPERTIES LLC CONSENT & ASSIGNMENT OF REDEMPTION RIGHTS -SGD | |

| Date | Description | Docket Text | Amount |
|------|-------------|-------------|--------|
| 01/31/2012 | OPINION & ORDER SIGNED | OPINION & ORDER --PLTF/3RD PRTY DEFTS MTN FOR DISURSEMENT OF ESCROW DENIED, MTN FOR ASSIGNMENT OF LIQUOR LICENSE GRANTED --SIGNED  (DOES NOT CLOSE CASE) | |
| 02/01/2012 | CASE EVALUATION HEARING SCHEDULED | CASE EVALUATION HEARING SCHEDULED<br>Event: CASE EVALUATION HEARING<br>Date: 03/26/2012    Time: 3:00 pm<br>Judge: C2032612    Location: CONF ROOM 510 - 5TH FLOOR<br><br>Result: CASE EVALUATION ADJOURNED | |
| 02/01/2012 | CASE EVAL NOTICE SENT | CASE EVAL NOTICE SENT<br><br>CASE EVALUATION HEARING NOTICE<br>Sent on: 02/01/2012  13:58:02 | |
| 02/13/2012 | MOTION FEE | MOTION FEE  Receipt: 511285  Date: 02/14/2012 | $0.00 |
| 02/13/2012 | MOTION FOR RECONSIDERATION | MOTION FOR PARTIAL RECONSIDERATION OF OPINION AND ORD DENYING IN PART PLTF MTN FOR DISBURSEMENT OF ESCROW AND ASSIGNMENT OF LIQUOR LICENSE W/EXHIBITS | |
| 02/13/2012 | PROOF OF SERVICE | PROOF OF SERVICE | |
| 02/14/2012 | MOTION FEE | MOTION FEE  Receipt: 511286  Date: 02/14/2012 | $0.00 |
| 02/14/2012 | HEARING: MTN TO WITHDRAW AS ATTY SCHEDULED | HEARING: MTN TO WITHDRAW AS ATTY SCHEDULED<br>Event: MTN TO WITHDRAW AS ATTORNEY<br>Date: 02/21/2012    Time: 8:00 am<br>Judge: FOSTER, JOHN C    Location: COURTROOM SW - 4TH FLOOR<br><br>TORRES<br><br>Result: HELD - GRANTED/ORDER TO ENTER | |
| 02/14/2012 | NOTICE OF HEARING | NOTICE OF HEARING | |
| 02/14/2012 | MOTION: | MOTION TO WITHDRAW AS COUNSEL FOR DEFTS | |
| 02/14/2012 | BRIEF IN SUPPORT | BRIEF IN SUPPORT | |
| 02/14/2012 | PROOF OF SERVICE | PROOF OF SERVICE | |

| Date | Description | Docket Text | Amount |
|---|---|---|---|
| 02/17/2012 | DOCUMENT FILED: | RESP TO MTN TO WITHDRAW BY COUNSEL FOR DEFTS | |
| 02/17/2012 | PROOF OF SERVICE | PROOF OF SERVICE | |
| 02/21/2012 | MOTION FEE | MOTION FEE  Receipt: 512692  Date: 02/21/2012 | $0.00 |
| 02/21/2012 | NOTICE OF HEARING | NOTICE OF HEARING | |
| 02/21/2012 | DOCUMENT FILED: | DEFENDANTS' OBJECTIONS TO AND MOTION TO STRIKE PLAINTIFFS' MOTION FOR RECONSIDERATION | |
| 02/21/2012 | DOCUMENT FILED: | MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' OBJECTIONS TO AND MOTION TO STRIKE PLAINTIFFS' MOTION FOR RECONSIDERATION | |
| 02/21/2012 | PROOF OF SERVICE | PROOF OF SERVICE | |
| 02/21/2012 | HELD - GRANTED/ORDER TO ENTER, PLACED ON RECORD | HELD - GRANTED/ORDER TO ENTER, PLACED ON RECORD --CASE EVAL TO BE ADJ 60 DAYS W/O COSTS -OTE The following event: MTN TO WITHDRAW AS ATTORNEY scheduled for 02/21/2012 at 8:00 am has been resulted as follows: Result: HELD - GRANTED/ORDER TO ENTER Judge: FOSTER, JOHN C   Location: COURTROOM SW - 4TH FLOOR Result Staff: Staff:  COURT REPORTER: VIDEO Certification Number: | |
| 02/21/2012 | ORDER ADJOURNING CASE EVALUATION - SGD | ORDER PERMITTING WITHDRAWAL OF COUNSEL FOR DEFTS WILLIAMS ACOSTA PLLC, ADJOURNING CASE EVALUATION & SETTING STATUS CONF 4/4/12 8AM -SGD | |
| 02/21/2012 | STATUS CONFERENCE SCHEDULED | STATUS CONFERENCE SCHEDULED Event: STATUS CONFERENCE Date: 04/04/2012   Time: 8:00 am Judge: FOSTER, JOHN C   Location: COURTROOM SW - 4TH FLOOR Result: ADJOURNED-BY COURT | |
| 02/21/2012 | CASE EVALUATION HEARING TO BE RESCHEDULED | CASE EVALUATION HEARING TO BE RESCHEDULED ***ADJ 3/26/12 CASE EVAL FOR 60 DAYS W/OUT COSTS & EXTENDED DISC TO 6/13/12*** The following event: CASE EVALUATION HEARING scheduled for 03/26/2012 at 3:00 | |

| Date | Description | Docket Text | Amount |
|------|-------------|-------------|--------|
| | | pm has been resulted as follows: | |
| | | Result: CASE EVALUATION ADJOURNED Judge: C2032612   Location: CONF ROOM 510 - 5TH FLOOR | |
| 02/22/2012 | HEARING: MTN FOR RECONSIDERATION SCHEDULED | HEARING: MTN FOR RECONSIDERATION SCHEDULED Event: MTN FOR RECONSIDERATION Date: 03/19/2012   Time: 8:00 am Judge: FOSTER, JOHN C   Location: COURTROOM SW - 4TH FLOOR  TORRES  Result: DISMISSAL OF MOTION | |
| 03/01/2012 | ORDER SIGNED: | ORDER TO SHOW CAUSE (HRG SET 3/19/12 8AM) -SGD | |
| 03/02/2012 | MOTION FEE | MOTION FEE Receipt: 516377  Date: 03/02/2012 | $0.00 |
| 03/02/2012 | HEARING: MTN TO SHOW CAUSE SCHEDULED | HEARING: MTN TO SHOW CAUSE SCHEDULED Event: MTN TO SHOW CAUSE Date: 03/19/2012   Time: 8:00 am Judge: FOSTER, JOHN C   Location: COURTROOM SW - 4TH FLOOR  KIRK/BADALAMENTI  Result: HELD – GRANTED/ORDER TO ENTER | |
| 03/02/2012 | DOCUMENT FILED: | VERIFIED EXPARTE MTN FOR ORDER TO SHOW CAUSE WHY SIMONE MAURO SHOULD NOT BE HELD IN CONTEMPT OF COURT W/ATTACHMENTS | |
| 03/02/2012 | NOTICE OF HEARING | NOTICE OF HEARING & PROOF OF SERVICE | |
| 03/14/2012 | BRIEF IN OPPOSITION | RESPONSE IN OPPOSITION TO DEFTS OBJECTIONS TO, AND MOTION TO STRIKE PLTFS MOTION FOR RECONSIDERATION | |
| 03/14/2012 | BRIEF IN SUPPORT | BRIEF IN SUPPORT, W/EXHIBIT 1 | |
| 03/14/2012 | PROOF OF SERVICE | PROOF OF SERVICE | |
| 03/15/2012 | DOCUMENT FILED: | CPY OF NTC OF BNKRPTCY CHPTR 7 CASE FILING FROM USBC ESTRN DIST OF MI AS TO SIMONE B MAURO R/F IN FILE | |

| Date | Description | Docket Text | Amount |
|------|-------------|-------------|--------|
| 03/19/2012 | HELD - GRANTED/ORDER TO ENTER, PLACED ON RECORD | HELD - GRANTED/ORDER TO ENTER, PLACED ON RECORD --DEFT IS TAKEN INTO CUSTODY UNTIL SUCH TIME AS HE SIGNS THE DOCUMENT REQUESTED -OTE<br>The following event: MTN TO SHOW CAUSE scheduled for 03/19/2012 at 8:00 am has been resulted as follows:<br><br>Result: HELD - GRANTED/ORDER TO ENTER<br>Judge: FOSTER, JOHN C    Location: COURTROOM SW - 4TH FLOOR<br>Result Staff:<br>   Staff:  COURT REPORTER: VIDEO<br>Certification Number: | |
| 03/19/2012 | DISMISSAL OF MOTION | DISMISSAL OF MOTION BY THE COURT ON THE RECORD -OTE<br>The following event: MTN FOR RECONSIDERATION scheduled for 03/19/2012 at 8:00 am has been resulted as follows:<br><br>Result: DISMISSAL OF MOTION<br>Judge: FOSTER, JOHN C    Location: COURTROOM SW - 4TH FLOOR<br>Result Staff:<br>   Staff:  COURT REPORTER: VIDEO<br>Certification Number: | |
| 03/19/2012 | ORDER SIGNED: | ORDER DISMISSING PENDING MOTIONS FOR RECONSIDERATION -SGD | |
| 03/19/2012 | ORDER SIGNED: | ORDER OF CONTEMPT OF COURT --- DEFT/CNTR PLTF SIMONE MAURO FOUND IN CONTEMPT OF COURT, REMAND TO MCJ UNTIL THE EXECUTION OF THE ASSIGNMENT OF ALL ASSETS ATTACHED -SGD | |
| 03/19/2012 | SHERIFF DEPARTMENT NOTIFIED | SHERIFF DEPARTMENT NOTIFIED | |
| 03/19/2012 | ORDER SIGNED: | ORDER OF JUDGMENT FOR COSTS -SGD | |
| 03/20/2012 | ORDER SIGNED: | ORDER OF THE COURT RELEASING SIMONE MAURO FROM MCJ -SGD (FAXED TO MCJ) | |
| 03/20/2012 | PROOF OF SERVICE | PROOF OF SERVICE | |
| 03/23/2012 | ORDER FOR ADMINISTRATIVE CLOSING DUE TO | ORDER FOR ADMINISTRATIVE CLOSING DUE TO BANKRUPTCY STAY AS TO SIMONE B MAURO  SGD | |